IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:22-cv-808-STV

**Christopher Porter and**
**BreeAnna Porter,**
        Plaintiffs,

v.

**T.J. Crowder and Sons, LLC,**
**And Farrel Crowder**
        Defendants.

---

**PLAINTIFFS' RESPONSE AMENDED MOTION FOR SUMMARY JUDGMENT**

---

## I.    INTRODUCTION

Defendants' Amended Motion for Summary Judgment ("Motion") (ECF No. 22) must be denied. The Motion is nothing more than a borderline negligent presentation of applicable law applied to vague and decontextualized facts. Defendants assert that the agricultural exemption, which applies to farm laborers, should apply equally to employees who collect and process cow manure into fertilizer simply because cow manure is found on farms and fertilizers are used on farms. Years of precedent demonstrates that this is not the function of the agricultural exemption, and Plaintiffs were not exempt from the overtime requirements of the FLSA. Moreover, Plaintiffs have provided evidence that despite self-reporting their hours worked, Defendants regularly underpaid them for their work performed. Because Plaintiffs have raised a genuine question of fact regarding every issue raised by Defendants, Defendants' Motion must be denied.

Page 1 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

## II.     LEGAL STANDARD

Summary judgment is proper only "if there is no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is on the moving party to show the lack of any genuine issue of material fact. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) Genuine issues of material fact exist when "the evidence presents a sufficient disagreement to require submission to a jury of whether it is so one-sided that one party must prevail as a matter of law." *York v. BNSF Ry. Co.*, Civil Action No. 1:17-cv-1088-RM-STV, 2019 U.S. Dist. LEXIS 27644, at *7–9 (D. Colo. Feb. 21, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

In deciding whether there is sufficient evidence favoring the nonmoving party, the Court must view, and draw all reasonable inferences from, the evidence in the light most favorable to the nonmoving part. *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001). The nonmoving party may not rest exclusively on its pleadings, but must provide specific facts demonstrating a genuine issue for trial. *Mesa Oil, Inc. v. Ins. Co. of N. Am.,* 123 F.3d 1333, 1336 (10th Cir.1997). Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Coldwell v. RiteCorp Envtl. Prop. Sols.*, Civil Action No. 16-cv-01998-NYW, 2017 U.S. Dist. LEXIS 68252, at *4–5 (D. Colo. May 4, 2017) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

Page 2 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

### III. ARGUMENT

Defendants claim that they failed to pay Plaintiffs a proper overtime premium because Plaintiffs' work falls under the agricultural exemption of the FLSA. Defendants' argument is based on a mis-presentation of relevant law—the agricultural exemption only applies to *farm* employees who work in agricultural functions or on agricultural byproducts *of that same farm*. It does not apply to employees who simply perform some work on *any* farm. Nor does it apply to employees such as Plaintiffs, who work for a company that manufactures and sells a farming product. *See* Section A, *infra*. Moreover, Plaintiffs have presented evidence such that a reasonable jury could determine they were improperly paid for all of their hours worked. The mere fact that Plaintiffs were required to report their own hours worked does not prove that Plaintiffs were properly paid based on those reported hours. *See* Section B, *infra*. Because Plaintiffs have raised a genuine question of fact for every issue raised by Defendants, the Motion must be denied.

### A. The agricultural exemption[1] does not apply to Plaintiffs.

Defendants' argument for summary judgment is nothing more than a series of case citations that quote the legal definitions of the exemption Defendants believe should be applied to Plaintiffs' employment. Then, through careful side-stepping, Defendants manage to never state what it is that Defendants (or Plaintiffs) actually do in the furtherance of Defendants' business. Critically lacking from the Motion is any thoughtful analysis regarding the application of the law to Defendants' business. A mere string-cite of definitional legal language cannot assist this Court in determining whether an

---

[1] Because the Colorado Wage Act tracks the FLSA, Plaintiff will only address the FLSA definitions of "agricultural labor," but the following analysis applies equally to Plaintiffs' claims under the Colorado law. *See* Colo. Rev. Stat. § 8-13.5-201(3).

Page 3 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

exemption applies in any given situation. It is Defendants' burden to prove the application of the agricultural exemption,[2] a burden that it has unequivocally failed to meet.

1. <u>Legal Standard: Agricultural Exemption</u>

Among the various exemptions from the overtime requirements of the FLSA is the "agricultural exemption," which provides that the overtime provisions "shall not apply with respect to . . . any employee employed in agriculture." 29 U.S.C. § 213(b)(12). Section 203(f) provides the FLSA's definition of "agriculture":

> "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . ., the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f). The Tenth Circuit has interpreted this provision as "include[ing] farming in both a primary and a secondary sense." *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1203-04 (10th Cir. 2004) (quoting *Bayside Enters., Inc. v. NLRB*, 429 U.S. 298, 300 (1977)). "Primary farming" encompasses all the general labor involved in running a farm. *Id.* (citing *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762 (1949); 29 C.F.R. § 780.105(b)). "Secondary farming" is broader, and includes "any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidently [sic] to or in conjunction with 'such' farming operations." *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762–63 (1949). These practices include "preparation for market, delivery to storage or to market, or to carriers

---

[2] *See Lederman v. Frontier Prot., Inc.*, 685 F.3d 1151, 1156 (10th Cir. 2012).

Page 4 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

for transportation to market." *Pacheco*, 365 F.3d at 1204 (quoting *Holly Farms*, 517 U.S. at 398).

Defendants assert that Plaintiffs' employment falls under the secondary farming category of agricultural labor. *See* Mot. for Summ. J., p. 3. "To constitute secondary farming, the practice must be (1) performed by a farmer or on a farm, and (2) incident to or in conjunction with such farming operations." *Pacheco*, 365 F.3d at 1204 (citing *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1185–86 (10th Cir. 2004)). The federal regulations provide further insight: in order for an activity to be considered exempt secondary farming, the practices must be performed "in connection with the farming operations of the same farmer who performs the practices." 29 C.F.R. § 780.137. "Thus, the requirement is not met with respect to employees engaged in any practices performed by their employer in connection with farming operations that are not his own." *Id*. (citing *Farmers Reservoir*, 337 U.S. 755; *Mitchell v. Hunt*, 263 F.2d 913 (5th Cir. 1959); *NLRB v. Olaa Sugar Co.*, 242 F.2d 714 (9th Cir.1957); *Mitchell v. Huntsville Wholesale Nurseries, Inc.*, 267 F.2d 286 (5th Cir. 1959); *Bowie v. Gonzalez*, 117 F.2d 11 (1st Cir. 1941)). A farmer's (or farm's) processing of commodities collected from other farmers or farms is definitively not covered by the exemption. *See* 29 C.F.R. § 780.141 ("No practice performed with respect to farm commodities is within the language under discussion by reason of its performance on a farm unless all of such commodities are the products of that farm."). *See also Roebuck v. Hudson Valley Farms*, 239 F. Supp. 2d 234, 236–37 (N.D.N.Y. 2002) ("where the employer processes produce grown by independent farmers, the employer cannot benefit from the exemption") (citing *Marshall v. Gulf & Western Inds., Inc.,* 552 F.2d 124, 126 (5th Cir. 1977)). Notably, "The fact that such a practice pertains

Page 5 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

to farming operations generally or to those performed on a number of farms, rather than to those performed on the same farm only, is sufficient to take it outside the scope of the statutory language." *Id*.

Further, the "agricultural or horticultural commodities" contemplated by the statute "refers to commodities resulting from the application of agricultural or horticultural techniques." 29 C.F.R. § 780.112. "The term does not include commodities produced by industrial techniques, by exploitation of mineral wealth or other natural resources, or by uncultivated natural growth." *Id*. Thus, the processing of animal byproducts through an industrialized technique, even if that industrialized technique is "natural" or "organic," removes the byproduct from the definition of "agriculture," and employees engaged in the production of that good are not covered by the exemption.

Thus, for the agricultural exemption to apply here, Defendants must prove that Plaintiffs work was performed a) as farmers or on a farm, b) incidentally to the farming operations of the farm on which it was performed, and c) on an unprocessed animal or plant byproduct. Defendants can prove none of these and its Motion must therefore fail.

2. <u>The agricultural exemption does not apply because Plaintiffs are not farmers and were not employed by the farms on which they worked.</u>

Defendants do not claim to operate a farm, nor do they produce manure as an incident to their farming operation. Rather, Defendants assert that because they collect manure from *other* cattle farms from cows owned and raised by *other* farmers, then process the manure as a general farm commodity, Plaintiffs' work in the furtherance of this business interest falls under the agricultural exemption.

Page 6 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

Defendants have misinterpreted the relevant statute in making their argument, and in so doing have doomed their own Motion. Defendants definitively state that "The cattle and manure produced by cattle which Humalfa processes is located *on the farms where the cattle are raised and fed*." Mot. for Summ. J., p. 3 (emphasis added). Later in the Motion, Defendants declare "[t]he fact that Humalfa handled this by-product of the cattle raising function *on farms that did not belong to them* for which they were contracted to perform that work affects whether the Plaintiffs were agricultural workers." *Id*. at p. 4 (emphasis added). This fact certainly affects whether Plaintiffs were agricultural workers—it pulls them out of the exemption entirely.

Defendants' interpretation of the statute stretches past the limits of congressional intent. Plaintiffs were not farmers, nor did they work "on a farm" as contemplated by the statute. Decl. of Christopher Porter ("Decl. C. Porter") ¶ 6, attached as Ex. 1; Decl. of BreeAnna Porter ("Decl. B. Porter") ¶ 6, attached as Ex. 2 (collectively "Porter Decls."). Even though Plaintiffs' work was performed on a farm, it was not performed on the farm that employed them. Porter Decls. ¶ 6–8. Plaintiff Christopher Porter ("Christopher") oversaw the production of the manure at Defendants' facilities. Decl. C. Porter ¶ 5. Plaintiff BreeAnna Porter ("BreeAnna") collected manure from a feed lot and moved it into the compost piles that eventually became fertilizer. Decl. B. Porter ¶ 5. Neither Plaintiff was involved in the actual care or raising of cattle; they merely collected the animal by-product and processed it into a usable fertilizer. Porter Decls. ¶ 8–10. The only farms involved in Plaintiffs' job duties were the feed lots on which Plaintiffs collected the unprocessed manure. Porter Decls. ¶ 6–7. In collecting this manure, Plaintiffs had no contact with the

Page 7 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

cows that produced the manure, nor were they involved in the care or raising of the cattle. Porter Decls. ¶ 8.

In *Holly Farms Corp. v. National Labor Relations Board*, the Supreme Court determined that chicken farm employees were not engaged in agricultural labor when their primary function was to collect chickens owned by their employer but raised on independent farms for their employer's chicken processing facility. 517 U.S. 392 (1996). Like in this case, the *Holly Farms* plaintiffs were not involved in the care or raising of the chickens they collected. *Id*. at 402. The Court noted that the plaintiffs "begin and end each shift by punching a timeclock at the processing plant," which was "located three miles from the hatcheries." *Id*. at 404. Like the *Holly Farms* plaintiffs, Plaintiffs here do not perform farm work, and the fact that the work is performed "on a farm" is irrelevant because it is not performed on their employers' farm or incident to their employers' farming activities. Porter Decls. ¶ 6–8. This work cannot be construed as "farm work" as contemplated by the statute.

Defendants are not a farm; they are a fertilizer manufacturing company. *See* [www.humalfa.com/about-us](www.humalfa.com/about-us) (last visited Apr. 17, 2023) ("Humalfa turns manure from cattle feed yards into a premium organic fertilizer."). The agricultural exemption applies only to employees who work "on a farm," and therefore does not apply to Plaintiffs.

3. <u>The agricultural exemption does not apply because manure collection is not "incidental or in conjunction with" Defendants' farming operations.</u>

Even assuming Defendants have managed to prove Plaintiffs' work was performed as farm employees, which they have not, Defendants' next error is in assuming that the

Page 8 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

production of a good that is used in agricultural endeavors renders that good an "agricultural commodity" that is "incidental to farming operations."

Collection and processing of a product that does not already belong to Defendants definitionally does not fall into the "incidental farming operations" the statute intended to cover. 29 C.F.R. § 780.141 ("No practice performed with respect to farm commodities is within the language under discussion by reason of its performance on a farm unless all of such commodities are the products of that farm."). In *Mitchell v. Huntsville Wholesale Nurseries*, the Fifth Circuit determined that the although the plaintiffs were employed by a farming operation, they were not exempt under the agricultural exemption because they were "employed in unloading, sorting, grading, trimming, storing, racking, and picking nursery stock *received from other sources*." 267 F.2d 286, 290 (5th Cir. 1959) (emphasis added). The Court was clear: "the practices in question must relate to the farmer's own farming operations and not to the farming operations of others and must in addition be subordinate to such operations." *Id*. (citing *Maneja v. Waialua Agric. Co.*, 349 U.S. 254 (1955); *Mitchell v. Budd*, 350 U.S. 473 (1956)).

As described in Section A.1, *supra*, Defendants do not have a farming operation; Defendants process animal byproducts for other farming operations. Porter Decls. ¶ 6–8. But even if Defendants' fertilizer manufacturing business could be construed as a farm, Defendants still could not claim the agricultural exemption because the manure processing is not incidental to Defendants' own farming operation. *See Mitchell*, 267 F.2d at 290 ("[P]rocessing on a farm of commodities produced by other farmers is incidental to, or in conjunction with, the farming operation of the other farmers and not incidental to, or in conjunction with, farming operations of the farmers on whose premises the

Page 9 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

processing is done. Such processing is therefore not within the definition of agriculture."). Because Defendants process a product incidental to other farms' farming operations rather than their own, the agricultural exemption does not apply to their business.

To the extent that Defendants argue that Plaintiffs are exempt because Plaintiffs' work is performed physically on a farm and benefits the farm on which the work is performed, this assertion misses the mark. As explained above, to claim the agricultural exemption, the employee must be employed by the farm the work is benefitting. 29 C.F.R. § 780.137. Plaintiffs are not employed by these farms; they are employed by a company that contracts with theses farms. Porter Decls. ¶ 6. Thus, the exemption is inapplicable.

4. <u>The agricultural exemption does not apply because the fertilizer Defendants produce is not an agricultural product.</u>

Even if Defendants could prove that the work Plaintiffs performed was farm work, and was work performed on Defendants' own farm product, Plaintiffs' work would still not fall under the agricultural exemption because the fertilizer Defendants' produce is processed such that it is no longer an agricultural byproduct "incidental" to a farm's operation. Defendants process the raw manure into an entirely new product, which is then sold back to farmers at a significant price increase. *See* www.humalfa.com/products (last visited Apr. 18, 2023) (listing all of the fertilizing products Defendants sell); https://www.humalfa.com/about-us (last visited Apr. 18, 2023) (stating that Defendants employ "a network of sales consultants and support representatives" to assist farmers in choosing the correct fertilizer).

The agricultural exemption does not apply to employees who work with agricultural products that are sold to farmers as Defendants assert. The Supreme Court addressed

Page 10 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

this very issue in *Farmers Reservoir* cited above: due to the advancement of technology and specialization in economic development, many products that were historically produced by farms have become independent functions that are removed from the farming process entirely, and therefore removed from the agricultural exemption. 337 U.S. at 761. "Thus, the question as to whether a particular type of activity is agricultural is not determined by the necessity of the activity to agriculture nor by the physical similarity of the activity to that done by farmers in other situations," but instead "whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity," such as an independent company independently processing other farms' cow manure into fertilizer. *Id*. In fact, the Court specifically addressed the production of fertilizer as an agricultural activity:

> The farmhand who cares for the farmer's mules or prepares his fertilizer is engaged in agriculture. But the maintenance man in a power plant and the packer in a fertilizer factory are not employed in agriculture, *even if their activity is necessary to farmers and replaces work previously done by farmers*. The production of power and the manufacture of fertilizer are independent productive functions, not agriculture.

*Id*. at 761–62 (emphasis added). Plaintiffs drove to various cattle farms within their service area to collect cow manure, then processed that manure into fertilizer. Porter Decls. ¶ 9–10. Plaintiffs are therefore far more akin to the "fertilizer factory" employee contemplated by *Farmers Reservoir* than the "farmhand who cares for the farmer's mules." 337 U.S. at 761–62.

The regulations provide that "a practice performed in connection with farming operations is within the statutory language only if it constitutes an established part of agriculture, is subordinate to the farming operations involved, and does not amount to an

Page 11 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

independent business." 29 C.F.R. § 780.144. "Industrial operations *and processes that are more akin to manufacturing than to agriculture* are not included." *Id*. (citing *Holtville Alfalfa Mills v. R. R.*, 230 F.2d 398 (9th Cir. 1955) (*Maneja*, 349 U.S. 254; *Mitchell*, 350 U.S. 473) (emphasis added). The regulations are clear that it was not congressional intent to incorporate industrial operations that happened to be built on farms into the definition of "agriculture." 29 C.F.R. § 780.146; *see also Maneja*, 349 U.S. at 264 ("The sponsors of the Act made clear, however, that 'a farmer erecting on his farm a factory and manufacturing anything you please, whether something he grows or not, who employs many people to manufacture it, and then ships it in interstate commerce . . . would not make the manufacturing . . . a farming operation.'") (quoting 81 Cong. Rec. 7658).

Courts have used different factors for determining whether a practice performed on agricultural byproducts is incident or in conjunction with farming operations, one of which is the degree to which the byproduct has been changed. *See Mitchell*, 350 U.S. at 481; 29 C.F.R. § 780.147. The process of converting raw manure into fertilizer is such that the end-product is no longer recognizable as the initial animal byproduct. To process the manure, Plaintiffs collected the manure into windrows, or lines, which were then flipped and turned using a windrow turner. Porter Decls. ¶ 9. As the manure sits, it heats up and breaks down into a full, loamy powder. *Id*. The process took around eight weeks. *Id*. When the compost is ready, it will cover a much larger area than the raw manure, and has a full powdery texture rather than the lumpy texture of manure. *Id*.

"Consideration should also be given to the value added to the product as a result of the practice and whether a sales organization is maintained for the disposal of the product." 29 C.F.R. § 780.147. As stated above, Defendants' entire business practice is

Page 12 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

to produce and sell the fertilizer it manufactures from cow manure. The fertilizer is not an "incidental" product to Defendants' main operation; the fertilizer is the entire operation. Defendant maintains a sales team and partners with retailers to sell their product. *See* www.humalfa.com (last visited Apr. 18, 2023). The fact that Defendants sell the product back to the farms from which they collect the manure does not change this fact—the manure is still processed and resold, even if it never changes location.

The regulations note that the "seasonality" of the operations may be unhelpful as a test to distinguish between operations that are incidental to agriculture and commercial operations, but "the length of the period during which the practice is performed might cast some light on whether the operations are conducted as a part of agriculture or as a separate undertaking when considered together with the amount of investment, payroll, and other factors." 29 C.F.R. § 780.147. Manufacture of fertilizer is Defendants' sole practice. It is not incident to any other practice; it is Defendants' exclusive function. The entirety of Defendants' operations, including investment and payroll, are devoted to manufacturing fertilizer. Defendants' business is a business venture wholly separate from farming. It is a manufacturing business, not a farm.

Because Defendants are not a farm, they cannot produce fertilizer incident to their own farming operations and the agricultural exemption does not apply to Plaintiffs' employment. Even assuming Defendants could prove they operate a farm, the manufacture of fertilizer from raw cow manure is not "incident" to Defendant's theoretical farming operation; it is a wholly separate business venture. Defendants have utterly failed to prove the application of the agricultural exemption and its Motion must be denied.

Page 13 of 16
**Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.**
**U.S.D.C. (Col.) No. 1:22-cv-808-STV**
**Response to Amended Motion for Summary Judgment**

### B. Plaintiffs have raised a genuine question as to whether they were paid for all hours worked.

Without citing any legal authority, Defendants claim that because Plaintiffs were responsible for submitting their own time via text message, there was no possible way for Defendants to have underpaid them. *See* Mot. for Summ. J., p. 7–8. According to Defendants, "Plaintiffs were masters of their own fate, they were the captains of their own souls," and therefore Defendants were absolutely incapable of writing an erroneous paycheck that shorted Plaintiffs on their hours. *Id*. at p. 8. Literary platitudes aside, if all it took to ensure an employee was never forced to work off-the-clock was requiring the employee to record his or her own time, then the FLSA and all the protections it affords would cease to exist.

It is well-settled law that the burden of keeping accurate employment records is on the employer rather than the employee. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686–88 (1946). In *Mt. Clemens*, the Court held that when an employer has failed to keep adequate or accurate records of employees' hours, employees should not effectively be penalized by denying them recovery of back wages on the ground that the precise extent of their uncompensated work cannot be established. *Id.* at 687; *see Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 69 (2d Cir. 1997); *Dove v. Coupe*, 759 F.2d 167, 174 (D.C. Cir. 1985).

Defendants hide behind the assertion that because Plaintiffs were responsible for recording and submitting their own hours, Defendants' time records, and the paychecks issued pursuant to those records, are presumably accurate. Not so: "an employer's formal policy for reporting overtime will not protect the employer if the employer prevents or

Page 14 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

discourages accurate reporting of overtime in practice." *Jones v. St. Francis Cnty.*, No. 2:19-CV-148-BRW, 2021 U.S. Dist. LEXIS 40326, at *5 (E.D. Ark. Mar. 4, 2021) (citing *Allen v. City of Chi.*, 865 F.3d 936, 939 (7th Cir. 2017)); *see also Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 827–28 (5th Cir. 1973) (finding that an employer's practice of "insisting that all work be completed within certain defined time limits" despite the job itself demanding "long and irregular hours" effectively "squelched truthful responses" in overtime reports).

Plaintiffs accurately recorded the hours they were permitted to record and report, but there were many circumstances under which Plaintiffs would be required to work but were not permitted to record those hours. For example, Christopher was regularly called out after hours to assist compost haulers that had broken down on the road. Decl. C. Porter ¶ 17. He was told that he was required to perform this duty, but he would not be paid for it. *Id*. If he did not assist the broken-down haulers, he would lose his job. *Id*. Likewise, BreeAnna regularly reported to Defendants that she and Christopher's pay checks had been shorted, but the checks were never corrected. Decl. B. Porter ¶ 15.

This testimony is sufficient to create an issue of fact regarding whether Plaintiffs were paid for all of their hours worked. Defendants' pay records are inaccurate, and Plaintiffs should be permitted to prove the extent of their uncompensated hours worked to a just a reasonable inference using their best recollection. Christopher estimates that he worked between 55 and 60 hours per week during every week of his employment, and BreeAnna estimates that she worked at least 50 hours per week during every week of her employment. Porter Decls. ¶ 13. Christopher's day-to-day job duties required him to work 9- to 10-hour shifts, and this does not include his after-hours work repairing and

Page 15 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment

maintaining Defendants' equipment. Decl. C. Porter ¶ 12. Likewise, BreeAnna worked long hours as a manure hauler and was also required to perform general maintenance on Defendants' equipment. Decl. B. Porter ¶ 12.

More importantly, for the purposes of this Motion, Plaintiffs have shown that regardless of how they recorded their time, Plaintiffs were not paid for all of their hours worked. Defendants' Motion must therefore be denied.

## IV.   CONCLUSION

Plaintiff has raised a genuine question of material fact for every issue raised by Defendant. Defendant has therefore failed to meet its burden on summary judgment and its Motion must be denied.

Respectfully submitted,

**PLAINTIFFS CHRISTOPHER PORTER and BREEANNA PORTER**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

*/s/ Josh Sanford*
Josh Sanford
Col. Bar No. 44358
josh@sanfordlawfirm.com

Page 16 of 16
Christopher Porter, et al. v. T.J. Crowder and Sons, LLC, et al.
U.S.D.C. (Col.) No. 1:22-cv-808-STV
Response to Amended Motion for Summary Judgment