**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-808

Christopher Porter and
BreeAnna Porter,
        Plaintiffs,

v.

T.J. Crowder and Sons, LLC, and
Farrel Crowder,
        Defendants.

___

**HUMALFA AND SONS, LLC, AND FARREL CROWDER'S REPLY TO PLAINTIFFS' RESPONSE AMENDED MOTION FOR SUMMARY JUDGMENT**

___

Now comes T.J. Crowder and Sons, LLC, and Farrel Crowder ("Humalfa") by and through their attorney Michael J. Davis of Davis Murray Law LLC and hereby Humalfa And Sons, LLC, and Farrel Crowder's Reply To Plaintiffs' Response Amended Motion For Summary Judgment and, in support thereof, states as follows.

### A. **INTRODUCTION**

Plaintiff's response to Humalfa's Motion for Summary Judgment quotes case law which essentially makes the case that the Plaintiffs actually are covered as Agricultural workers. Plaintiffs depart from that overwhelming conclusion by emphasizing that Humalfa manufactures fertilizer which is not made on the farm. That conclusion is problematic because the product which Humalfa gathers on the farm – cow manure – is raised on the farm and is part of farming operations. Humalfa could do anything with the product they gather from farms. The fertilizer part is not what defines the work that the Plaintiffs did. It is the work they do on farms where farm products are raised that determines their status.

1

Finally, Plaintiffs argue that a question of fact is raised by the assertion that Plaintiffs claim they were forced to do work off the clock. Any act such as that did not involve Humalfa as stated in the affidavits attached to the Motion. It involved someone other than Humalfa and it should be taken up with them. Further, the command to act as Plaintiffs assert is still subject to the fact of Plaintiffs reporting their own hours. If they chose to not report hours as requested by someone other than Humalfa, it was their choice and does not involve Humalfa.

B. **ARGUMENT**

1. **THE CASE LAW CITED BY PLAINTIFFS IN THEIR RESPONSE IS IN AGREEMENT THAT PLAINTIFFS ARE COVERED BY THE AGRICULTURAL EXEMPTION.**

The Plaintiffs begin by stating the statutory definition of "agriculture.

> "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . ., the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market. 29 U.S.C. § 203(f).

The Tenth Circuit includes that definition as including farming in both a primary and a secondary sense. *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1203-04 (10th Cir. 2004) (quoting *Bayside Enters., Inc. v. NLRB*, 429 U.S. 298, 300 (1977)). The definition of Secondary farming includes "any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidently [sic] to or in conjunction with 'such' farming operations." *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762–63 (1949). These practices include "preparation for market, delivery to storage or to market, or to carriers for transportation to market." *Pacheco*, 365 F.3d at 1204 (quoting *Holly Farms*, 517 U.S. at 398). Dkt. 24, p.4-5

2

Further, Plaintiff cites Defendants Motion for Summary Judgment that Plaintiffs employment falls under the secondary farming category of agricultural labor as follows:

> To constitute secondary farming, the practice must be (1) performed by a farmer or on a farm, and (2) incident to or in conjunction with such farming operations." *Pacheco*, 365 F.3d at 1204 (citing *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1185–86 (10th Cir. 2004)).

At this point the argument seems to be harmonious with Defendant in that what Plaintiffs do fit perfectly with the definition of secondary agriculture stating that activities covered are those "which are performed either by a farmer or on a farm, incidently [sic] to or in conjunction with 'such' farming operations…" *Farmers Reservoir & Irrigation Co. v. McComb,* cited supra. The work performed by Plaintiffs is work performed on a farm in conjunction with farming operations.

It is at this point where Plaintiffs veer away from the definition of agricultural work indicating as follows:

> "Thus, the requirement is not met with respect to employees engaged in any practices performed by their employer in connection with farming operations that are not his own." Id. (citing Farmers Reservoir, 337 U.S. 755; Mitchell v. Hunt, 263 F.2d 913 (5th Cir. 1959); NLRB v. Olaa Sugar Co., 242 F.2d 714 (9th Cir.1957); Mitchell v. Huntsville Wholesale Nurseries, Inc., 267 F.2d 286 (5th Cir. 1959); Bowie v. Gonzalez, 117 F.2d 11 (1st Cir. 1941)). A farmer's (or farm's) processing of commodities collected from other farmers or farms is definitively not covered by the exemption." Dkt. 24, p. 5.

This flies in the face of the Act itself as quoted in *Holly Farms*. In *Holly Farms Corp. v. NLRB*, 517 US 392, 398 (1996), the Court quoted the relevant part of the Act as follows:

> Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market. 29 U. S. C. § 203(f). See *Holly Farms* at 397-398.

What the Plaintiffs are engaged in at work falls in the category of preparing a product which is incidental to or in conjunction with a farm's operation for delivery to storage or to carriers for transport to market. Humalfa picks up the manure and transports it to its processing plant to be made

3

into fertilizer. The Plaintiffs claim that the product picked up is fertilizer somehow. It is not. It needs to be processed to become fertilizer, What Humalfa picks up is manure which has to be turned while it is waiting to be picked up. As applied to the current case, Humalfa was dealing with the raising of livestock performed on a farm in which Humalfa, more specifically the Plaintiffs, were preparing a by-product for market of that farming operation to be picked up by Humalfa.

The Plaintiff finally asserts that

"Thus, the requirement is not met with respect to employees engaged in any practices performed by their employer in connection with farming operations that are not his own." Id. (citing *Farmers Reservoir*, 337 U.S. 755; *Mitchell v. Hunt*, 263 F.2d 913 (5th Cir. 1959); *NLRB v. Olaa Sugar Co.*, 242 F.2d 714 (9th Cir.1957); *Mitchell v. Huntsville Wholesale Nurseries, Inc.*, 267 F.2d 286 (5th Cir. 1959); *Bowie v. Gonzalez*, 117 F.2d 11 (1st Cir. 1941)" Dkt. 24, P. 5.

This is directly contradicted by *Bills v. Cactus Family Farms, LLC*, 5 F. 4th 844, 847-848 (8th Cir 2021), a later decided case which states:

The agricultural exemption was intended to "embrace the whole field of agriculture." *Maneja v. Waialua Agric. Co.*, 349 U.S. 254, 260, 75 S.Ct. 719, 99 L.Ed. 1040 (1955). Congress specifically added the words "or on a farm" to 29 U.S.C. § 203(f) to address the concern expressed by some members of the Senate that the exemption would not otherwise cover "the threshing of wheat or other functions necessary to the farmer if those functions were not performed by the farmer and his hands, but by separate companies organized for and devoted solely to that particular job." *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 767, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949).

Removing manure produced by cattle in a feed lot is "…necessary to the farmer…" and Humalfa is a company "…organized for and devoted solely to do that particular job." Hence, the Plaintiffs are workers who fall within the agricultural exemption attested to in 29 U.S.C. § 203(f) that applies to Humalfa workers because they are doing a necessary function on a farm for Humalfa which is solely dedicated to this task. Thus, the Plaintiffs are Agricultural workers covered under the Act.

Defendant also pointed out the analogies that fit Humalfa's job role in relation to the feed lots. In *Bresgal v. Brock*, 843 F.2d 1163, 1167-68 (9th Cir.1987) the Court indicated that functions such as "packaging, processing, freezing, or grading" were now included by an amendment to the FLSA which covers the "handling, planting [or] drying" of agricultural commodities. The Court stated

4

definitively that "… these functions — if performed on a farm — are within the original definition of agricultural employment as derived from the [FLSA]." Id. Further, the Court in *Morante-Navarro v. T&Y* Pine Straw, Inc., 350 F. 3d 1163 (11th Cir., 2003) stated that commodities previously deemed "agricultural or horticultural" like mushroom compost "…is produced by a natural process that can be — and was in this case — enhanced by manual labor and cannot be put to commercial use without human intervention. Id. at 1172. Finally, in *United States v. Turner Turpentine Co*., 111 F.2d 400, 404-05 (5th Cir.1940), the Court concluded that "…labor employed in the production of crude gum and oleoresin by the scarification of living pine trees was 'agricultural labor' within the meaning of the term as used in the Social Security Act." Id. at 404-405. The Court reasoned that because humans speed up and enhance the process through labor, and "….because the oleoresin cannot be separated into turpentine and rosin, and thus put to commercial use, without human intervention, Congress intended the term 'agricultural labor' to 'have a meaning wide enough and broad enough to cover and embrace agricultural labor of any and every kind, as that term is understood in the various sections of the United States where the [Social Security Act] operates.' " Id. at 404-405.

The processes which Humalfa employs fall into the above stated categories and thus the Plaintiffs are agricultural workers within the meaning of the statue because they are engaged in agricultural employment and are exempt from having to be paid overtime as claimed in this case as claimed by Defendants.

2. **PLAINTIFFS ASSERTION THAT THEY WERE FORCED TO WORK OFF THE CLOCK IS UNSUPPORTED BY THE FACTS.**

Plaintiff makes a series of allegations about being shorted on pay as indicated in Para. 30, and Paragraphs 32 to 37 of the Complaint. These all fail because they are based on assumptions which don't involve Humalfa management. For instance, the incident as to working off the clock came from someone named "Scott" who is not a manager with Humalfa and has no authority to make a request such as this in the event it was made.

Further, the Plaintiffs assert that somehow Defendant's secretary reduced their hours. It is assumed that they are referring to Heather Day who is the accounting manager for Humalfa. In discovery, Ms. Day turned over all records relating to payroll including the text messages that Plaintiffs used to report their hours. In Ms. Day's affidavit (Doc. 19, Ex. B) she describes the process by which she collected hours and processed payroll. In addition, she asserts under oath that she never reduced hours.

The assertion that Humalfa has failed to keep adequate or accurate records of employees' hours is unproven and rests on the assumption that the Plaintiffs are entitled to overtime pay which must be calculated. However, because they are "agricultural workers" they are not entitled to overtime.

Finally, if BreeAnna claims that she worked but didn't get paid, one must wonder why after all the years of reporting hours for her husband that she never raised the issue before the Complaint in this case was filed. She obviously knew how because she did it for her husband. All she had to do was text her hours and she would get paid. But she didn't and now the claim that she is owed money for the time she didn't report is not only questionable but impossible to prove

**CONCLUSION**

Because the Plaintiffs are engaged in "agricultural employment" as defined under section 3(f) of the Fair Labor Standards Act of 1938 29 U.S.C. 203(f) or as agricultural labor under Section 3121(g) of the Internal Revenue Code of 1986, they were not entitled to overtime pay. Finally, because the Plaintiffs were responsible for reporting their own hours by text to their employer and those hours were not changed, any allegation about being shorted pay cannot be true or proven. The Defendant has proven by their affidavit that their records are generated by Plaintiffs and kept in total by Defendant. For these reasons, Plaintiff's Complaint must be dismissed.

Respectfully submitted this 12th day of May, 2023.

/s/ *Michael J. Davis*
Michael J. Davis
Murray Davis Law LLC
1001 Bannock Street
St. 219
Denver, CO 80204
720-361-6036
Fax : 720-368-5262
Email: mdavis@DavisMurraylaw.com

## CERTIFICATE OF SERVICE

I, Michael Davis, certify that a true and accurate copy of the preceding was served by the District of Colorado Courts E-Filing System to all parties entitled to notice on 12th day of May, 2023.

*/s/ Michael J. Davis*