IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00808-STV

CHRISTOPHER PORTER; and
BREANNA PORTER,

    Plaintiffs,

v.

T.J. CROWDER AND SONS, LLC; and
FARREL CROWDER,

    Defendants.

_____

### ORDER OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Defendants' Amended Motion for Summary Judgment (the "Motion"), filed April 11, 2023. [#22]  The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##8, 9]  This Court has carefully considered the Motion and related briefing, the case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion.  For the following reasons, the Motion is **DENIED**.

I.  **BACKGROUND**[1]

Plaintiffs were employed by Defendants as hourly paid employees.[2] [#22-1, SOF9–10] Plaintiff Christopher Porter was employed by Defendants from 2007 until February of 2022. [#22-1, SOF9] Plaintiff BreeAnna Porter was employed by Defendants from December of 2021 until February of 2022. [#22-1, SOF10] Defendant Farrel Crowder is the President and owner of Defendant T.J. Crowder and Sons, LLC, d/b/a Humalfa ("Humalfa"). [#22-1, SOF3; *see also* #1, ¶¶ 11, 14] Defendants are an "employer" within the meanings set forth in the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Colorado Overtime and Minimum Wage Order No. 37, 7 CCR 1103-1 (2021) ("CMWO"), and the Colorado Wage Act, Colo. Rev. Stat. § 8-4-101, *et seq.* ("CWA"). [#22-1, SOF8] Defendant Crowder, as the President and owner of Defendant Humalfa, had the power to hire and fire Plaintiffs, could exercise supervisory authority over Plaintiffs' work, and made decisions regarding Plaintiffs' pay. [#22-1, SOF5] Defendant Crowder hired Plaintiffs to work on Defendant Humalfa's behalf, paid Plaintiffs' wages and benefits, and kept records regarding their employment. [#22-1, SOF11]

---

[1] The undisputed facts are drawn from the Separate Statement of Facts filed with Defendant's Amended Motion for Summary Judgment. Because Plaintiffs did not change or dispute the Defendants' Separate Statement of Facts [*see* #24-3], the Court will refer to the Separate Statement of Facts as "SOF#." Where the Court draws facts from the Complaint [#1] and declarations and evidence submitted in support of the instant Motion [#22] and the Response [#24], it provides them here solely as background, not as undisputed factual assertions.

[2] Defendants refer to themselves in the singular throughout their briefing, so the Court construes their use of "Defendant" to encompass both Humalfa and Mr. Crowder, unless context makes clear otherwise. [*See, e.g.,* SOF4 ("Defendant does business as Humalfa"); SOF11 ("Defendant Farrel Crowder through Humalfa hired Plaintiffs to work on its behalf.")] The Court uses the plural for consistency and clarity.

Plaintiffs allege that Defendant Crowder took an "active role" in operating and managing Defendant Humalfa. [#1, ¶ 19]

Defendant Humalfa is a Colorado limited liability company that converts raw manure into organic fertilizer. [##22-1, SOF2; 22-2, ¶ 2] The process by which Defendant Humalfa does this is briefly described by Defendant Crowder in his Affidavit supporting the Motion. [#22-2, ¶¶ 2–4]

Mr. Porter was employed by Defendants as an hourly-paid employee beginning in 2007. [#22-1, SOF9] His role during the last three years of his employment with Defendants was that of Production Manager. [##22-2, ¶ 6; 24-1, ¶ 5] Mr. Porter described his duties in this role as "overs[eeing] the composting of the fertilizer" and assigning "employees to various tasks surrounding that activity." [#24-1, ¶ 5] Defendant Crowder described Mr. Porter's role as "overseeing the processing of manure on cattle feed lots preparing it for shipment to [Defendant Humalfa's] main facility." [#22-2, ¶ 6] Ms. Porter was employed as an hourly-paid manure hauler. [#24-2, ¶ 5] The parties dispute the dates of Ms. Porter's employment. *See infra* p. 4-5. Defendants describe Ms. Porter's work as "assist[ing] in the processing of manure on feed lots." [#22-2, ¶ 7] Ms. Porter represents that she "drove one of Defendants['] dump trucks to a cattle feed lot to collect manure." [#24-2, ¶ 5]

The parties dispute whether Plaintiffs were paid for all hours worked. [*Compare* #1, ¶¶ 30–37, 44 *with* #22 at 7–8] Heather Day ("Ms. Day"), one of Defendants' employees,[3] oversees the payroll for employees who "assist in the work performed to

---

[3] Ms. Day is referred to by Plaintiffs as Mr. Crowder's secretary, but Defendants' declarations attached to the instant Motion refer to her as the "head of the accounting department." [##1, ¶ 31; 24-1, ¶ 14; 24-2, ¶ 14; 22-2, ¶ 13; 22-3, ¶ 1]

3

create products for Humalfa." [#22-3, ¶ 1]  Ms. Day testified that because Plaintiffs "were unsupervised as far as the jobs they performed processing the manure on feed lots," Ms. Porter reported Mr. Porter's time to Ms. Day via text message.  [#22-3, ¶¶ 7–8]  When Ms. Porter was placed on Defendants' payroll, she began texting her own hours worked, in addition to Mr. Porter's hours worked, to Ms. Day.[4]  [*Id.* at ¶ 8; *see also* 24-1, ¶ 14 (Mr. Porter testifying that Ms. Porter would text Mr. Porter's time to Ms. Day); 24-2, ¶ 14 (Ms. Porter testifying that she would text both her time and Mr. Porter's time to Ms. Day)]  According to Ms. Day, Plaintiffs were solely responsible for reporting their time and Ms. Day did not make any adjustments to their hours.  [#22-3, ¶¶ 9-12]

In contrast, Plaintiffs' allege that Defendants did make adjustments to their hours and otherwise failed to pay Plaintiffs for all hours worked.  For example, Plaintiffs attest that their paychecks were "regularly adjusted" by Defendants' accounting department and that Ms. Day ignored Ms. Porters' complaints about those discrepancies [##24-1, ¶ 15; 24-2, ¶ 15]  And Mr. Porter testified that his supervisor did not permit him to report certain hours that Mr. Porter worked but which were not deemed "part of [his] regular workday." [#24-1, ¶ 17]

The parties also dispute the dates of Ms. Porter's employment.  Plaintiffs allege that Ms. Porter was employed from 2019 until February of 2022, but was not formally hired and placed on Defendants' payroll until December of 2021.  [#1, ¶ 25]  Plaintiffs further allege that Ms. Porter was "informally and sporadically paid" for work she performed starting in 2019.  [#1, ¶ 36]  Defendants represent that Ms. Porter "did no work

---

[4] Plaintiffs represent that they were "supposed to clock in and out on an app" on their mobile phones.  [##24-1, ¶ 14; 24-2, ¶ 14]  Plaintiffs allege that because the app "never really worked and constantly locked" them out, they texted their hours to Ms. Day.  [*Id.*]

4

that could be compensated for" prior to being formally hired in December of 2021. [#22-2, ¶ 8]

On April 4, 2022, Plaintiffs filed a Complaint alleging: (1) violations of the FLSA for failure to pay federal minimum wages for all hours worked and failure to pay overtime wages and (2) violations of the CWA and CMWO for failure to pay overtime wages and failure to permit Plaintiffs to take compensated rest breaks. [#1] On April 11, 2023, Defendants filed the instant Motion. [#22] Plaintiffs have responded to the Motion [#24] and Defendants have replied [#25].[5]

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*

---

[5] The Court notes that Defendants' reply brief, submitted 19 days after Plaintiffs' response brief, was filed out of time. *See* D.C.COLO.LCivR 7.1(d). In the absence of any objection to this late submission, the Court accepts Defendants' reply brief as filed.

5

*Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, after which the burden shifts to the nonmovant to set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).   The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex,* 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).  A moving party without the ultimate burden of persuasion at trial has "both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  To meet the burden of production, the "moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" of its claim to carry the ultimate burden of persuasion at trial.  *Id.*   Before the burden shifts to the nonmovant to demonstrate a genuine issue, the movant "must meet its 'initial responsibility' of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law."  *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) (quoting *Celotex*, 477 U.S. at 323).  As a result, summary judgment must be denied "[i]f the evidence produced in support of the summary judgment motion does not meet" the initial burden of production under Rule 56(c).  *Reed*, 312 F.3d at 1194.

Once the movant has satisfied its burden, to avoid summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 (4th ed. 2022) (explaining that the nonmovant cannot rely on "mere reargument of a party's case or the denial of an opponent's allegations" to defeat summary judgment).

In reviewing a motion for summary judgment the Court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1213 (10th Cir. 2002). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). As a result, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). Further, the Court may consider only admissible evidence, *see Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial. *See Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016).

### III.  ANALYSIS

Plaintiffs assert two claims for relief: (1) violation of the FLSA for failing to pay overtime compensation and failing to pay minimum wage for all hours worked [#1 at 6–7], and (2) violations of the CWA and CMWO for failing to pay overtime compensation and for failing to permit compensated rest breaks [#1 at 8]. Defendants have moved for

summary judgment on multiple grounds. With respect to Plaintiffs' claims for violation of the FLSA, Defendants argue that Plaintiffs were engaged in "agricultural employment" as defined under Section 3(f) of the FLSA and were thus exempt from the FLSA's overtime rules. [#22 at 2-5] Defendants also argue that because Plaintiffs kept track of and reported their own hours, Plaintiffs could not be "shorted hours." [*Id.* at 6–8] With respect to Plaintiffs' claims for overtime violations of the CWA and CMWO, Defendants argue that Plaintiffs are not entitled to overtime compensation because agricultural workers were not eligible for overtime under the CWA prior to amendments that went into effect in November of 2022, after Plaintiffs employment had already ended.[6] [#22 at 6] Defendants do not address Plaintiffs' claims regarding violations of the CWA and CMWO for failing to permit compensated rest breaks. [*See id.*]

### A. Claim One: Individual Claims for Violations of the FLSA

Claim One alleges that Defendants violated the FLSA by not paying Plaintiffs overtime compensation at a rate of not less than one and one-half times their regular pay rate [#1, ¶¶ 28-29, 40, 47-49] and by failing to pay Plaintiff's the minimum wage for all hours worked [*id.* at ¶¶ 30-39, 50]. The Court first addresses Plaintiffs' overtime allegations then turns to Plaintiffs' failure to pay for all hours worked allegations.

#### 1. Overtime Violations (Misclassification)

Under the FLSA, an employer must pay an employee overtime compensation at a rate not less than one and one-half times the regular rate at which the employee is

---

[6] Plaintiffs do not directly respond to Defendants' argument about the revision of the CWA promulgating new rules regarding overtime pay. [#22 at 6] Plaintiffs instead note that the CWA tracks the FLSA and that their arguments regarding the FLSA definitions of "agricultural labor" therefore apply equally to Plaintiffs' claims under the CWA. [#24 at 3, n. 1]

employed for all hours that the employee works in a given week above 40 hours. 29 U.S.C. § 207(a)(1). But "any employee employed in agriculture" is exempt from this requirement. 29 U.S.C. § 213(b)(12). FLSA defines "agriculture" as including:

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . ., the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f). Defendants argue that Plaintiffs are exempt from the FLSA's overtime pursuant to this exemption. [#22 at 2-5]

Defendants bear the burden of demonstrating that the agricultural exemption applies. *See Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008). Moreover, "[i]t is well settled that exemptions from the Fair Labor Standards Act are to be narrowly construed." *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295 (1959); *see also Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1184 (2004) (specifying that exemptions are to be narrowly construed against the employers seeking to assert them). "[T]he employer must show that the employee fits plainly and unmistakably within the exemption's terms. . . . An employer must prove that the employee is exempt by 'clear and affirmative' evidence." *Archuleta*, 543 F.3d at 1233 (quotation omitted). "The inquiry into exempt status . . . remains intensely fact bound and case specific." *Id.* (quotation omitted). And an employer "is not entitled to summary judgment unless it can establish that the undisputed facts (or [the employee's] version of any disputed facts) plainly and unmistakably fit within the [ ] exemption." *Welding v. Bios Corporation*, 353 F.3d 1214, 1218 (10th Cir. 2004).

9

The undisputed facts that Defendants set forth in the Motion do not establish that Plaintiffs plainly and unmistakably fit within the agricultural exemption. [#22-1] Per this Court's Civil Practice Standards, any party moving for summary judgment must include a separate statement of undisputed facts. STV Civ. Practice Standard V.I.2(ii). The separate statement of undisputed facts submitted by Defendants does not address the type of work Plaintiffs performed. Indeed, Defendants do not list any undisputed facts that discuss the nature of Defendants' business, or Plaintiffs' role within that business, beyond a statement asserting that Defendant Humalfa is a business engaged in interstate commerce with an "annual gross volume sales made or business done" greater than $500,000. [#22-1, SOF6–7] Defendants, as the employers, bear the burden of establishing that their employees are exempt from the overtime entitlement. *Archuleta*, 543 F.3d at 1233. Defendants' failure to include any facts in their statement of undisputed facts concerning the nature of their business or whether Plaintiffs were engaged in agricultural employment is alone sufficient to find that Defendants have not met their burden of demonstrating that the agricultural exemption applies.[7] *Copper Creek, Inc. v. State Farm Fire & Cas. Co.*, No. 21-cv-01603-PAB-MEH, 2022 WL 375574, at *1 n.3 (D. Colo. Feb. 7, 2022). ("Defendant's failure to comply with the Court's practice standards is grounds to deny the motion."); *Vester v. Asset Acceptance, L.L.C.*, No. 08-cv-01957-MSK-LTM, 2009 WL 2940218, at *3 (D. Colo. Sept. 9, 2009) (finding summary judgment

---

[7] The Court's requirement that parties seeking summary judgment separately identify each undisputed fact—which may then be rebutted by the party opposing summary judgment—"streamlines and standardizes the presentation of [summary judgment] motions, allowing the Court to more quickly ascertain the issues and facts in dispute." *Vester v. Asset Acceptance, L.L.C.*, No. 08-cv-01957-MSK-LTM, 2009 WL 2940218, at *3 (D. Colo. Sept. 9, 2009). And the Court finds it inappropriate to require Plaintiffs to rebut facts that Defendants have failed to identify as undisputed.

10

motion should be summarily denied for failure to follow the court's practice standards for such motions).

But even if the Court were to go beyond the undisputed facts identified by Defendants, Defendants' Motion would still fail. Defendants' Motion is accompanied and supported by Defendant Crowder's Affidavit, which briefly discusses Defendant Humalfa's main business operations. [#22-2] Even considering that affidavit, however, the Court does not find that Defendants have met the "clear and affirmative" standard with respect to showing whether or not Defendants' business fits within the agricultural exemption. *Archuleta*, 543 F.3d at 1233 (quotation omitted).

The Tenth Circuit has interpreted the definition of agriculture in Section 203(f) of the FLSA to include "farming in both a primary and a secondary sense." *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1203–04 (10th Cir. 2004) (quoting *Bayside Enterprises, Inc. v. NLRB*, 429 U.S. 298, 300 (1977)). In their Motion, Defendants assert that Plaintiffs' employment falls within the secondary sense of agriculture, citing Defendant Crowder's Affidavit. [#22 at 3] To fall within the secondary sense of agriculture, Defendants must prove that Plaintiffs' work was: "(1) performed by a farmer or on a farm, and (2) incident to or in conjunction with such farming operations." *Pacheco*, 365 F.3d at 1205. This, Defendants did not do.

In their Motion, Defendants assert that Defendant Humalfa's work consisted of "raising of livestock performed on a farm in which Humalfa, more specifically the Plaintiffs, were preparing a by-product for market of that farming operation." [#22 at 4] But Defendants do not provide any citation for this conclusion, let alone a citation to admissible evidence of facts. And Defendant Crowder's Affidavit's discussion of

11

Defendant Humalfa's operations does not prove by clear and affirmative evidence that Plaintiffs' work was performed by a farmer or on a farm and incident to or in conjunction with such farming operations.  [#22-2, ¶¶ 2–4]; *see also Archuleta*, 543 F.3d at 1233. Specifically, Defendant Crowder represents that Humalfa "converts raw manure into organic fertilizer" by "stabiliz[ing] the beef manure left in the feed lots by composting." [*Id.*, ¶¶ 2–3]  But Defendant Crowder does not provide any explanation into this stabilization or composting process.  [*Id.*]  Similarly, Defendant Crowder states that Humalfa "processes the manure on the cattle feed lots after it is left by cattle" and "ships it to the main facility to be turned into fertilizer," but does not elaborate on the manner in which it processes the manure.  [*Id.* at ¶ 4]  And Defendants do not address whether their operations are "incidental activities which are necessary to [the farming] process" or are "organized as an independent productive activity."  *Pacheco*, 365 F.3d at 1205-06 (quotation omitted).  Given the lack of detail concerning Defendants' operations, Defendant Crowder's statements that Mr. Porter "overs[aw] the processing of manure on cattle feed lots preparing it for shipment to the [Humalfa] main facility" [#22-2, ¶ 6] and that Ms. Porter "assisted in the processing of manure on feed lots" [*id.* at ¶ 7] are not particularly helpful in allowing the Court to assess the precise nature of Plaintiffs' work or whether that work falls within the FLSA's agricultural employment exemption.[8]

As detailed herein, an analysis of the agricultural employment exemption is "intensely fact bound and case specific." *Archuleta*, 543 F.3d at 1233 (quotation omitted). To succeed in arguing that Plaintiffs' employment falls within this exemption, Defendants

---

[8] Defendants' Motion states that Plaintiffs "are doing a necessary function on a farm for Humalfa which is solely dedicated to" removing manure produced by cattle in a feed lot, but fails to provide a citation to record evidence for this assertion.  [#22 at 4]

must "prove that [Plaintiffs' are] exempt by clear and affirmative evidence." *Id.* (quotation omitted). Defendants have failed to satisfy that burden through their Motion. As a result, Defendants' Motion is DENIED to the extent to which it seeks summary judgment on Plaintiff's FLSA claim regarding failure to pay overtime wages.

### 2. Failure to Pay Federal Minimum Wage for All Hours Worked

Plaintiffs have alleged that Defendants failed to pay them for all hours worked. Specifically, Plaintiffs allege: (i) Defendants did not pay Ms. Porter for the hours she worked before she was formally hired by Defendants [#1, ¶¶ 36–37], (ii) Defendants did not pay Mr. Porter for hours worked off the clock [#1, ¶¶ 32–35], (iii) Defendants did not document all hours worked by Plaintiffs [#1, ¶ 32, 35, 39], and (iv) Defendants did not pay Plaintiffs for their last one to two weeks of work [#1, ¶ 44]. The Court addresses each category of alleged FLSA violation below.

#### a. Hours Worked by Ms. Porter Before Formal Hire

Plaintiffs allege that Defendants failed to pay Ms. Porter adequately for the hours she worked before she was formally hired in December of 2021. [#1, ¶¶ 36–37] Defendants address this in their Motion briefly, but their assertion that Ms. Porter was adequately compensated and its accompanying support do not meet the threshold for summary judgment. [#22 at 7] The Motion does not address whether Ms. Porter worked for Defendants prior to being formally hired or whether she should have been paid for such work. [*See generally* #22] And while Defendants claim several times that Plaintiffs could never be paid incorrectly because they "reported their own hours" [*see* #22-2, ¶¶ 12–16; #22-3, ¶¶ 10–13], Ms. Porter attests that her paychecks were "regularly adjusted" by Defendants' accounting department and that Ms. Day ignored Ms. Porters' complaints

about those discrepancies [#24-2, ¶ 15]. Given this factual dispute and the lack of development of these issues in Defendants' Motion, the Court finds summary judgment inappropriate on this category of alleged FLSA violation.

### b. Off-the-Clock Hours and Paycheck Discrepancies

Plaintiffs allege that they were both regularly required to work off the clock and that the hours they reported to Ms. Day were often different than the hours recorded on their paychecks. [##1, ¶¶ 30–35, 37, 39; 24-1, ¶¶ 15, 17; 24-2, ¶ 15] Defendants allege that because Plaintiffs worked unsupervised and reported their own hours via text, there can be no instances of Plaintiffs being "shorted hours." [#22 at 6–8] Further, in Defendant Crowder's affidavit supporting the instant Motion, he alleges Plaintiffs "were solely responsible" for getting paid for their work as they reported their own hours and "no reduction in hours was ever calculated" by Ms. Day. [#22-2, ¶¶ 12–16] Ms. Day also represents that she "never made any reduction in hours," nor did she make "any distinction in terms of the type of work" Plaintiffs did. [#22-3, ¶¶ 10–13]

In contrast to the testimony of Defendant Crowder and Ms. Day, Ms. Porter attests that Plaintiffs' paychecks were "regularly adjusted" by Defendants' accounting department and that Ms. Day ignored Ms. Porters' complaints about those discrepancies [#24-2, ¶ 15; *see also* #24-1, ¶ 15 (Mr. Porter attesting to the same)]. Mr. Porter further testified that his supervisor did not permit him to report certain hours that Mr. Porter worked but which were not deemed "part of [his] regular workday." [#24-1, ¶ 17] Thus, Plaintiffs have provided evidence contradicting Defendants' contention that Plaintiffs were paid for all hours worked.

The Court finds that the statements made by the parties regarding paycheck discrepancies and payment for off-the-clock hours are a clear indication of "evidence [that] presents a sufficient disagreement to require submission to a jury." *See Anderson*, 477 U.S. at 251–52. Accordingly, summary judgment is not appropriate on Plaintiffs' claims regarding paycheck discrepancies and off-the-clock hours.

### c.     Failure to Pay Last One to Two Weeks of Work

The Motion does not address Plaintiffs' assertion that they were not paid for their last one to two weeks of work. [*See* #22; *see also* #1, ¶ 44] The Court therefore presumes that Defendants do not move for summary judgment on Plaintiffs' Claim One to the extent it is grounded in an allegation that Defendants did not pay Plaintiffs for their last one to two weeks worked.

### d.     Conclusion

Thus, the Court concludes that Defendants have failed to meet their burden of establishing an entitlement to summary judgment on Plaintiffs' claims that Defendants failed to pay the federal minimum wage for all hours worked. Accordingly, the Motion is DENIED to the extent it seeks summary judgment on Plaintiffs' claim regarding failure to pay the federal minimum wage for all hours worked.

## B.     Claim Two: Individual Claims for Violations of the CWA and CMWO

Plaintiffs state law claims are premised on Defendants' alleged failure to pay overtime wages at a rate of not less than one and one-half times Plaintiffs' regular pay rate [#1, ¶¶ 56-57] and failure to pay Plaintiffs for Plaintiffs' rest breaks as required by the CMWO [*id.* at ¶ 58]. The Court addresses each allegation below.

### 1. Overtime Violations (Misclassification)

Neither Plaintiffs nor Defendants have argued that Colorado's exemption for agricultural workers that was in effect during Plaintiffs' employment differed in any material respect from the FLSA's exemption for agricultural workers.[9] [##22 at 6; 24 at 3 n.1] Thus, for the reasons outlined in Section III.A.1 above, Defendants' Motion with respect to Plaintiffs' claims under the Colorado Wage Act is DENIED. [#24 at n. 1; #22 at 5–6]

### 2. Compensated Rest Breaks

Plaintiffs claim that they were not paid for compensated rest breaks as required by Rule 5 of the CMWO. [#1, ¶ 58] Defendants do not address this claim in the instant Motion. [*See* #22] The Court therefore presumes that Defendants do not move for summary judgment on Plaintiffs' Claim Two to the extent it is grounded in an allegation that Defendants did not permit Plaintiffs to take compensated rest breaks as required under Rule 5 of the CMWO.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [#22] is **DENIED**.

---

[9] Defendants argue that Plaintiffs are not entitled to the overtime protections that the Colorado legislature provided to agricultural workers in Senate Bill 21-087 because that bill did not go into effect until November 2022, after Plaintiffs' employment had been terminated. [#22 at 6] Plaintiffs do not make any sort of claim in their Complaint that they are entitled to such protections. [*See* #1, ¶¶ 55–61] Instead, the issue is whether Plaintiffs fell within the agricultural worker exemption in effect at the time of Plaintiffs' employment which, as detailed above, is a question that is not appropriate for resolution at the summary judgment stage.

17

DATED:  July 31, 2023            BY THE COURT:

                                                                 s/Scott T. Varholak
                                                                 United States Magistrate Judge