## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 1:22-cv-808-STV

**Christopher Porter and**
**BreaAnna Porter,**
                Plaintiffs,

v.

**T.J. Crowder and Sons, LLC,**
**and Farrel Crowder**
                Defendants.

---

## PLAINTIFFS' TRIAL BRIEF

---

### I.      INTRODUCTION

This is an action under the FLSA, 29 U.S.C. § 201, *et seq.*, and the Colorado Wage Act (CWA), Colo. Rev. Stat. § 8-4-101, *et seq.*, to recover overtime wages owed to Christopher and BreaAnna Porter (collectively "Plaintiffs"), former employees of Defendants T.J. Crowder and Sons, LLC, and Farrel Crowder (collectively "Defendants"). Throughout their employment, Plaintiffs were routinely required to work in excess of 40/wk, but Defendants classified Plaintiffs as exempt from overtime pay under the FLSA and paid them an hourly rate without a premium for their overtime hours. Additionally, Defendants required Plaintiffs to perform work off-the-clock that went uncompensated.

### II.      ISSUES TO BE RESOLVED AT TRIAL

Plaintiffs anticipate that the primary disputes in this matter will be (1) whether the agricultural exemption to the FLSA applies to Plaintiffs' employment with Defendants; (2) the number of hours worked by Plaintiffs; and (3) Plaintiffs' entitlement to liquidated damages.

**A.      Plaintiffs' did not qualify for the agricultural exemption to the FLSA.**

Among the various exemptions from the overtime requirements of the FLSA is the

"agricultural exemption," which provides that the overtime provisions "shall not apply with

respect to . . . any employee employed in agriculture." 29 U.S.C. § 213(b)(12). Section

203(f) provides the FLSA's definition of "agriculture":

> "Agriculture" includes farming in all its branches and among other things
> includes the cultivation and tillage of soil, dairying, the production,
> cultivation, growing, and harvesting of any agricultural or horticultural
> commodities . . ., the raising of livestock, bees, fur-bearing animals, or
> poultry, and any practices (including any forestry or lumbering operations)
> performed by a farmer or on a farm as an incident to or in conjunction with
> such farming operations, including preparation for market, delivery to
> storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f). The Tenth Circuit has interpreted this provision as "include[ing] farming

in both a primary and a secondary sense." *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199,

1203-04 (10th Cir. 2004) (quoting *Bayside Enters., Inc. v. NLRB*, 429 U.S. 298, 300

(1977)). "Primary farming" encompasses all the general labor involved in running a farm.

*Id*. (citing *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762 (1949); 29

C.F.R. § 780.105(b)). "Secondary farming" is broader, and includes "any practices,

whether or not themselves farming practices, which are performed either by a farmer or

on a farm, incidently [sic] to or…with 'such' farming operations." *Farmers Reservoir &*

*Irrigation Co. v. McComb*, 337 U.S. 755, 762–63 (1949). These practices include

"preparation for market, delivery to storage or to market, or to carriers for transportation

to market." *Pacheco*, 365 F.3d at 1204 (quoting *Holly Farms*, 517 U.S. at 398).

      1.     *Plaintiffs did not perform incidental farming labor on farms owned by their employers.*

Plaintiffs' employment with Defendants does not meet the statutory definition of agricultural labor because their labor was not performed "in connection with the farming operations of the same farmer who performs the practices." 29 C.F.R. § 780.137. A farmer's (or farm's) processing of commodities collected from other farmers or farms, which is how Defendants operate their business, is not covered by the exemption. *See* 29 C.F.R. § 780.141 ("No practice performed with respect to farm commodities is within the language under discussion by reason of its performance on a farm unless all of such commodities are the products of that farm."). *See also Roebuck v. Hudson Valley Farms*, 239 F. Supp. 2d 234, 236–37 (N.D.N.Y. 2002) ("where the employer processes produce grown by independent farmers, the employer cannot benefit from the exemption") (citing *Marshall v. Gulf & Western Inds., Inc.,* 552 F.2d 124, 126 (5th Cir. 1977)).

While Plaintiffs performed labor on farms, they did not perform farming labor on farms owned or managed by Defendants. Rather, Plaintiffs performed labor on farms that contracted with Defendants for Defendants' manure services. Accordingly, Defendants misclassified Plaintiffs as exempt employees because "the requirement is not met with respect to employees engaged in any practices performed by their employer in connection with farming operations that are not his own." *Id*. (citing *Farmers Reservoir*, 337 U.S. 755; *Mitchell v. Hunt*, 263 F.2d 913 (5th Cir. 1959); *NLRB v. Olaa Sugar Co.*, 242 F.2d 714 (9th Cir.1957); *Mitchell v. Huntsville Wholesale Nurseries, Inc.*, 267 F.2d 286 (5th Cir. 1959); *Bowie v. Gonzalez*, 117 F.2d 11 (1st Cir. 1941)). "The fact that such a practice pertains to farming operations generally or to those performed on a number of

farms, rather than to those performed on the same farm only, is sufficient to take it outside the scope of the statutory language." *Id*.

Collection and processing of a product that does not already belong to Defendants definitionally does not fall into the "incidental farming operations" the statute intended to cover. 29 C.F.R. § 780.141 ("No practice performed with respect to farm commodities is within the language under discussion by reason of its performance on a farm unless all of such commodities are the products of that farm."). In *Mitchell v. Huntsville Wholesale Nurseries*, the Fifth Circuit determined that the although the plaintiffs were employed by a farming operation, they were not exempt under the agricultural exemption because they were "employed in unloading, sorting, grading, trimming, storing, racking, and picking nursery stock *received from other sources*." 267 F.2d 286, 290 (5th Cir. 1959) (emphasis added). The Court was clear: "the practices in question must relate to the farmer's own farming operations and not to the farming operations of others and must in addition be subordinate to such operations." *Id*. (citing *Maneja v. Waialua Agric. Co.*, 349 U.S. 254 (1955); *Mitchell v. Budd*, 350 U.S. 473 (1956)).

Defendants do not have a farming operation; Defendants process animal byproducts for other farming operations. But even if Defendants' fertilizer manufacturing business could be construed as a farm, Defendants still could not claim the agricultural exemption because the manure processing is not incidental to Defendants' own farming operation. *See Mitchell*, 267 F.2d at 290 ("[P]rocessing on a farm of commodities produced by other farmers is incidental to, or in conjunction with, the farming operation of the other farmers and not incidental to, or in conjunction with, farming operations of the farmers on whose premises the processing is done. Such processing is therefore not

within the definition of agriculture."). Because Defendants process a product incidental to other farms' farming operations rather than their own, the agricultural exemption does not apply to their business. 29 C.F.R. § 780.137.

> 2. *Defendants' business does not produce an agricultural product incident to farming operations.*

The "agricultural or horticultural commodities" contemplated by the statute "refers to commodities resulting from the application of agricultural or horticultural techniques." 29 C.F.R. § 780.112. "The term does not include commodities produced by industrial techniques, by exploitation of mineral wealth or other natural resources, or by uncultivated natural growth." *Id*. Thus, the processing of animal byproducts through an industrialized technique, even if that industrialized technique is "natural" or "organic," removes the byproduct from the definition of "agriculture," and employees engaged in the production of that good are not covered by the exemption. Accordingly, Plaintiffs' work did not fall under the agricultural exemption because the fertilizer Defendants' produce is processed such that it is no longer an agricultural byproduct "incidental" to a farm's operation. Defendants process the raw manure into an entirely new product, which is then sold back to farmers at a significant price increase. *See* www.humalfa.com/products (last visited Jan. 4, 2024) (listing all of the fertilizing products Defendants sell); https://www.humalfa.com/about-us (last visited Jan. 4, 2024) (stating that Defendants employ "a network of sales consultants and support representatives" to assist farmers in choosing the correct fertilizer).

The agricultural exemption does not apply to employees who work with agricultural products that are sold back to farmers. The Supreme Court addressed this very issue in *Farmers Reservoir* cited above: due to the advancement of technology and specialization

in economic development, many products that were historically produced by farms have become independent functions that are removed from the farming process entirely, and therefore removed from the agricultural exemption. 337 U.S. at 761. "Thus, the question as to whether a particular type of activity is agricultural is not determined by the necessity of the activity to agriculture nor by the physical similarity of the activity to that done by farmers in other situations," but instead "whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity," such as an independent company independently processing other farms' cow manure into fertilizer. *Id*. In fact, the Court specifically addressed the production of fertilizer as an agricultural activity:

> The farmhand who cares for the farmer's mules or prepares his fertilizer is engaged in agriculture. But the maintenance man in a power plant and the packer in a fertilizer factory are not employed in agriculture, *even if their activity is necessary to farmers and replaces work previously done by farmers*. The production of power and the manufacture of fertilizer are independent productive functions, not agriculture.

*Id*. at 761–62 (emphasis added). Plaintiffs drove to various cattle farms within their service area to collect cow manure, then processed that manure into fertilizer. Plaintiffs are therefore far more akin to the "fertilizer factory" employee contemplated by *Farmers Reservoir* than the "farmhand who cares for the farmer's mules." 337 U.S. at 761–62.

The regulations provide that "a practice performed in connection with farming operations is within the statutory language only if it constitutes an established part of agriculture, is subordinate to the farming operations involved, and does not amount to an independent business." 29 C.F.R. § 780.144. "Industrial operations *and processes that are more akin to manufacturing than to agriculture* are not included." *Id*. (citing *Holtville Alfalfa Mills v. R. R.*, 230 F.2d 398 (9th Cir. 1955) (*Maneja*, 349 U.S. 254; *Mitchell*, 350

U.S. 473) (emphasis added). The regulations are clear that it was not congressional intent to incorporate industrial operations that happened to be built on farms into the definition of "agriculture." 29 C.F.R. § 780.146; *see also Maneja*, 349 U.S. at 264 ("The sponsors of the Act made clear, however, that 'a farmer erecting on his farm a factory and manufacturing anything you please, whether something he grows or not, who employs many people to manufacture it, and then ships it in interstate commerce . . . would not make the manufacturing . . . a farming operation.'") (quoting 81 Cong. Rec. 7658).

Courts have used different factors for determining whether a practice performed on agricultural byproducts is incident or in conjunction with farming operations, one of which is the degree to which the byproduct has been changed. *See Mitchell*, 350 U.S. at 481; 29 C.F.R. § 780.147. The process of converting raw manure into fertilizer is such that the end-product is no longer recognizable as the initial animal byproduct, which pulls Plaintiffs' employment out of the agricultural exemption.

"Consideration should also be given to the value added to the product as a result of the practice and whether a sales organization is maintained for the disposal of the product." 29 C.F.R. § 780.147. As stated above, Defendants' entire business practice is to produce and sell the fertilizer it manufactures from cow manure. The fertilizer is not an "incidental" product to Defendants' main operation; the fertilizer is the entire operation. Defendant maintains a sales team and partners with retailers to sell their product. *See* www.humalfa.com (last visited Jan. 4, 2024). The fact that Defendants sell the product back to the farms from which they collect the manure does not change this fact—the manure is still processed and resold, even if it never changes location.

The regulations note that the "seasonality" of the operations may be unhelpful as a test to distinguish between operations that are incidental to agriculture and commercial operations, but "the length of the period during which the practice is performed might cast some light on whether the operations are conducted as a part of agriculture or as a separate undertaking when considered together with the amount of investment, payroll, and other factors." 29 C.F.R. § 780.147. Manufacture of fertilizer is Defendants' sole practice. It is not incident to any other practice; it is Defendants' exclusive function. The entirety of Defendants' operations, including investment and payroll, are devoted to manufacturing fertilizer. Defendants' business is a business venture wholly separate from farming. It is a manufacturing business, not a farm.

Because Defendants are not a farm, they cannot produce fertilizer incident to their own farming operations and the agricultural exemption does not apply to Plaintiffs' employment. However, even assuming Defendants did operate a farm, the manufacture of fertilizer from raw cow manure is not "incident" to Defendants' theoretical farming operation; it is a wholly separate business venture. Defendants have utterly failed to prove the application of the agricultural exemption and its Motion must be denied.

**B.      Plaintiffs worked more than forty hours per week and Defendants failed to maintain accurate records of Plaintiffs' hours worked.**

The FLSA imposes requirements on the employer of keeping records of an employee's hours worked. 29 C.F.R. §§ 516.2(a)(7) and 516.3. Normally, an employee who brings suit under the FLSA has the burden of proving that she performed work for which she was not properly compensated; however, that burden is relaxed where the employer has failed to fulfill its obligation of keeping accurate records containing the information required under the FLSA. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S.

680, 686–88 (1946). Without the burden-shifting provision, an employee would essentially be penalized, and the employer rewarded, for the employer's failure to comply with the record-keeping requirements of the FLSA. *Id*. Indeed, an employer who has failed to comply with the requirements that it maintain adequate employment records "pays for that failure at trial by bearing the lion's share of the burden of proof." *Gomez v. Tyson Foods, Inc.*, 2013 U.S. Dist. LEXIS 142586, *30 (D. Neb. Oct. 2, 2013) (citing *Secretary of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991)).

While the initial burden even under *Mt. Clemens* remains on the employee, "that burden is a minimal one." *Id*. The "proof" required under the burden-shifting provisions of *Mt. Clemens* may be nothing more than the employee's own credible sworn testimony, which does not have to be an exact recitation of times, dates, and hours worked to shift the burden of proof to the employer. *Arias v. United States Service Industries Inc.*, 80 F.3d 509 (D.C. Cir. 1996). The employee may simply testify to the best of her recollection regarding the approximate amount of hours worked, and an employer who has failed to fulfill its duty under the FLSA to maintain records which could have been used to rebut the employee's testimony must bear the burden of any consequent imprecision in calculating damages. *Martin v. Selker Bros., Inc.*, 949 F.2d 1286 (3rd Cir. 1991); *Mt. Clemens*, 328 U.S. at 688 ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the FLSA]."); *Mitchell v. Reynolds*, 125 F. Supp. 337 (W.D. Ark. 1954) (although the employer was free to ask employees to keep their own records of hours, the employer did so at its own risk and having done so, did not escape its FLSA obligations).

> 1. *Plaintiffs are entitled to prove their hours according to the burden-shifting provisions of Anderson v. Mt. Clemens Pottery Co.*

Here, the burden-shifting provisions of *Mt. Clemens* apply, and Plaintiffs are entitled to prove their damages by testifying to their hours worked based upon their recollection. Defendants ostensibly provided employees with an app in which they could clock in and out, but the app was dysfunctional, and Plaintiffs were required to text their hours to a designated employee every day. While Plaintiffs reported their hours accurately, their paychecks reflected a downward adjustment and Plaintiffs were not fully compensated for their hours worked. Moreover, Mr. Porter was required to perform work after-hours that went unrecorded and uncompensated, and Ms. Porter was not compensated for her labor performed prior to 2021. Mr. Porter estimates that he worked between 55 and 60 hours per week, and Ms. Porter estimates that she worked a minimum of 50 hours per week.

Notably, where the employer has failed to maintain accurate records, it is neither uncommon nor inappropriate for an employee to satisfactorily and wholly support his or her claims by offering an average range of hours worked each week. *Baden-Winterwood v. Life Time Fitness, Inc.*, 729 F. Supp. 2d 965, 991–992 (S.D. Ohio 2010) ("The Court must determine the amount of uncompensated hours each testifying plaintiff worked. That determination is by necessity imprecise, involving estimates and averages, since Defendant failed to keep records of the precise time Plaintiff worked."). Because Defendant did not pay Plaintiffs for all hours worked, Plaintiffs were denied a proper overtime premium for hours worked in excess of forty hours per week. Under *Mt. Clemens*, the burden then shifts to Defendants to show if, and in what specific weeks, Plaintiffs did not work the hours they claim to have worked.

2. *Plaintiffs are entitled to minimum wage for all hours worked, and are entitled to an overtime premium for all hours worked over 40 per week.*

The FLSA creates certain financial obligations upon employers such as Defendants, including the requirements of minimum wages and that for every hour worked in excess of a certain limit (generally forty (40) hours per week) the employer must pay a premium rate of one and-one-half times the employee's regular hourly rate. 29 U.S.C. § 206, 207. The CWA likewise provides for minimum wages and overtime pay.

Without factoring in Plaintiffs' off-the-clock work, Defendants paid Mr. Porter a regular hourly rate between $13.00 and $15.00 during the statutory period according to Defendants' records. Proper overtime compensation under this pay scheme would result in an hourly rate between $19.50 and $22.50 for all hours worked in a week over forty (40). Likewise, Defendants paid Ms. Porter a regular hourly rate between $11.00 and $12.50 during the statutory period. Proper overtime compensation would result in an hourly rate between $16.50 and $18.75 for all hours worked in a week over forty (40). Defendants did not pay Plaintiffs an accurate overtime premium for all of the hours they worked exceeding forty (40) per week.

**C.     Plaintiffs are entitled to an award of liquidated damages.**

When an employer is found to have violated the overtime and minimum wage requirements of the FLSA, the employer "shall be liable" to the employee for liquidated damages in an amount equal to the amount of wages owed. 29 U.S.C. § 216. Liquidated damages are not penal in nature but represent compensation to the employee for otherwise obscure and difficult to prove damages. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). Subject to the discretion of the Court, an employer may be wholly or partially relieved of his duty to pay liquidated damages **only if the employer proves** "that

the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260.

An employer who violates the FLSA carries the burden of proving its claim of good faith and reasonable grounds, and the employer must show that it acted in both objective and subjective good faith, which requires that an employer demonstrate that it "took affirmative steps to ascertain the [FLSA's] requirements but nonetheless violated its provisions." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008). Liquidated damages are "the norm" where an FLSA violation is found. *Id*.

Defendants will not be able to carry its burden of proving that they acted in both objective and subjective good faith. The minimum wage and overtime provisions of the FLSA are some of the most fundamental and commonly known protections offered to employees. Defendants' failure to pay an overtime premium is inexcusable.

### III.     PROPOSED FINDINGS OF FACT

1.     Defendant T.J. Crowder and Sons, LLC ("T.J. Crowder"), is a Colorado limited liability company doing business as Humalfa.

2.     Defendant Farrell Crowder ("Crowder") is an individual and resident of Colorado.

3.     Within the three years preceding the filing of Plaintiffs' Complaint, Defendants operated a composting company that converts raw cattle manure into organic fertilizer.

4.     Crowder is a principal, director, officer and owner of T.J. Crowder.

5.      In his role as operating employer of T.J. Crowder, Crowder was responsible for hiring and firing employees, setting employees' wages, setting employees' work hours, controlling employees' working conditions, and maintaining employment records, including the wages, working hours, working conditions and records of Plaintiffs.

6.      Defendants had at least two employees engaged in interstate commerce who handle or otherwise work on goods or materials that have been moved in or produced for commerce by others, such as vehicles and fuel.

7.      Plaintiffs individually engaged in interstate commerce and handled or otherwise worked on goods or materials that have been moved in or produced for commerce by others, such as vehicles and fuel.

8.      Mr. Porter was employed by Defendants from 2007 until February of 2022 as an hourly-paid employee, and since approximately 2019 as a Production Manager.

9.      Ms. Porter was employed by Defendants from 2019 until February of 2022 as an hourly-paid Manure Handler.

10.     Defendants established Plaintiffs' rates of pay and hours of work; Defendants paid at least some compensation to Plaintiffs for their labor; Defendant controlled the conditions under which Plaintiffs labored; and Defendants maintained at least some employment records for Plaintiffs.

11.     Mr. Porter's duties included, but were not necessarily limited to, overseeing the composting of fertilizer and assigning other employees to tasks surrounding that activity.

12.     Ms. Porter's duties included, but were not necessarily limited to, driving Defendants' dump trucks to cattle feed lots to collect manure.

13.     Defendants do not own the cattle feed lots nor the cattle from whom Defendants' manure handlers collected manure, nor do they raise cattle at the fertilizer processing facility or at adjacent or affiliated farms.

14.     Defendants contract with independent cattle ranchers and feed lots throughout Colorado to acquire the manure produced on the farms to convert to fertilizer.

15.     Defendants have no association or affiliation with the cattle or the cattle farms except through the manure contract.

16.     The manure was converted into fertilizer by moving the manure into windrows and turning or flipping the rows weekly over the course of roughly eight weeks until the manure was full and loamy.

17.     After the manure was converted to fertilizer, Defendants collected the fertilizer to resell.

18.     Plaintiffs were paid an hourly wage.

19.     Plaintiffs' hours fluctuated from week to week.

20.     Plaintiffs regularly worked more than forty hours per week.

21.     Defendants did not pay Plaintiffs an overtime premium for hours worked over forty per week.

22.     Defendants kept some records of the hours worked by Plaintiffs, but these records were incomplete because they did not include all the hours Plaintiffs worked.

23.     Because the smart phone app provided by Defendants to Plaintiffs for tracking hours was dysfunctional, Plaintiffs reported their hours via text message to Defendants' secretary.

24.     Despite reporting their hours accurately, Plaintiffs' pay checks routinely

reflected a reduction in hourly pay and did not include all of their hours worked.

25.     Mr. Porter was regularly called upon to work after-hours to address issues that rose emergently but was not permitted to report these hours and so was not paid for the after-hours work he performed.

26.     Ms. Porter performed labor for Defendants as early as 2019 but was not added to Defendants' payroll system or provided with any compensation until 2021.

27.     Neither Plaintiff received a paycheck for their last two weeks of employment.

28.     Mr. Porter worked an average of 60 hours per week each week during his tenure of employment with Defendants.

29.     Ms. Porter worked an average of 50 hours per week each week during her tenure of employment with Defendants.

30.     At all relevant times, Defendants knew Plaintiffs were consistently working overtime hours each week.

31.     At all relevant times, Defendants knew the FLSA and the CWA required payment of an "overtime premium" for all hours worked over forty per week.

32.     At all relevant times, Defendants knew they were not paying Plaintiffs the overtime premium required under the FLSA and CWA.

33.     Defendants did not take any affirmative steps to comply with the FLSA or the CWA.

34.     Defendants had no objective or subjective reasons for believing they were in compliance with the FLSA or the CWA.

35.     Defendants shorted Plaintiffs' pay in order to increase their own profit without regard for Plaintiffs' rights or the law.

36.     Defendants knew that they were required by the FLSA and the CWA to pay Plaintiffs an overtime premium for all hours worked over forty per week and knew that Plaintiffs were in fact working over forty hours per week and not being paid a lawful overtime premium, yet willfully and without any justification failed to compensate Plaintiffs accordingly.

## IV.     PROPOSED CONCLUSIONS OF LAW

1.     Jurisdiction and venue are proper in this Court.

2.     For all purposes herein, Defendants are liable as employers under the FLSA and CWA for the violations at issue herein.

3.     At all relevant times, Defendants were Plaintiffs employers.

4.     Defendants are covered employers under the FLSA.

5.     Plaintiffs qualify for individual coverage under the FLSA.

6.     Plaintiffs were nonexempt employees entitled to the rights and benefits of employees under the FLSA during their tenure of employment with Defendants.

7.     The applicable statute of limitations for Plaintiffs' claim under the FLSA and the CWA is three years.

8.     Defendants violated the FLSA and CWA by not properly paying Plaintiffs an overtime premium for all hours worked over forty in a workweek.

9.     Defendants have failed to pay Plaintiffs properly in accordance with the FLSA and CWA.

10.     The FLSA requires that employees receive overtime wages of one and one-half times the employees' regular rates for all hours worked in excess of forty per week.

11.     The CWA additionally requires that employers pay employees an overtime

premium of one and one-half times the employees' regular rates for all hours the employees work over forty each week.

12.     By failing to properly pay Plaintiffs an overtime premium for overtime hours worked, Defendants have not fulfilled their obligation to pay overtime wages and have violated the FLSA and the CWA.

13.     Because Defendants' records of Plaintiffs' hours worked are incomplete and inaccurate, the *Anderson v. Mt. Clemens Pottery* reasonable inference test is applicable in this case, and Plaintiffs are entitled to prove their time worked by stating to the best of their recollection the approximate number of hours worked. 328 U.S. 680 (1946).

14.     Defendants have not met their burden of negating Plaintiffs' best recollection regarding the approximate number of hours worked by Plaintiffs.

15.     Plaintiffs have incurred attorney's fees in an effort to assert their rights for violations by Defendants under the FLSA and the CWA, and by law such reasonable attorney's fees should be paid by Defendants.

16.     Plaintiffs have incurred costs in an effort to assert their rights under the FLSA and the CWA, and by law those costs should be paid by Defendants.

17.     Defendants are liable to Plaintiffs for their back wages.

18.     Plaintiffs are entitled to liquidated damages in an amount equal to their damages as authorized by the FLSA and the CWA because Defendants did not demonstrate that their actions in failing to properly compensate Plaintiffs were in good faith and with reasonable grounds.

19.     Because Defendants carry the burden of proving good faith for liquidated damages purposes, liquidated damages are awarded as Defendants' decisions were not

made in both objective and subjective good faith.

20.     Defendants have not proved that they took affirmative steps to ascertain the FLSA's requirements but nonetheless violated its provisions.

21.     Defendants knew that they were required by the FLSA and the CWA to pay Plaintiffs an overtime premium for all hours worked over forty per week, and knew that Plaintiffs were in fact working over forty hours per week, yet willfully and without any justification failed to compensate Plaintiffs accordingly, Plaintiffs are entitled to punitive damages pursuant to Colorado Revised Statute § 13-21-102.

22.     Defendants are therefore liable to Plaintiffs for liquidated damages.

23.     Plaintiffs are also entitled to collect their costs in the current action as well as a reasonable attorney's fee pursuant to the FLSA and the CWA.

## V.     CONCLUSION

Plaintiffs are entitled to all wages unpaid by Defendants in the scope of Plaintiffs' employment. Though Plaintiffs routinely worked over forty hours per week, Defendants failed to pay them a lawful overtime premium. Defendants' requirement that Plaintiffs work unrecorded hours further exacerbated the offense. Further, Defendants' complete failure to investigate and correct its pay policies, as well as their practice of discouraging employees from recording all hours worked, necessitates a statute of limitations of 3 years and an award of liquidated damages.

Respectfully submitted,

**PLAINTIFFS CHRISTOPHER PORTER
and BREEANNA PORTER**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

*/s/ Josh Sanford*
Josh Sanford
Col. Bar No. 44358
josh@sanfordlawfirm.com