# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-808

Christopher Porter and
BreeAnna Porter,
            Plaintiffs,

v.

T.J. Crowder and Sons, LLC,
and Farrel Crowder,
            Defendants.

---

### DEFENDANTS PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

T.J. Crowder and Sons, LLC, and Farrel Crowder ("Defendants"), by and through their attorneys Michael J. Davis of Davis Murray Law group LLC, hereby files their Proposed Findings Of Fact And Conclusions Of Law and in support thereof states as follows:

### A. PROPOSED FINDINGS OF FACT

1. Defendant Humalfa and Sons, LLC ("Humalfa"), is a company located in Iliff, Colorado.

2. Defendant Humalfa is a Colorado domestic limited liability company.

3. Farrel Crowder is the President and owner of Humalfa with offices located at 26874 CR 65, Iliff, Colorado 80736.

4. Humalfa contracts with farms to process the manure on their feedlots.

5. The manure is created by cattle raised on the farm.

6. The feed lots are located on the farms.

7. Raising cattle on those farms is the primary activity of those farms that have feed lots.

8. The manure is collected from the feed lots and moved to a separate section of the farm where it is processed by turning the manure to lighten it for the purpose of making it fertilizer.

9. Processing manure produced by the cattle in the feed lot is necessary to the farmer because the feed lots could not operate without processing and clearing out manure so the livestock could get in and walk around. Humalfa is organized for and devoted solely to do that particular job.

10. Chris Porter (C.Porter) worked for Humalfa at a feedlot in Yuma, Colorado.

11. C. Porter's sole occupation was to move the manure from the feedlot on the farm to another section of the farm and turn the manure.

12. C. Porter would then assist drivers by loading the processed manure onto trucks where drivers other than Porter would haul it to farms.

13. C. Porter worked for Humalfa from 2018 to 2022.

14. When C. Porter went to work in 2018, he was given the Humalfa Employee Handbook (the "Handbook").

15. The Handbook indicated on p. 8 that "…employee are paid on an hourly basis for all actual hours worked."

16. The Handbook further indicated on p. 8 that "…Due to being agricultural there is no overtime calculated on hours that is over the 40-hour work week."

17. BreeAnna Porter (B. Porter) was the wife of C.Porter.

18. B. Porter drove C. Porter to and from work because C. Porter had a DUI ticket that kept him from driving.

19. In order for C. Porter to go to the feed lot on the farm where he worked, B. Porter had to drive him there or he couldn't work because all the work was done on the feed lot on the farm.

20. B. Porter would text the hours that C. Porter would work to Heather Day ("Day") on a daily basis.

21. In 2018, B. Porter worked periodically for Humalfa. In 2020 and 2021 B. Porter also worked periodically for Humalfa.

22. Because the feed lots were isolated from any supervision, very few workers were able to verify the hours that C. Porter or B. Porter worked. Thus, the pay system was based on trust.

23. K.C. Scott ("Scott') was a driver for Humalfa who picked up loads from the feed lots after they had been processed.

24. Scott expressed to Day that he often saw C. Porter not working the hours that C. Porter had reported.

25. Scott was not a supervisor and never told the Porter's not to report hours. Scott expressed that the Porters often billed for time that they did not work as he observed when picking up processed manure from the feed lots.

26. Day received the hours for work from B. Porter for C. Porter.

27. Day suspected that the Porters were stealing from Humalfa by buying tools and equipment on the Humalfa account.

28. Day was also in charge of making sure the Porters paid back loans Humalfa had made to them for legal fees.

29. Day would at times pay the Porters for extra hours they did not work in order to assist them with money instead of loaning them money.

30. The Porters "were solely responsible" for getting paid for their work as they reported their own hours and "no reduction in hours was ever calculated" by Day.

31. Day never made any reduction in hours, nor did she make any distinction in terms of the type of work the Porters did.

### B. PROPOSED CONCLUSIONS OF LAW

1. Humalfa's activity which is performed on a farm as an incident to or in conjunction with farming operations. qualifies under the definition of "agriculture" supplied by § 3(f) of the Fair Labor Standards Act of 1938 (FLSA) …..which encompasses practices "performed by a farmer or on a farm as an incident to or in conjunction with such farming operations."

2. Humalfa's activity which prepares manure for market and ship it qualifies under the definition of secondary agriculture which "includes preparation for market, delivery to storage or to market or to carriers for transportation to market"  29 U.S.C. § 203(f))). See also Bayside Enterprises, Inc. v. NLRB 429 U.S. 298, 300 (1977).

3. Humalfa's activity of preparing manure for market on a farm is included as agricultural even though it is not performed by the farmer and his hands and is a separate company organized for and devoted solely to that particular job. *Bills v. Cactus Family Farms*, LLC, 5 F. 4th 844, 847-848 (8th Cir 2021).

4. Humalfa's activity of processing manure on a farmer's feed lot on farms in which raising cattle on those farms is the primary activity of those farms that have feed lots falls within

the secondary sense of agriculture because it is performed on a farm, and incident to or in conjunction with such farming operations associated with raising cattle. *Pacheco v. Whiting Farms, Inc*., 365 F. 3d 1199, 1205 (10th Cir. 2004).

5.  Humalfa's activity as described above qualifies as agriculture' which "…includes farming in all its branches and among other things includes …. the raising of livestock…and any practices …… performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." 29 U. S. C. § 203(f).

6.  Humalfa's operations of processing manure produced by the cattle in the feed lot is necessary to the farmer and essential to the continued operations of the feed lots by processing and removing manure that allows livestock to get in and move around as "incidental activities which are necessary to [the farming] process" or are "organized as an independent productive activity." *Pacheco,* cited supra at 1205-06

7.  The Porters who worked on a farm incident to or in conjunction with farming operations of raising cattle preparing the manure for market, delivery to storage or to market were not "employees" within the meaning of the National Labor Relations Act ("the Act") and instead were "agricultural laborers" who are explicitly excluded from the coverage of the Act. See 29 U.S.C. § 152(3).[1]

8.  Because the Porters were agricultural laborers as indicated, they did not qualify for overtime pay.

9.   In *Coors v. Security Life of Denver Ins. Co*., 112 P. 3d 59, 66 (Colo. 2005) the Court held that "The sufficiency of evidence to justify an award of punitive damages is a question of law".  See *Mince v. Butters*, 200 Colo. 501, 502, 616 P.2d 127, 129 (1980). In reviewing this

issue, we consider the totality of the evidence viewed in the light most supportive of the verdict. Coors cited supra at 65. There is insufficient evidence of the hours worked by B. Porter to justify an award of additional overtime because C.Porter self-reported his hours and worked without supervision.

10. In *Broncucia v. McGee*, 475 P. 2d 336, 337 (Colo. 1970). When conflicting evidence is presented to the Court, "The credibility of the witnesses, the sufficiency, probative effect and weight of the evidence, the inferences and conclusions to be drawn therefrom, of necessity, are all within the province of the trial court and will not be disturbed on review unless manifestly erroneous." *Brenaman v. Willis*, 314 P.2d 691, 692 (1957). Because there is conflicting evidence as to whether C. Porter worked the hours he reported, the Court must consider all factors.

11. In explaining the "reasonable inference rule" the Court in *Anderson v. Mt. Clemens Pottery Co.,* 328 US 680,688 (1946), the Court explained that "Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain. But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute." Because of the method of the Porters reported their hours by self-reporting by text, they cannot claim that unreported overtime was certain other than what they reported.

## C. CONCLUSION

Plaintiffs are agricultural workers because Humalfa's activity is performed on a farm as an incident to or in conjunction with farming operations which qualifies under the definition of "agriculture". Inadditio, Humalfa's activity which prepares manure for market and ship it

qualifies under the definition of secondary agriculture which includes preparation for market, delivery to storage or to market or to carriers for transportation to market. In addition, Humalfa's activity of preparing manure for market on a farm is included as agricultural even though it is not performed by the farmer and his hands and is a separate company organized for and devoted solely to that particular job. Further, Humalfa's operations of processing manure produced by the cattle in the feed lot is necessary to the farmer and essential to the continued operations of the feed lots by processing and removing manure that allows livestock to get in and move around. The Porters who worked on a farm incident to or in conjunction with farming operations of raising cattle preparing the manure for market, delivery to storage or to market were not "employees" within the meaning of the National Labor Relations Act ("the Act") and instead were "agricultural laborers" who are explicitly excluded from the coverage of the Act and thus did not qualify for overtime pay.

Lastly, there is insufficient evidence of the hours worked by B. Porter to justify an award of additional overtime because C.Porter self-reported his hours and worked without supervision. Further, there is conflicting evidence as to whether C. Porter even worked the hours he reported. Finally, because of the method of the Porters reported their hours by self-reporting by text, they cannot claim that unreported overtime was certain other than what they reported.

Respectfully submitted this 14th day of February, 2024.

/s/ *Michael J. Davis*
Michael J. Davis
Davis Law Group LLC
2255 Sheridan Boulevard
St. C 272
Edgewater, CO 80214
720-361-6036
Fax : 720-368-5262
Email:
mdavis@Davismurraylaw.com

**CERTIFICATE OF SERVICE**

      I, Michael Davis, certify that a true and accurate copy of the preceding was served by the Court's filing system, to all those entitled to notice.

      _/s/ Michael J. Davis_