**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-808-STV

**Christopher Porter and**
**BreeAnna Porter,**
                    Plaintiffs,

v.

**T.J. Crowder and Sons, LLC,**
**and Farrel Crowder**
                    Defendants.

_____

**PLAINTIFFS' RESPONSE TO POST-TRIAL BRIEF**

_____

### I.    INTRODUCTION

Defendant Farrel Crowder's testimony at trial makes it clear that this Court should reject Defendants' claim that the agricultural exemption under the Fair Labor Standards Act (FLSA) shields them from overtime obligations. While the FLSA offers exemptions for specific agricultural activities, these exemptions do not encompass the sale and distribution of fertilizer, a separate industry that remains distinct from agricultural production. Nor do they apply to the employees of such a business who collect and process cow manure into fertilizer simply because cow manure is found on farms and fertilizers are used on farms. Defendants' core business activities fall outside the scope of the agricultural exemption, subjecting their employees to the FLSA's protections. As such, the Court should rule in favor of Plaintiffs on the issue of liability, which would then allow the parties to engage in good faith negotiations to determine the appropriate amount of damages owed to Plaintiffs.

## II.    ARGUMENT

Defendants claim that they failed to pay Plaintiffs a proper overtime premium because Plaintiffs' work falls under the agricultural exemption of the FLSA. Defendants' argument is based on a mis-presentation of relevant law—the agricultural exemption only applies to *farm* employees who work in agricultural functions or on agricultural byproducts *of that same farm*. It does not apply to employees who simply perform some work on *any* farm. Nor does it apply to employees such as Plaintiffs, who work for a company that manufactures and sells a farming product. *See* Section A, *infra*.

### A.  The agricultural exemption[1] does not apply to Plaintiffs.

Because precedent mandates finding in favor of Plaintiffs, Defendants' Post-Trial Brief cites distinguishable and immaterial authority. They do so because application of binding authority to Mr. Crowder's testimony makes clear that the narrow exception to the FLSA's overtime requirement offered by the agricultural exemption does not apply to Defendants' business. It is Defendants' burden to prove the application of the agricultural exemption,[2] a burden that they have unequivocally failed to meet.

#### 1.  Legal Standard: Agricultural Exemption

Among the various exemptions from the overtime requirements of the FLSA is the "agricultural exemption," which provides that the overtime provisions "shall not apply with respect to . . . any employee employed in agriculture." 29 U.S.C. § 213(b)(12). Section 203(f) provides the FLSA's definition of "agriculture":

---

[1]    Because the Colorado Wage Act tracks the FLSA, Plaintiff will only address the FLSA definitions of "agricultural labor," but the following analysis applies equally to Plaintiffs' claims under the Colorado law. *See* Colo. Rev. Stat. § 8-13.5-201(3).

[2]    *See Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1156 (10th Cir. 2012).

> "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . ., the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f). The Tenth Circuit has interpreted this provision as "include[ing] farming in both a primary and a secondary sense." *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1203-04 (10th Cir. 2004) (quoting *Bayside Enters., Inc. v. NLRB*, 429 U.S. 298, 300 (1977)). "Primary farming" encompasses all the general labor involved in running a farm. *Id*. (citing *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762 (1949); 29 C.F.R. § 780.105(b)). "Secondary farming" is broader, and includes "any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidently [sic] to or in conjunction with 'such' farming operations." *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762–63 (1949). These practices include "preparation for market, delivery to storage or to market, or to carriers for transportation to market." *Pacheco*, 365 F.3d at 1204 (quoting *Holly Farms*, 517 U.S. at 398).

Defendants assert that Plaintiffs' employment falls under the secondary farming category of agricultural labor. *See* Defendants' Post-Trial Brief, p. 2. "To constitute secondary farming, the practice must be (1) performed by a farmer or on a farm, and (2) incident to or in conjunction with such farming operations." *Pacheco*, 365 F.3d at 1204 (citing *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1185–86 (10th Cir. 2004)). The federal regulations provide further insight: in order for an activity to be considered exempt

secondary farming, the practices must be performed "in connection with the farming operations of the same farmer who performs the practices." 29 C.F.R. § 780.137. "Thus, the requirement is not met with respect to employees engaged in any practices performed by their employer in connection with farming operations that are not his own." *Id.* (citing *Farmers Reservoir*, 337 U.S. 755; *Mitchell v. Hunt*, 263 F.2d 913 (5th Cir. 1959); *NLRB v. Olaa Sugar Co.*, 242 F.2d 714 (9th Cir.1957); *Mitchell v. Huntsville Wholesale Nurseries, Inc.*, 267 F.2d 286 (5th Cir. 1959); *Bowie v. Gonzalez*, 117 F.2d 11 (1st Cir. 1941)). A farmer's (or farm's) processing of commodities collected from other farmers or farms is definitively not covered by the exemption. *See* 29 C.F.R. § 780.141 ("No practice performed with respect to farm commodities is within the language under discussion by reason of its performance on a farm unless all of such commodities are the products of that farm."). *See also Roebuck v. Hudson Valley Farms*, 239 F. Supp. 2d 234, 236–37 (N.D.N.Y. 2002) ("where the employer processes produce grown by independent farmers, the employer cannot benefit from the exemption") (citing *Marshall v. Gulf & Western Inds., Inc.,* 552 F.2d 124, 126 (5th Cir. 1977)). Notably, "The fact that such a practice pertains to farming operations generally or to those performed on a number of farms, rather than to those performed on the same farm only, is sufficient to take it outside the scope of the statutory language." *Id*.

Further, the "agricultural or horticultural commodities" contemplated by the statute "refers to commodities resulting from the application of agricultural or horticultural techniques." 29 C.F.R. § 780.112. "The term does not include commodities produced by industrial techniques, by exploitation of mineral wealth or other natural resources, or by uncultivated natural growth." *Id*. Thus, the processing of animal byproducts through an

industrialized technique, even if that industrialized technique is "natural" or "organic," removes the byproduct from the definition of "agriculture," and employees engaged in the production of that good are not covered by the exemption.

Thus, for the agricultural exemption to apply here, Defendants must prove that Plaintiffs work was performed a) as farmers or on a farm, b) incidentally to the farming operations of the farm on which it was performed, and c) on an unprocessed animal or plant byproduct. Mr. Crowder's testimony and Defendants' evidence at trial fails to establish that any of these strict elements have been met.

2.  The agricultural exemption does not apply because Plaintiffs are not farmers and were not employed by the farms on which they worked.

Defendants do not claim to operate a farm, nor do they produce manure as an incident to their farming operation. Defendants' business is a composting company that transforms raw cattle manure into fertilizer. *See* Transcript of Testimony of Farrell Crowder, Taken at the Bench Trial Proceedings Before the Honorable Scott T. Varholak, United States Magistrate Judge (hereinafter "Transcript") 3:1–4, ECF No. 45-1. This distinction is critical because the FLSA agricultural exemption applies only to work performed by a farmer or on a farm. Defendants' business does not produce the manure that is used in their fertilizer. The manure is collected from a feedlot owned by a company called Five Rivers Cattle Feeding. *Id*. at 7:7–8. Defendants have no ownership interest in the operations of the feedlot or the real estate. Defendants simply set up operations on the feedlot for convenience purposes. *Id*. at 7:14–8:3.

Defendants' employees are not involved in the raising of the cattle that produce the manure and in no way contribute to the manure output of the cattle. Plaintiff Chris

Porter was a "production manager," not a farmer. His primary duty was getting manure out of pens and then hauling that manure to Defendants' compost yard. *Id.* at 10:13–25; 34:13-15. When Plaintiff BreeAnna Porter was formally employed by Defendants she collected manure from a feed lot and moved it into the compost piles that eventually became fertilizer. Decl. of BreeAnna Porter ("Decl. B. Porter") ¶ 5, ECF No. 24-2. Before that, Ms. Porter would clean the cabs of the loaders and trucks. Transcript at 23:2-4. These activities are essential to Defendants' fertilizer business, not to any agricultural operation.

In *Holly Farms Corp. v. National Labor Relations Board*, the Supreme Court determined that chicken farm employees were not engaged in agricultural labor when their primary function was to collect chickens owned by their employer but raised on independent farms for their employer's chicken processing facility. 517 U.S. 392 (1996). Like in this case, the *Holly Farms* plaintiffs were not involved in the care or raising of the chickens they collected. *Id.* at 402. The Court noted that the plaintiffs "begin and end each shift by punching a timeclock at the processing plant," which was "located three miles from the hatcheries." *Id.* at 404. Like the *Holly Farms* plaintiffs, Plaintiffs here do not perform farm work, and the fact that the work is performed "on a farm" is irrelevant because it is not performed on their employers' farm or incident to their employers' farming activities. This work cannot be construed as "farm work" as contemplated by the statute.

3. The agricultural exemption does not apply because manure collection is not "incidental or in conjunction with" Defendants' farming operations.

Collection and processing of a product that does not already belong to Defendants definitionally does not fall into the "incidental farming operations" the statute intended to cover. 29 C.F.R. § 780.141 ("No practice performed with respect to farm commodities is within the language under discussion by reason of its performance on a farm unless all of such commodities are the products of that farm."). In *Mitchell v. Huntsville Wholesale Nurseries*, the Fifth Circuit determined that although the plaintiffs were employed by a farming operation, they were not exempt under the agricultural exemption because they were "employed in unloading, sorting, grading, trimming, storing, racking, and picking nursery stock *received from other sources*." 267 F.2d 286, 290 (5th Cir. 1959) (emphasis added). The Court was clear: "the practices in question must relate to the farmer's own farming operations and not to the farming operations of others and must in addition be subordinate to such operations." *Id.* (citing *Maneja v. Waialua Agric. Co.*, 349 U.S. 254 (1955); *Mitchell v. Budd*, 350 U.S. 473 (1956)).

The fact that a practice performed on a farm is not performed by or for the farmer is a strong indication that it is not performed in connection with the farming operations there conducted. Thus, where such an employer other than the farmer performs certain work on a farm solely for himself in furtherance of his own enterprise, the practice cannot ordinarily be regarded as performed in connection with farming operations conducted on the farm. 29 C.F.R. § 780.143. The fact that prior to the performance of the packing or dehydrating operations, the farmer has relinquished title and divested himself of further responsibility with respect to the product, is highly significant. *Id*.

As described in Section A.1, *supra*, Defendants do not have a farming operation. Defendants do not own the cattle feedlots or the cattle where the manure is being

processed. Transcript at 13:5-9. Title to the manure passes to Defendants once they pick it up in the pens and load it on their trucks. *Id*. at 13:10–14. Defendants' operation is a separate operation from the feedlot. *Id*. at 13:22–24. They have no sort of association or affiliation with the cattle-farming operation except the verbal agreement to do the manure contracting. *Id*. at 14:13–16.

The work Defendants do on the feedlot has no relation to the operations of the cattle farm. The farm the manure is collected from only runs a feed yard. *Id*. at 36:13–19. The cattle being raised on the feedlots are being raised for meat and meat products, not for their manure. The fertilizer that ends up being the result of the improvement through time of the Humalfa process on the manure is not used to enrich the cattle on the feedlot. *Id*. at 46:10–17. Much of the composted manure is applied to pasture lands not owned by the rancher or feedlot who produced the manure. *Id*. at 15:21–25. Furthermore, Defendants' process of converting the raw manure on the feedlot into Humalfa-grade fertilizer is not necessary to the operation of the feedlot the manure is sourced from. *Id.* at 47:1-5.

To the extent cleaning the pens and moving the manure off the feedlot is a byproduct of cattle farming, the Porters did not clean the pens. The work of scraping the manure off the pens and piling the manure for transport was performed by employees of the feedlot. *Id*. at 33:18–34:3. Additionally, the feedlot employs its own manure haulers to just haul the raw manure out. *Id*. at 38:7–21. Both facts further underscore that Defendants' process of turning the raw manure into fertilizer is not incidental to any farming operations.

4. <u>The agricultural exemption does not apply because the fertilizer Defendants produce is not an agricultural product.</u>

Even if Defendants could prove that the work Plaintiffs performed was farm work, and was work performed on Defendants' own farm product, Plaintiffs' work would still not fall under the agricultural exemption because the fertilizer Defendants' produce is processed such that it is no longer an agricultural byproduct "incidental" to a farm's operation.

The agricultural exemption does not apply to employees who work with agricultural products that are sold to farmers as Defendants assert. The Supreme Court addressed this very issue in *Farmers Reservoir* cited above: due to the advancement of technology and specialization in economic development, many products that were historically produced by farms have become independent functions that are removed from the farming process entirely, and therefore removed from the agricultural exemption. 337 U.S. at 761. "Thus, the question as to whether a particular type of activity is agricultural is not determined by the necessity of the activity to agriculture nor by the physical similarity of the activity to that done by farmers in other situations," but instead "whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity," such as an independent company independently processing other farms' cow manure into fertilizer. *Id*. In fact, the Court specifically addressed the production of fertilizer as an agricultural activity:

> The farmhand who cares for the farmer's mules or prepares his fertilizer is engaged in agriculture. But the maintenance man in a power plant and the packer in a fertilizer factory are not employed in agriculture, *even if their activity is necessary to farmers and replaces work previously done by farmers*. The production of power and the manufacture of fertilizer are independent productive functions, not agriculture.

*Id*. at 761–62 (emphasis added).

The regulations provide that "a practice performed in connection with farming operations is within the statutory language only if it constitutes an established part of agriculture, is subordinate to the farming operations involved, and does not amount to an independent business." 29 C.F.R. § 780.144. "Industrial operations *and processes that are more akin to manufacturing than to agriculture* are not included." *Id*. (citing *Holtville Alfalfa Mills v. R. R.*, 230 F.2d 398 (9th Cir. 1955) (*Maneja*, 349 U.S. 254; *Mitchell*, 350 U.S. 473) (emphasis added). The regulations are clear that it was not congressional intent to incorporate industrial operations that happened to be built on farms into the definition of "agriculture." 29 C.F.R. § 780.146; *see also Maneja*, 349 U.S. at 264 ("The sponsors of the Act made clear, however, that 'a farmer erecting on his farm a factory and manufacturing anything you please, whether something he grows or not, who employs many people to manufacture it, and then ships it in interstate commerce . . . would not make the manufacturing . . . a farming operation.'") (quoting 81 Cong. Rec. 7658).

Courts have used different factors for determining whether a practice performed on agricultural byproducts is incident or in conjunction with farming operations, one of which is the degree to which the byproduct has been changed. *See Mitchell*, 350 U.S. at 481; 29 C.F.R. § 780.147. Defendants' process of converting raw manure into fertilizer is such that the end-product is no longer recognizable as the initial animal byproduct. Defendants' process of producing fertilizer involves laying out the raw manure into windrows that are flipped for a period of roughly eight weeks while it undergoes a biological and chemical transformation to become more valuable. Transcript at 16:1–5.

The result is a commercial product that is sold as something wholly distinct from the simple raw manure produced by cattle.

Unlike the cases cited above that have grappled with where to draw the line on where agricultural operations end and a new independent business forms such that it is no longer agricultural, this is not a close call. Defendants are not part of some vertically integrated farming operation that both raises cattle and produces fertilizer. Manufacturing fertilizer is Defendants' sole practice. It is not incident to any other practice; it is Defendants' exclusive function. The entirety of Defendants' operations, including investment, are devoted to manufacturing fertilizer. Once the manure is converted into Defendants' finished product, Defendants' team collects the fertilizer and resells it. *Id*. at 16:6–10. Defendants, not the feedlot, spent the money to make the compost yard. *Id*. at 36:9–12. It is clear that Defendants' business is a business venture wholly separate from farming. It is a manufacturing business, not a farm.

### III.   CONCLUSION

Defendants have failed to establish that Humalfa is an agriculture business. As such, the Court should find that the work the Porters performed was not exempt from the overtime requirements of the Fair Labor Standards Act and any hours they worked over 40 in a workweek should have been paid at one and one-half times their regular rate of pay. In the event the Court rules in favor of Plaintiffs on the issue of liability, the parties have agreed to engage in good faith negotiations to resolve the issue of damages before seeking further intervention from the Court.

Respectfully submitted,

**PLAINTIFFS CHRISTOPHER PORTER
and BREEANNA PORTER**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

*/s/ Josh Sanford*
Josh Sanford
Col. Bar No. 44358
josh@sanfordlawfirm.com