IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:22-cv-808-STV

**Christopher Porter and
BreaAnna Porter,**
        Plaintiffs,

v.

**T.J. Crowder and Sons, LLC,
and Farrel Crowder**
        Defendants.

---

## PLAINTIFFS' POST TRIAL BRIEF

---

Following a bench trial regarding Defendants' liability as to Plaintiff BreeAnna Porter ("Plaintiff"), the Court requested additional briefing on three separate but related issues. First, the Court asked at what level of authority the Corporate Defendant becomes responsible for suffering or permitting someone to work. The law is clear that knowledge of an employee's unauthorized work may be actual or constructive, and may be imputed to an employer through the knowledge of a supervisor or manager. *See* Section A, *infra*. Next, the Court asked how much knowledge Defendant Crowder must have of the work Plaintiff was performing in order to trigger liability. Defendant Crowder's knowledge put Defendant on inquiry notice of Plaintiff's work such that liability attached. *See* Section B, *infra*. Finally, the Court asked for a method of calculating damages when Plaintiff has provided inconsistent testimony as to her hours worked. In accordance with the remedial purposes of the FLSA, Plaintiff need only prove her hours worked by "just and reasonable inference." *See* Section C, *infra*.

**A.  An employer is liable if it has constructive knowledge of an FLSA violation.**

The Court first asks, "At what level of authority does the company become responsible for suffering or permitting someone to work?" The facts of this case demonstrate that Plaintiff worked off-site, away from the eyes of Defendants' management but under the supervision of her husband. Relatedly, the Court asked for additional briefing regarding whether Plaintiff's husband, co-Plaintiff Christopher Porter, had authority to "hire" Plaintiff to perform work for Defendant despite the company handbook's prohibition of working alongside relatives. The question then, is whether Defendant may be liable for Christopher Porter's decision to allow Plaintiff to perform labor for Defendant, and if not, then what level of management within Defendants' business needed awareness of Plaintiff's work for liability to attach.

    1.    <u>Legal Standard: The FLSA defines "employ" broadly in keeping with its remedial purpose.</u>

The FLSA defines "employ" broadly as "to suffer or permit to work." 29 U.S.C. § 203(g). The federal regulations expand on this definition: "Work not requested but suffered or permitted is work time." 29 C.F.R. § 785.11. The regulations are clear that the reason for the work "is immaterial;" if the employer "knows of has reason to believe" that the employee is performing work, then that work time is compensable. *Id*. Notable for this case, "The rule is also applicable to work performed away from the premises or the job site, or even at home." 29 C.F.R. § 785.12. "If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked." *Id*.

The law is likewise clear that the burden for stopping undesired work lies firmly with the employer: "In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It

cannot sit back and accept the benefits without compensating for them." 29 C.F.R. § 785.13. Courts have determined that any work performed that an employer would become aware of through "reasonable inquiry" is compensable work, regardless of whether the employer has actual knowledge of the work performed. *Schneider v. Landvest Corp.*, No. 03 CV 02474 WYD PAC, 2006 WL 322590, at *23 (D. Colo. Feb. 9, 2006) (citing *Reich v. Dept. of Conservation and Nat. Resources, State of Ala.*, 28 F.3d 1076, 1083–84 (11th Cir. 1994); *Brennan v. General Motors Acceptance Corp.,* 482 F.2d 825, 827–28 (5th Cir.1973)).[1]

Also notable for the Court's inquiry is 29 C.F.R. § 785.13's clear statement that a mere rule prohibiting work is insufficient to defeat liability. 29 C.F.R. § 785.13 ("The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."). The FLSA is clear that liability attaches at the moment an employer becomes aware, or could have become aware through reasonable inquiry, that an employee is performing uncompensated labor and does nothing to stop that labor from continuing, regardless of any rule in place that prohibits the labor.

---

[1] *See also Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016) ("we have found that a 'reason to believe,' or constructive knowledge of something, exists when the employer 'should have discovered it through the exercise of reasonable diligence.'"); *Von Friewalde v. Boeing Aerospace Operations, Inc.,* 339 Fed. Appx. 448, 455 (5th Cir. 2009) ("Constructive knowledge exists if by exercising reasonable diligence an employer would become aware that an employee is working overtime."); *Hertz v. Woodbury Cty.,* 566 F.3d 775, 781 (8th Cir. 2009) ("Because constructive knowledge of overtime work is sufficient to establish liability under the FLSA, if the County, through reasonable diligence, should have acquired knowledge that Plaintiffs were working in excess of their scheduled hours, the jury would have been empowered to find the County liable."); *Allen v. Bd. of Pub. Educ. for Bibb Cty.,* 495 F.3d 1306, 1321 (11th Cir. 2007) ("We have said that if an employer had an opportunity to acquire knowledge of an employee's work by using reasonable diligence, then the employer can be charged with constructive knowledge.").

Regarding the inquiry into what level of management must have knowledge before liability attaches, the federal regulations impute the knowledge of an employee's "supervisor" to the employer, which courts have interpreted to include those in a managerial position. 5 C.F.R. § 551.104 ("Suffered or permitted work means any work performed by an employee for the benefit of an agency, whether requested or not, provided the employee's supervisor knows or has reason to believe that the work is being performed and has an opportunity to prevent the work from being performed.").[2] Notably, Courts have imputed the knowledge of a direct supervisor to the employer even in cases in which the upper levels of management were wholly unaware of the work. Liability unquestionably attaches when any upper level of management gains actual or constructive knowledge of uncompensated labor. *See, e.g.*, *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969) ("[T]he mandate of the statute is directed to the employer and 'he may not escape it by delegating it to others.' The 'duty rests on the employer to inquire into the conditions prevailing in his business. He does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates. He must then stand or fall with those whom he

---

[2] *See also Brennan*, 482 F. 2d at 828; *Bailey v. TitleMax of Georgia, Inc.*, 776 F. 3d 797, 802 (11th Cir. 2015) (the employer "knew or should have known" that the employee worked overtime because the employee's supervisor was aware of the unrecorded overtime); *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1321 (11th Cir. 2007) ("Our cases indicate that an employer can be charged with constructive knowledge even when an employee has not alleged a supervisor's direct knowledge. We have said that if an employer had an opportunity to acquire knowledge of an employee's work by using reasonable diligence, then the employer can be charged with constructive knowledge."); *Garcia v. Sar Food of Ohio, Inc.*, No. 1:14-CV-01514, 2015 WL 4080060, at *5 (N.D. Ohio July 6, 2015) ("In the FLSA context, courts have imputed knowledge from a supervisor to an employer where supervisors prevent employees from accurately reporting hours or where supervisors encourage employees to under-report hours."); *Butler v. Homeservices Lending LLC*, No. 11-CV-2313-L MDD, 2013 WL 1285567, at *5 (S.D. Cal. Mar. 26, 2013) (finding that whether an employee was a "manager" whose knowledge of overtime work could be imputed to the employer was a question of fact); *Ellerd v. Cnty. of Los Angeles*, No. CV 08-4289 CAS FEMX, 2012 WL 893608, at *4 (C.D. Cal. Mar. 14, 2012) (same).

selects to act for him. . . . [T]he duty must be held personal, or we nullify the statute.'") (quoting *Lenroot v. Interstate Bakeries Corp.*, 146 F.2d 325, 328 (8th Cir. 1945)).

      2.    <u>Defendants suffered or permitted Plaintiff to perform labor for Defendants' benefit without compensation.</u>

Based on the above, Defendants became liable for Plaintiff's labor when they were put on inquiry notice regarding the fact that Plaintiff was performing labor for their benefit and did nothing to prevent that labor. While Defendants cannot be said to have constructive knowledge of Plaintiff's labor when only Christopher Porter was aware of her labor, the record is clear that Defendants were put on inquiry notice regarding Plaintiff's work almost immediately after she started working. Defendants tracked their employees' hours by having the employees send a text message stating their clock in and out times to Defendants' office manager, and the office manager cut payroll checks based on these texts. From the moment she began working alongside her husband, Plaintiff sent texts regarding her work and presence at the feedlot along with Christopher Porter's hours worked to Defendants' office manager. This simple act was sufficient to put Defendants on inquiry notice regarding Plaintiff's labor.

In *Schneider v. Landvest Corp.*, this Court found that the defendants had constructive knowledge that the plaintiff employees were working hours in excess of their reported time. No. 03 CV 02474 WYD PAC, 2006 WL 322590 (D. Colo. Feb. 9, 2006). In *Schneider*, like here, the plaintiffs sued an individual defendant who "had authority over the pay practices . . . and was involved in the implementation of the overtime policies." *Id*. at *22. The Court found that the defendants "knew or should have known" about the plaintiffs' uncompensated overtime worked because of the individual defendant's authority over payroll practices within the company and the plaintiffs' regional manager's

knowledge of the overtime worked. *Id.* at *17–18. Like in *Schneider*, Defendants had constructive knowledge of Plaintiff's work based on Defendants' office manager's knowledge of the labor and Defendant Crowder's control over the company payroll. From the time that Plaintiff began notifying Defendants of her work via text message to the office manager, any "reasonable inquiry" would have shown Defendants that Plaintiff was performing uncompensated labor. *See Schneider*, 2006 WL 322590, at *23 (citing *Reich,* 28 F.3d at 1083–84; *Brennan,* 482 F.2d at 827–28).

Accordingly, the Court need not reach a conclusion regarding whether Christopher Porter could "hire" Plaintiff in violation of the company handbook. Defendants "suffered or permitted" Plaintiff to work for them from the time they knew of her work and did nothing to prevent her from continuing to work. 29 C.F.R. § 785.11–13.

**B.     Individual Defendant Farrell Crowder had constructive knowledge of Plaintiff's unauthorized work.**

The Court's second question is related to the first and relies on the same legal analysis. The Court asks whether liability attaches when Defendant Farrell Crowder was aware that Plaintiff was performing unauthorized work but was unaware of the extent of that work. As described above, specific knowledge as to the extent of Plaintiff's work was unnecessary; Defendant Crowder merely needed sufficient knowledge to put him on inquiry notice regarding whether Plaintiff was performing work at all. Accordingly, liability for Plaintiff's uncompensated labor attached the moment Defendant Crowder had actual or constructive knowledge of the uncompensated labor. As detailed in Section A.2, *infra*, Defendant Crowder had constructive knowledge of Plaintiff's work when she began sending text messages to Defendants' office manager regarding her work.

Moreover, even if the office manager's knowledge of Plaintiff's work was somehow insufficient to put Defendant Crowder on inquiry notice, Defendant Crowder testified that he had actual knowledge of Plaintiff's work. Defendant Crowder stated that he personally supervised work performed at feed lots a few times per month and witnessed Plaintiff performing labor at the feed lots while he was there.

Defendant Crowder did not need specific or even actual knowledge of Plaintiff's work; liability was triggered the moment he would have become aware of the work through reasonable inquiry and did nothing to prevent the work from continuing.

### C. Plaintiff has a lenient burden to show her hours worked by a "just and reasonable inference."

The Court's final question asks how to calculate Plaintiff's damages when her testimony regarding hours worked is inconsistent. While the FLSA places the burden of proving hours worked on the employee, its "remedial nature . . . and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 87 (1946). The Court may calculate damages according to Plaintiff's testimony that creates a just a reasonable inference of her hours worked.

1. <u>Legal Standard: Employees have a lenient burden to prove hours worked under the FLSA.</u>

"An employee who brings suit . . . for unpaid minimum wages or unpaid overtime compensation . . . has the burden of proving that he performed work for which he was not properly compensated." *Mt. Clemens,* 328 U.S. at 686–87. In creating this burden, the Supreme Court recognized the insurmountable obstacle it poses for employees whose employers do not keep accurate records of their hours worked:

> Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy.

*Id.* at 687. "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records . . . [b]ut where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises." *Id.* In this situation, the Court explained:

> The solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

*Id.* Accordingly, the Court held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.*; *see also Handler v. Thrasher,* 191 F.2d 120, 122 (10th Cir.1951). This burden is met even when the employee kept inaccurate time records if the employer knew or should have known that the employee was not reporting all hours worked. *Schneider*, 2006 WL 322590, at *21 (citing *Murray v. Stuckeys, Inc.,* 939 F.2d 614, 617, 621 (8th Cir.1991)).

After an employee has produced sufficient evidence to show work as a matter of just and reasonable inference, the burden shifts back to the employer "to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference drawn from the employee's evidence." *Baker v. Barnard Const. Co., Inc.*, 146 F.3d 1214, 1220 (10th Cir. 1998) (quoting *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85 (10th Cir. 1983)). If the employer cannot rebut the employee's evidence, then the Court may award damages even if the calculation is only an approximation of actual hours worked. *Id.* (quoting *Donovan*, 725 F.2d at 85–86). "The employer cannot complain that the damages lack the precision that would have been possible if the employer had kept the records required by law." *Id.* (quoting *Donovan*, 725 F.2d at 86).

2. <u>Plaintiff has proven her hours worked as a matter of just and reasonable inference.</u>

The inconsistency of Plaintiff's trial testimony regarding her hours worked is a simple matter of incorrect math coupled with an understandably faulty memory. At trial, Plaintiff provided clear and consistent testimony regarding the duties she performed and when she performed them. Plaintiff worked alongside Defendants' other laborers opening gates, picking up rocks, cleaning equipment, and running errands, such as collecting and dropping off tickets and purchasing tools and supplies. Plaintiff explained these processes and gave a reasonable estimate of the amount of time that each process took. Although Plaintiff was unable to state the duties she performed on any specific day, the law is clear that her unclear recollection should not be penalized. *Mt. Clemens*, 328 U.S. at 686–87.

Moreover, Plaintiff's approximation of hours works aligns with her testimony regarding the amount of time each of the duties she performed took. Plaintiff testified that she worked 4 to 6 hours per day, 5 days per week, for a total of approximately 30 hours

per week. The law is clear that if Plaintiff has proved her hours worked by just and reasonable inference and Defendants do not provide evidence to rebut that testimony, the Court may use an approximation of Plaintiff's hours worked to award damages. *Baker*, 146 F.3d at 1220.

Accordingly, the Court may award Plaintiff wages in the amount of $7.25 per hour, for 30 hours per week, for the 78 weeks from May of 2020 until November 2021 that Plaintiff worked for Defendants without compensation. This calculates to $217.50 per week in regular wages, with an equal amount in liquidated damages.

## I.     PROPOSED FINDINGS OF FACT

1. Plaintiff was employed by Defendants from 2020 until February of 2022 as an hourly-paid worker.

2. Plaintiff was not added to Defendants' payroll system or provided with any compensation until November of 2021.

3. Plaintiff's duties included, but were not necessarily limited to, assisting with timekeeping and reporting hours worked to Defendants office manager.

4. Plaintiff's duties included, but were not necessarily limited to, opening gates, picking up rocks, cleaning equipment, and running errands, such as collecting and dropping off tickets and purchasing tools and supplies.

5. Plaintiff's duties took around 4 to 6 hours per day to complete.

6. Plaintiff worked for 4 to 6 hours per day, 5 days per week, for a total approximately 30 hours per week.

7. Plaintiff recorded her work by sending text messages to Defendants' office manager.

8. Defendant Crowder occasionally supervised Defendants' laborers on site at feed lots.

9. Defendant Crowder witnessed Plaintiff performing labor alongside Defendants' other laborers.

10. Defendants did not instruct Plaintiff to stop performing labor for their benefit.

11. At all relevant times, Defendants knew Plaintiff was consistently working uncompensated hours each week.

12. At all relevant times, Defendants knew the FLSA required payment of a minimum wage for all hours worked.

13. At all relevant times, Defendants knew they were not paying Plaintiff the minimum wage required under the FLSA.

14. Defendants did not take any affirmative steps to comply with the FLSA.

15. Defendants had no objective or subjective reasons for believing they were in compliance with the FLSA.

16. Defendants shorted Plaintiff's pay in order to increase their own profit without regard for Plaintiff's rights or the law.

17. Defendants knew that they were required by the FLSA to pay Plaintiff a minimum wage for all hours worked and knew that Plaintiff was in fact working without compensation, yet willfully and without any justification failed to compensate Plaintiff accordingly.

## II.  PROPOSED CONCLUSIONS OF LAW

1. Defendants had knowledge of Plaintiff's unauthorized labor.

2. Defendants had actual knowledge of Plaintiff's unauthorized labor based on

Defendant Crowder's personal observation.

3. Defendants had constructive knowledge of Plaintiff's unauthorized labor based on Plaintiff's text messages reporting her work.

4. Defendants violated the FLSA by not properly paying Plaintiff a minimum wage for all hours worked.

5. Defendants have failed to pay Plaintiff properly in accordance with the FLSA.

6. The FLSA requires that employees receive minimum wages for all hours worked.

7. Because Defendants' records of Plaintiff's hours worked are incomplete and inaccurate, the *Anderson v. Mt. Clemens Pottery* reasonable inference test is applicable in this case, and Plaintiff is entitled to prove her time worked by stating to the best of her recollection the approximate number of hours worked. 328 U.S. 680 (1946).

8. Defendants have not met their burden of negating Plaintiffs' best recollection regarding the approximate number of hours worked by Plaintiff.

9. Plaintiff has incurred attorney's fees in an effort to assert her rights for violations by Defendants under the FLSA, and by law such reasonable attorney's fees should be paid by Defendants.

10. Plaintiff has incurred costs in an effort to assert her rights under the FLSA, and by law those costs should be paid by Defendants.

11. Defendants are liable to Plaintiff for her back wages in the amount of $16,965.00.

12. Plaintiff is entitled to liquidated damages in an amount equal to her

damages as authorized by the FLSA because Defendants did not demonstrate that their actions in failing to properly compensate Plaintiff were in good faith and with reasonable grounds.

13.   Because Defendants carry the burden of proving good faith for liquidated damages purposes, liquidated damages are awarded as Defendants' decisions were not made in both objective and subjective good faith.

14.   Defendants have not proved that they took affirmative steps to ascertain the FLSA's requirements but nonetheless violated its provisions.

15.   Defendants knew that they were required by the FLSA to pay Plaintiff a minimum wage for all hours worked and knew that Plaintiff was performing uncompensated work, yet willfully and without any justification failed to compensate Plaintiff.

16.   Defendants are therefore liable to Plaintiff for liquidated damages.

17.   Plaintiff is also entitled to collect their costs in the current action as well as a reasonable attorney's fee pursuant to the FLSA.

## III.   CONCLUSION

Employer liability to compensate Plaintiff for her labor attached at the moment Defendants became aware, or should have become aware through reasonable inquiry, that Plaintiff was performing uncompensated labor for their benefit and took no steps to prohibit that unauthorized work. Liability attached when Defendant Crowder gained any knowledge regarding Plaintiff's work, despite not knowing the extent or specifics of the work. Finally, the Court may calculate damages based on the approximation of hours worked Plaintiff provided through a just and reasonable inference of her hours worked.

Respectfully submitted,

**PLAINTIFFS CHRISTOPHER PORTER and BREEANNA PORTER**

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

*/s/ Sean Short*
Sean Short
Ark. Bar No. 2015079
sean@sanfordlawfirm.com

Josh Sanford
Col. Bar No. 44358
josh@sanfordlawfirm.com