IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLORADO

Civil Action No. 1:22-cv-808

Christopher Porter and
BreeAnna Porter,
        Plaintiffs,

v.

T.J. Crowder and Sons, LLC,
and Farrel Crowder,
        Defendants.

---

**DEFENDANTS PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

---

    T.J. Crowder and Sons, LLC, and Farrel Crowder ("Defendants"), by and through their attorneys Michael J. Davis of Davis Murray Law group LLC, hereby files their Proposed Findings Of Fact And Conclusions Of Law and in support thereof states as follows:

**A. PROPOSED FINDINGS OF FACT**

    1.    Defendant Humalfa and Sons, LLC ("Humalfa"), is a company located in Iliff, Colorado.

    2.    Defendant Humalfa is a Colorado domestic limited liability company.

    3.    Farrel Crowder is the President and owner of Humalfa with offices located at 26874 CR 65, Iliff, Colorado 80736.

    4.    Humalfa contracts with farms to process the manure on their feedlots.

    5.    It has been determined by this Court that employees of Humalfa are agricultural workers and thus not entitled to overtime for the period they worked.

6. BreeAnna Chambers ("BP") worked 144 hours during the year of 2018 as an employee of Humalfa in which she filled out the appropriate paperwork and was paid wages subject to taxes. She stopped working before the end of 2018.

7. BP was employed as an employee of Humalfa again in 2021 and part of 2022 in which she filled out the appropriate paperwork and was paid wages subject to taxes.

8. Heather Day was in charge of payroll for Humalfa and indicated it was not possible to pay wages to employees unless they filled out the appropriate paperwork which included a W-4, a Personal Information sheet, a Direct Deposit Authorization, a Form I-9, a copy of employees Drivers License, and a Copy of their Social Security card. See Def. Ex. B.

9. Day testified that these were the documents that their payroll processor required and no one could be paid as an employee without them.

10. Chris Porter (C.Porter) worked for Humalfa at the feedlot in Yuma, Colorado.

11. C. Porter's sole occupation was to move the manure from the feedlot on the farm to another section of the farm and turn the manure.

12. C. Porter would then assist drivers by loading the processed manure onto trucks where drivers other than Porter would haul it to farms.

13. C. Porter worked for Humalfa from 2018 to 2022.

14. When C. Porter went to work in 2018, he was given the Humalfa Employee Handbook (the "Handbook").

15. The Handbook indicated on p. 8 that "…employee are paid on an hourly basis for all actual hours worked."

16. BP was the wife of C.Porter.

17. BP would oftentimes accompany C. Porter to the yard.

18. BP drove C. Porter to and from work because C. Porter had a DUI ticket that kept him from driving.

19. In order for C. Porter to go to the feed lot on the farm where he worked, BP had to drive him there or he couldn't work because all the work was done on the feed lot on the farm.

20. BP would text the hours that C. Porter would work to Heather Day ("Day") on a daily basis.

21. Because the feed lots were isolated from any supervision, very few workers were able to verify the hours that C. Porter or BP worked. Thus, the pay system was based on trust.

22. Until BP filled out the paperwork to be hired in 2021, she did not text any hours for herself because she was not an employee.

23. BP discussed being hired as an employee with Farrel Crowder ("Crowder"), the owner of Humalfa.

24. Crowder testified that he would hire BP once she could drive the equipment at the Yuma yard.

25. BP testified that she would assist C. Porter, by picking up rocks, opening gates, buying parts for the equipment, and turning in tickets related to loads of manure. She further testified that she didn't work every day and further testified there were many days she didn't work.

26. BP testified that she reported to C. Porter and would do tasks that he or other workers would request that she do.

27. BP also testified that she spoke to Crowder about being hired and that he said she would be hired when she showed him, she could perform driving the equipment.

3

28.     The Porters "were solely responsible" for getting paid for their work as they reported their own hours and "no reduction in hours was ever calculated" by Day.

## B. PROPOSED CONCLUSIONS OF LAW

1.      **Because BP Makes Her Claim Primarily As An Employee Under The FLSA, She Must Prove That She Qualifies As An Employee Under The Statutory Definitions And Case Law That Define An Employee Under The FLSA.**

The FLSA defines an "employee" as "any individual employed by an employer"; it defines "employ" as "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), 203(g). It is true that there must be an employer in order for an employee to be deemed an employee under the FLSA. Though the definition contained in the FLSA is rather broad, the case of *Brock v. Superior Care,* 840 F.2d 1054, (2d Cir.1988) states that "The definition is necessarily a broad one in accordance with the remedial purpose of the Act.". Id. At 1058.

Courts have developed certain factors to determine the status of an employee known as the economic realities test. *I Hart v. Rick's Cabaret Intern., Inc.,* 967 F. Supp. 2d 901 (SDNY 2013), the Court states as follows:

> The Second Circuit has adopted an "economic realities" test to determine whether an individual is an employee or an independent contractor for FLSA purposes. The factors considered include:
> (1)     the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business. Id at 912.

When these factors are applied to the current case, they do not fit. Crowder exercised virtually no control over BP and the work she performed. In fact, when he heard BP's testimony about what BP did, he took the stand on rebuttal and testified that she should not have been doing those tasks, she wasn't asked to do those tasks and the tasks she performed were jobs the men were

4

supposed to be doing. She was further questioned on her cross whether she was being taken advantage of. She responded she was trying to prove herself so she could become an employee.

In *Hart,* the Court gave a more bottom-line appraisal beyond the economic realities factors by stating

> The critical inquiry, in determining whether an employer-employee relationship exists, [is] the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." Hart at 923.

Crowder did not exercise control over the results produced or the means used to produce them. He wasn't even aware she was opening and closing gates, picking up rocks, or running errands.

In *Walling v. Portland Terminal Co*., 330 US 148 (1947) 153, the Supreme Court clarified the approach to being an employee even further:

> Section 3 (g) of the Act defines "employ" as including "to suffer or permit to work" and § 3 (e) defines "employee" as "any individual employed by an employer." The definition "suffer or permit to work" was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another. Otherwise, all students would be employees of the school or college they attended, and as such entitled to receive minimum wages. So also, such a construction would sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit. But there is no indication from the legislation now before us that Congress intended to outlaw such relationships as these. The Act's purpose as to wages was to insure that every person whose employment contemplated compensation should not be compelled to sell his services for less than the prescribed minimum wage. The definitions of "employ" and of "employee" are broad enough to accomplish this. But, broad as they are, they cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction. Id at 152.

It was clear that BP performed tasks without any express or implied compensation agreement as Heather Day testified. She needed to have paperwork filled out to paid as an employee and she did that 11/08/21 for which she was paid after that. See Def. Ex. B. It is more likely that BP was working for her own advantage on the Humalfa feed lot. As she testified, she was trying to prove

she was qualified to be an employee handling the equipment which eventually resulted in her being hired as an employee. BP was working "…without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit." the inquiry as to whether someone is an employee is "…not whether the work is voluntary, but rather whether the participants are in fact performing services for the benefit of the employer with the knowledge and approval of the employer. See *Republican Publishing Co. v. American Newspaper Guild,* 172 F.2d 943, 945 (1st Cir.1949). BP was not working with the knowledge and approval of Crowder, but rather reminding him she wanted to be employed.

Hence, BP was never an employee except when she was employed under the system in place by Humalfa to register someone as an employee which BP complied with 11/15/21 and a brief period she worked as an employee for a brief period in 2018.

2.     **The FLSA Applies To Employers Under § 3(D) Of The Statute Which Defines Broadly As "Any Person Acting Directly Or Indirectly In The Interest Of An Employer In Relation To An Employee." 29 U.S.C. § 203(D) (1994) And Crowder Did Not Qualify In Relation To BP As An Employer Until She Officially Filled Out Paperwork To Be An Employee.**

To be held liable under the FLSA, a person must be an "employer," which § 3(d) of the statute defines broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (1994).

In *Herman v. RSR Sec. Services Ltd.*, 172 F. 3d 132 (2nd Cir, 1999), the Court answered the question as to how someone becomes an employer.

> In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question, see *Carter,* 735 F.2d at 12, with an eye to the "economic reality" presented by the facts of each case, *Goldberg v. Whitaker House Coop.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). Under the "economic reality" test, the relevant factors include "whether the alleged employer (1) had the power

6

>to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Carter, 735 F.2d at 12 (quoting Bonnette, 704 F.2d at 1470). Id. at 139.

As applied to the current case, fitting these requirements to the BP-Crowder relationship is interesting. BP was an employee for a brief period in 2018, but not again until she filled out paperwork again on 11/15/21. It is true that Crowder had the power to hire and fire BP as he hired BP in November 2021 and fired her because Crowder fired BP in March, 2022. Crowder did not control BP's schedule in the time she was present because she was not an employee. Crowder did not determine any rate when BP was not employed, and didn't maintain any records because BP hadn't filled any of the appropriate paperwork out till she was formally employed.

>In Herman the Court went on to clarify the use of the "economic reality" test as follows:

>"….No one of the four factors standing alone is dispositive. See *Superior Care*, 840 F.2d at 1059. Instead, the "economic reality" test encompasses the totality of circumstances, no one of which is exclusive. Since economic reality is determined based upon all the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition. See *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) (whether an employer-employee relationship exists does not depend on isolated factors but rather "upon the circumstances of the whole activity").

The totality of the circumstances indicating Crowder was not the employer is aided by the fact that Humalfa kept a strict system as to when someone was an employee. BP was paid a wage when she was an employee in the Humalfa system, and Crowder did not manage or dictate BP's hours. She testified to that at trial when she said she didn't work every day and only the days she was needed. When you add to that the fact that she was the one who reported hours for C. Porter and never reported hours for herself, it is clear she was never an employee until she actually registered to become one as allowed by Crowder.

7

      3.      **If There Is Proof Of Unpaid Wages, The Employee Can Establish How Much They Are Owed By Testimony.**

When an employer fails to keep adequate records of its employees' compensable work periods, as required under the FLSA, employees seeking recovery for overdue wages will not be penalized due to their employer's record-keeping default. See A*nderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88 (1946). See also *Brock v. Norman's Country Market, Inc.*, 835 F.2d 823, 828 (11th Cir.1988). A rule preventing employees from recovering for uncompensated work because they are unable to determine precisely the amount due would result in rewarding employers for violating federal law. *Mt. Clemens*, 328 U.S. at 687, 66 S.Ct. at 1192. Rather, in such cases, employees need only prove that they performed work for which they were not properly compensated and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. Upon meeting this evidentiary threshold, the fact of damage is established, and the only potential uncertainty is in the amount. See *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986).

The cases that discuss this aspect of the FLSA do so with the assumption that an employer and employee relationship exist. A violation requires that an employer fails to keep adequate records of its employees' compensable work periods. As stated previously, BP was never an employee except for the periods stated. And Crowder does not qualify as employer because there was no agreement between BP and Crowder to work for pay except where explicitly stated. As the Court explains in *Walling*, cited supra:

> The definition "suffer or permit to work" was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another. …..So also, such a construction would sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit. But there is no indication from the legislation now before us that Congress intended to outlaw such relationships as these. The Act's

8

purpose as to wages was to insure that every person whose employment contemplated compensation. *Walling* at 152.

There was no express or implied compensation agreement between BP and Crowder. It was also clear that BP was on premises for her own advantage – that of being trained to get a job as an equipment operator. BP worked without promise or expectation of compensation. The FLSA was made into law to protect workers whose employment contemplated compensation. Because BP never asked to be compensated and was only compensated when she was trained, it is clear what the purpose of the relationship with Crowder was – training, not employment.

    4.    **Because Employees Are Required To Pay Taxes On The Wages They Earn, The Failure Of BP To Pay Taxes Proves She Was Never An Employee.**

It is no coincidence that BP did not receive any tax documents that indicated she was employed and had wages taken out of her paycheck – until she filled out paperwork to be an employee. As to a married couple, the case of *Lucas v. Earl*, 281 US 111 (1930) clarifies is when does the wife have a vested interest in those wages. As stated:

> The Revenue Act of 1918 approved February 24, 1919, c. 18, §§ 210, 211, 212 (a), 213 (a), 40 Stat. 1057, 1062, 1064, 1065, imposes a tax upon the net income of every individual including "income derived from salaries, wages, or compensation for personal service . . . of whatever kind and in whatever form paid," § 213 (a). *Lucas* at 114.

This means whatever work was performed by C.Porter or BP was taxable in receipt with no interest of the other. *Lucas* then goes on to definitively state how husbands and wives work as to their income from a tax perspective.

> There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew. Lucas at 114-115.

*Lucas* lets us know that between parties, the person that earns a wage and pays a tax is the owner of the wage. BP never earned a wage or paid a tax and any work she performed is attributable to her, not to C. Porter.

In *Bagley v. Commissioner*, 85 TC 663 (1985), the Court explains the assignment of income doctrine under which income is to be taxed to the person who earned it.

> …In resolving the issue of whether an individual or his wholly owned corporation is taxable with respect to income earned through the performance of personal services, we have held that the relevant inquiry must focus on whether the individual or the corporation controls the earning of the income. See Johnson v. Commissioner, supra. Under this approach, we held in Johnson v. Commissioner, supra, that two necessary elements must be present before the corporation, rather than its service-performer employee, will be considered the controller of the earning of the income. First, the service-performer employee must be just that—an employee of the corporation whom the corporation has the right to direct or control in some meaningful sense. Second, there must exist between the corporation and the person or entity using the services a contract or similar indicium recognizing the corporation's controlling position. See Johnson v. Commissioner, supra at 891, and cases cited therein. Petitioners bear the burden of proving that respondent's determination was erroneous. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Therefore, to establish that the $50,000 consulting fee received by petitioner is taxable to Hereford Trading, petitioners must show that the corporation controlled the earning of the consulting fee within the standard set forth in Johnson v. Commissioner, supra. Based upon this record, we conclude that they have failed to do so. Bagley at 675.

These cases indicate if there is tax liability, then there must be income. BP had no income from her work at Humalfa because she was not an employee and regardless of whether she added to the work performed by C.Porter she has no right to any compensation because she did not prove that C.Porter was in charge of her work, and she was not an employee of Humalfa whom the Humalfa or C. Porter for that matter has the right to direct or control in some meaningful sense.

### C. CONCLUSION

It is clear that despite BP performing work, it is not covered by the FLSA which requires payment records of an employee to test the hours actually worked against. BP did not report any hours that she worked despite being in charge of that task. Further, it is clear that BP was

10

functioning without any express or implied compensation agreement, but solely for her personal purpose or pleasure, working in activities carried on by other persons for her pleasure or profit. In this case, to be trained operating heavy equipment for pay. The FLSA's purpose as to wages is to insure that every person whose employment contemplated compensation that they be paid. It is clear that BP never expected to be paid because she never asked to be paid. For this reason, the request for any wages should be denied because she was not an employee.

Respectfully submitted this 9th day of December 2024.

/s/ *Michael J. Davis*
Michael J. Davis
Davis Law Group LLC
2255 Sheridan Boulevard
St. C 272
Edgewater, CO 80214
720-361-6036
Fax : 720-368-5262
Email:
mdavis@Davismurraylaw.com

## CERTIFICATE OF SERVICE

I, Michael Davis, certify that a true and accurate copy of the preceding was served by the Court's filing system, to all those entitled to notice.

  /s/ *Michael J. Davis*

11