**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-00808-STV

CHRISTOPHER PORTER; and
BREANNA PORTER,

     Plaintiffs,

v.

T.J. CROWDER AND SONS, LLC; and
FARREL CROWDER,

     Defendants.

_____

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
_____

Chief United States Magistrate Judge Scott T. Varholak

     This matter came before the Court for trial on November 4, 2024. [#51] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##8, 9] At the conclusion of the trial, the Court took the matter under advisement. Having fully reviewed the evidence presented, applicable law and arguments of counsel, the Court now enters its Findings of Fact and Conclusions of Law.

**I.    BACKGROUND**

     Plaintiffs initiated this action on April 4, 2022. [#1] Plaintiffs' Complaint alleges: (1) violations of the Fair Labor Standards Act ("FLSA") for failure to pay federal minimum wages for all hours worked and failure to pay overtime wages and (2) violations of the Colorado Wage Act ("CWA") and the Colorado Minimum Wage Order No. 37 ("CMWO")

for failure to pay overtime wages and failure to permit Plaintiffs to take compensated rest breaks. [*Id.*]  A bench trial commenced on April 4, 2022. [#44]  After hearing testimony from a witness regarding liability, by agreement of the parties, the Court bifurcated the matter and agreed to first issue a ruling on whether the agricultural exemption to the FLSA applied, with the question of liability for hours worked but not paid to Ms. Porter and any damages to be determined at a future date. [*Id.*]  On May 10, 2024, this Court issued its Findings of Fact, Conclusions of Law, and Order concluding that the agricultural exemption applied to Mr. Porter's claims.

On November 4, 2024, this Court conducted another bench trial related to the remaining claims.  The Court took the matter under advisement and ordered the parties to submit trial briefs. [#51]  On December 9, 2024, each side submitted their trial briefs. [##52, 53]  Upon reviewing the trial briefs, this Court ordered supplemental briefing [#54] which the parties submitted [##55, 56].

## II.     FINDINGS OF FACT

Defendant T.J. Crowder and Sons, LLC ("Humalfa") is a Colorado limited liability company doing business as Humalfa.  Defendant Farrel Crowder is the owner and managing member of Humalfa.  Humalfa is a composting company that converts raw cattle manure into organic fertilizer.  During the relevant time period, Humalfa always employed at least two, and usually approximately eight, employees.

The relevant feedlot where Humalfa operated was owned by Five Rivers Cattle Feeding ("Five Rivers").  Neither Humalfa nor Mr. Crowder had any ownership interest in the feedlot or the feedlot's land.  Mr. Crowder testified that Humalfa is a separate operation from Five Rivers' feedlot and Humalfa paid for the creation of the compost yard.

Five Rivers' employees were responsible for cleaning the cattle pens and piling the manure in the pens.  Humalfa employees would then load the manure piles onto a dump truck and haul the manure to the compost yards where it would be unloaded.  The compost yards were located within Five Rivers' feedlot.  Once the manure was unloaded, a machine would turn and compost the manure.

Mr. Porter worked for Humalfa from 2007 through 2021, with a brief break in employment in early 2019 due to legal issues.  His job was to load the piles of manure from the pens, haul manure from the cattle pens to the compost yard, and dump the manure in windrows for turning.  Mr. Porter primarily held the title of "manure handler." Typically Mr. Porter was the only Humalfa employee at Five Rivers, though for a period of time another employee, Alan Sampson, also worked there.

Humalfa paid Mr. Porter's wages.  Heather Day, Humalfa's office manager, was responsible for tracking the payment records.  Ms. Porter would text or call Mr. Porter's hours worked to Ms. Day or Casey Scott, another Humalfa employee.  Mr. Crowder did not see those text messages and he did not know why Ms. Porter texted Mr. Porter's time records.  Mr. Porter testified that he believed the hours texted were accurate.

Ms. Porter was hired by Humalfa in 2018.  At that time she completed employment paperwork.  She only worked for Humalfa briefly in 2018 and then was let go because Humalfa no longer needed her services.  Ms. Porter testified that she "returned" around December 2019 (the "Second Term"), though her testimony on this point was inconsistent.  She testified on direct examination that she returned in 2019, then clarified that it was actually March 2020, and then on cross-examination she stated that she returned in 2021 and that she worked for "nobody" in 2020.

3

Ms. Porter testified that, during this Second Term, she would begin the day by opening the pen gate so that Mr. Porter could enter the pens. She testified that she would do whatever Mr. Scott or Mr. Porter asked her to do. Ms. Porter testified that she would take the weight tickets from the drivers and turn them into the Humalfa office on Fridays.[1] And on more than one occasion Ms. Porter texted photos of these weight tickets to Ms. Day. Nonetheless, Ms. Day credibly testified that she did not know why Ms. Porter was texting photographs of the tickets or why Ms. Porter occasionally texted the hours that other Humalfa employees (besides Mr. Porter) worked. Mr. Porter, Mr. Scott, Mr. Sampson and Mr. Crowder would also text Ms. Porter the equipment parts they needed and Ms. Porter would drive to Yuma, Wray, Haxtun, Greeley and Eaton to obtain those parts. Ms. Porter testified that she also picked up rocks, replaced water pipes and cleaned the cabs of the semi-trucks. Mr. Porter testified that Ms. Porter would open the pen gates, pick up rocks, occasionally clean the cabs, when she had a little extra time, and sometimes drive to town to get parts, but that the frequency of driving to town varied.

Ms. Porter's testimony about the amount of time she spent performing these tasks was also inconsistent. At one point she testified that most days she went home after opening the pen for Mr. Porter. She also testified that there were plenty of days that she did not work. But then at another point she testified that she picked up rocks almost every day, picked up parts every day, and did maintenance work every other day. She testified

---

[1] Ms. Day credibly testified that she does not work Fridays and that the Humalfa employees would simply place the tickets on a desk at the Humalfa office on Fridays. Thus, the Court concludes that Ms. Day was not aware that Ms. Porter was making this trip to drop off the tickets.

that on normal days she worked three to four hours, for five or six days per week, yet somehow estimated that she worked on average 26 to 36 hours.

Near the end of Mr. Porter's employment, he told Mr. Crowder that Ms. Porter was able to drive a truck. Based upon this representation, Mr. Crowder hired Ms. Porter. On November 8, 2021, Ms. Porter was hired by Humalfa as a part time helper and, on November 10, 2021, she texted Ms. Day and asked to be added to the Humalfa payroll. Ms. Porter only worked as a driver for a few weeks and was terminated.

Mr. Crowder's office was located in Iliff, approximately 75 miles away from Five Rivers. Mr. Crowder would go to Five Rivers "every couple of weeks," usually because he had some business at Five Rivers. Mr. Crowder was not monitoring who was at the feedlot and he testified that he did not ask Ms. Porter to do any work during the Second Term. Nonetheless, Mr. Crowder knew that Ms. Porter spent some time at the feedlot. Mr. Crowder knew that Ms. Porter took Mr. Porter to work. Mr. Crowder would also occasionally see Ms. Porter at the feedlot, though Mr. Crowder did not ask her why she was there. On three or four occasions, Ms. Porter told Mr. Crowder that she had been helping clean the loaders. On those occasions, Mr. Crowder would give Ms. Porter $100. Mr. Crowder also saw Ms. Porter with Mr. Porter at the Humalfa office on occasion, though he again did not ask Ms. Porter why she was there. In the end, Mr. Crowder credibly testified that he knew Ms. Porter was "pitching in" at the feedlot and that she wanted to become an employee, but that he just could not justify hiring her and that she was assisting in tasks that Mr. Porter was supposed to be doing. Ms. Day also testified that she was aware that Ms. Porter may have assisted with the parts and knew that Ms. Porter

was using Mr. Porter's name to purchase parts at the hardware store, though she did not know that Ms. Porter was performing any of the other tasks at the feedlot.

Ultimately, the Court concludes that Ms. Porter would occasionally: (1) help Mr. Porter with the tasks that Mr. Porter was assigned to perform at Five Rivers; (2) purchase parts for Humalfa, and (3) deliver the weight tickets to the Humalfa offices (collectively, the "Unpaid Tasks").  The Court further concludes that Mr. Crowder knew that Ms. Porter would occasionally help Mr. Porter at Five Rivers and that Ms. Day, and likely Mr. Crowder, also knew that Ms. Porter would occasionally purchase parts for Humalfa.  But the evidence on when the Unpaid Tasks began is contradictory and convoluted, and the Court cannot conclude that such activities occurred with any frequency until sometime in late 2020 or early 2021.  Indeed, the text messages between Ms. Porter and Ms. Day do not begin until August 2020 and, until December 2020, those texts almost exclusively involved Ms. Porter relaying Mr. Porter's hours to Ms. Day.  Moreover, the Court cannot reliably estimate the amount of time Ms. Porter spent on the Unpaid Tasks.  Once again, Ms. Porter's testimony was inconsistent about the amount of time she spent on the Unpaid Tasks and her estimate of 26 to 36 hours per week is both inconsistent with her own testimony and inconsistent with Mr. Porter's testimony.  The Court thus finds that estimate incredible.

Finally, Ms. Porter testified about text messages that she had with Ms. Day concerning the last two weeks of work.  In the text messages, Ms. Porter stated that she was owed eleven hours of unpaid time and Mr. Porter was owed 31 hours of unpaid time.  Ms. Day also testified about these hours.  Ms. Day said that Mr. Crowder told Ms. Day not to pay those hours because three people had confirmed that Mr. and Mrs. Porter had

6

not worked those hours, and that the Porters were paid for time that they actually worked. Plaintiffs did not offer any rebuttal evidence to Ms. Day's testimony—either by testifying themselves or presenting other witnesses to contradict Ms. Day's assertions—and the Court finds Ms. Day's testimony credible. Thus, the Court concludes Defendants paid Plaintiffs for all hours worked in the last two weeks of their employment.[2]

## III.   CONCLUSIONS OF LAW

The parties raise numerous issues surrounding the question of whether Ms. Porter should or should not have been paid under the FLSA[3] for the time that she spent on the Unpaid Tasks. [##52, 53, 55, 56] Ultimately, the Court need not resolve many of these issues. Even assuming that Defendants employed Ms. Porter for FLSA purposes and

---

[2] The Complaint also alleges that Defendants violated the FLSA and/or the CWA by: (1) requiring Plaintiffs to perform work off the clock [#1 at ¶¶ 30, 34, 39], (2) paying Plaintiffs for fewer hours than Plaintiffs submitted [*id.* at ¶¶ 32, 34], (3) deducting time for lunch breaks even if Plaintiffs did not take a lunch break [*id.* at ¶ 35], and (4) not providing compensated rest periods [*id.* at ¶ 43]. Plaintiffs did not present any evidence that: (1) Mr. Porter performed work off the clock or that Ms. Porter was required to perform work off the clock, (2) Plaintiffs were not paid for hours that they submitted, or (3) Plaintiffs were improperly compensated with respect to lunch or rest breaks. Indeed, with respect to the texted hours, the only evidence was Mr. Porter's testimony that Ms. Porter faithfully recorded the hours and that Humalfa never questioned the hours submitted. Thus, the Court concludes that Plaintiff has failed to prove these additional allegations.

[3] Plaintiffs' second claim alleges violations of the CWA and CMWO and is premised upon: (1) Plaintiffs working more than forty hours per week without being paid overtime pay, and (2) Defendants failing to compensate for rest breaks. [#1 at ¶¶ 55-61] As explained above, Plaintiffs failed to present any evidence regarding uncompensated rest periods. *See supra* p.7 n.2. In the Court's previous Findings of Fact, Conclusions of Law, and Order, the Court held that the FLSA agricultural exemption applied to Plaintiffs' claims. [#47] The CWA likewise contains an agricultural exemption. Colo. Code. Reg. § 1103-1:2.2.3. Plaintiffs have not argued that the CWA agricultural exemption differs in any meaningful way from the FLSA agricultural exemption, nor did they present any argument on why Plaintiffs are entitled to overtime wages under the CWA. Thus, the Court finds that Plaintiffs have failed to prove their CWA and CMWO claim.

were therefore obligated under the FLSA to compensate Ms. Porter for the Unpaid Tasks, Ms. Porter has failed to prove her damages.

Under the FLSA, the burden originally is on the employees to demonstrate with sufficient evidence that the employees have, in fact, performed work for which they were improperly compensated. *Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1273, 1284 (D. Kan. 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014). But "when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the 'remedial nature of [the FLSA] and the great public policy which it embodies . . . militate against making' the burden of proving uncompensated work 'an impossible hurdle for the employee.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). "Instead of punishing 'the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work,' the [Supreme Court has] held 'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Id.* (quoting *Anderson*, 328 U.S. at 687). "Under these circumstances, '[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Id.* (quoting *Anderson*, 328 U.S. at 687–688).

The employee's burden "is not high" and courts have held that it is possible for a plaintiff to satisfy this burden through estimates based on their own recollection. *Kuebel*

*v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).  But "[w]hile the evidence may be minimal, it must nonetheless be credible.  *Morales v. Gourmet Heaven, Inc.*, No. 3:14-cv-01333 (VLB), 2016 WL 6996976, at *10 (D. Conn. Nov. 29, 2016) (citing *Daniels v. 1710 Realty LLC*, 476 F. App'x 137, 139 (2d Cir. 2012)).  And a "district court may not 'just accept plaintiff's statement of the damages.'"  *Id.* at *10 (quoting *Hosking v. New World Mortg., Inc.*, 570 F. Appx. 28, 32 (2d Cir. 2014)).  Moreover, "[o]verly vague or speculative evidence is insufficient to satisfy the Plaintiffs' minimal burden."  *Id.*; *see also Daniels*, 497 F. App'x at 139 (testimony that is "too vague to be credible" will not suffice).

Here, the evidence presented about unpaid time owed to Ms. Porter was simply too vague and incredible to satisfy the minimal standard to permit the Court to draw a just and reasonable inference about her unpaid wages.  Initially, Ms. Porter's testimony about when she began the Second Term—and thus began earning unpaid wages—was both internally inconsistent and contradicted by the record evidence from the case.  Ms. Porter testified on direct that the Second Term began around December 2019 or March 2020, and then on cross-examination she stated that she returned in 2021 and that she worked for "nobody" in 2020.  And the text messages between Ms. Porter and Ms. Day do not begin until August 2020 and, until December 2020, those texts almost exclusively involved Ms. Porter relaying Mr. Porter's hours to Ms. Day.

Similarly, Ms. Porter's testimony about the amount of time she spent performing the Unpaid Tasks is vague and internally inconsistent.  At one point she testified that most days she went home after opening the pen for Mr. Porter.  She also testified that there were plenty of days that she did not work.  But then at another point she testified that she picked up rocks almost every day, picked up parts every day, and did maintenance work

every other day. She testified that on normal days she worked three to four hours, for five or six days per week, yet somehow estimated that she worked on average 26 to 36 hours per week. And Ms. Porter's estimates are inconsistent with Mr. Porter's testimony that Ms. Porter would only occasionally clean cabs when she had a little extra time, and would sometimes drive to town to get parts, but that the frequency of driving to town varied.

Based upon the evidence presented, the Court has no idea when Ms. Porter began performing the Unpaid Tasks or the amount of time she spent on the Unpaid Tasks. The evidence presented on these topics was vague and not credible. As a result, Ms. Porter has failed to meet her minimal requirement of producing sufficient evidence to show the amount and extent of her unpaid work as a matter of just and reasonable inference. Accordingly, Defendants are entitled to judgment on Ms. Porter's FLSA claim. *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059-60 (8th Cir. 2014) (finding evidence insufficient where the plaintiff provided "vague testimony" and set forth contradictory assertions of the time worked with no "meaningful explanation of how he arrived at his final estimate" of time worked); *Daniels*, 497 F. App'x 137, 139 (upholding district court's finding that the FLSA plaintiff's testimony was too vague to be credible and the plaintiff had therefore failed to present evidence permitting a just and reasonable inference of improperly paid work); *Liu v. Little Saigon Cuisine Inc.*, No. 18-CV-2181 (RPK) (VMS), 2021 WL 4487839, at *9 (E.D.N.Y. Sept. 30, 2021) (finding evidence insufficient where the plaintiff's testimony was not credible); *Sutphin v. Zontrom, LLC*, No. 6:09-cv-1614-Orl-28DAB, 2009 WL 10712868, at *3 (M.D. Fla. Dec. 18, 2009) (same). Accordingly, Ms. Porter has failed to prove her FLSA claim.

## IV.  CONCLUSION

For the foregoing reasons, coupled with this Court's earlier Findings of Fact, Conclusions of Law, and Order [#47], the Court concludes that Plaintiffs have failed to prove either of their claims.  Accordingly, Judgment shall enter in favor of Defendants.

DATED:  July 15, 2025                                        BY THE COURT:

s/Scott T. Varholak<br>
Chief United States Magistrate Judge