APPEAL,CONMAG,JD1,MJ CIV PP,TERMED

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: <u>1:22–cv–00808–STV</u>

| | |
|---|---|
| Porter et al v. T.J. Crowder and Sons, LLC et al | Date Filed: 04/04/2022 |
| Assigned to: Magistrate Judge Scott T. Varholak | Date Terminated: 07/15/2025 |
| Cause: 29:201 Fair Labor Standards Act | Jury Demand: Defendant |
| | Nature of Suit: 710 Labor: Fair Standards |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Christopher Porter**     represented by     **April Rheaume**
Sanford Law Firm, PLLC
10800 Financial Centre Parkway
Kirkpatrick Plaza
Suite 510
Little Rock, AR 72211
800–615–4946
Fax: 888–787–2040
Email: arheaume@davisgrimmpayne.com
*TERMINATED: 11/28/2022*
*LEAD ATTORNEY*

**Sean Short**
Sanford Law Firm, PLLC
10800 Financial Centre Parkway
Kirkpatrick Plaza
Suite 510
Little Rock, AR 72211
501–221–0088
Email: sean@sanfordlawfirm.com
*ATTORNEY TO BE NOTICED*

**Joshua J. Sanford**
Sanford Law Firm, PLLC
10800 Financial Centre Parkway
Kirkpatrick Plaza
Suite 510
Little Rock, AR 72211
800–615–4946
Fax: 888–787–2040
Email: ecfnotices@sanfordlawfirm.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BreeAnna Porter**     represented by     **April Rheaume**
(See above for address)
*TERMINATED: 11/28/2022*
*LEAD ATTORNEY*

1

Sean Short
(See above for address)
*ATTORNEY TO BE NOTICED*

Joshua J. Sanford
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**T.J. Crowder and Sons, LLC**          represented by  **Michael J. Davis**
                                                         Davis Murray Law, LLC
                                                         2255 Sheridan Boulevard
                                                         Suite C272
                                                         Edgewater, CO 80214
                                                         720−361−6036
                                                         Fax: 720−368−5262
                                                         Email: mdavis@davismurraylaw.com
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Farrel Crowder**          represented by  **Michael J. Davis**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/04/2022 | 1 | COMPLAINT against Farrel Crowder, T.J. Crowder and Sons, LLC (Filing fee $ 402,Receipt Number CCODC−8392358)Attorney Joshua J. Sanford added to party BreeAnna Porter(pty:pla), Attorney Joshua J. Sanford added to party Christopher Porter(pty:pla), filed by Christopher Porter, BreeAnna Porter. (Attachments: # 1 Civil Cover Sheet, # 2 Summons for Defendant TJ Crowder and Sons, LLC, # 3 Summons for Defendant Farrel Crowder)(Sanford, Joshua) (Entered: 04/04/2022) |
| 04/04/2022 | 2 | Case assigned to Magistrate Judge Scott T. Varholak. Text Only Entry. (agarc, ) (Entered: 04/05/2022) |
| 04/05/2022 | 3 | SUMMONS issued by Clerk. (Attachments: # 1 Summons, # 2 Magistrate Judge Consent Form) (agarc, ) (Entered: 04/05/2022) |
| 04/06/2022 | 4 | ORDER SETTING DEADLINE FOR FILING ELECTION CONCERNING CONSENT/NON−CONSENT TO MAGISTRATE JURISDICTION FORM AND SETTING SCHEDULING CONFERENCE by Magistrate Judge Scott T. Varholak on 6 April 2022. Proposed Scheduling Order due 6/15/2022. Scheduling Conference set for 6/22/2022 09:15 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. (cmadr, ) (Entered: 04/06/2022) |
| 04/28/2022 | 5 | SUMMONS Returned Executed by Christopher Porter. T.J. Crowder and Sons, LLC served on 4/25/2022, answer due 5/16/2022. (Sanford, Joshua) (Entered: 04/28/2022) |

2

| 04/28/2022 | 6 | SUMMONS Returned Executed by Christopher Porter. Farrel Crowder served on 4/25/2022, answer due 5/16/2022. (Sanford, Joshua) (Entered: 04/28/2022) |
|---|---|---|
| 05/10/2022 | 7 | ANSWER to 1 Complaint, Attorney Michael J. Davis added to party Farrel Crowder(pty:dft), Attorney Michael J. Davis added to party T.J. Crowder and Sons, LLC(pty:dft) by Farrel Crowder, T.J. Crowder and Sons, LLC.(Davis, Michael) (Entered: 05/10/2022) |
| 06/07/2022 | 8 | CONSENT to Jurisdiction of Magistrate Judge by Plaintiffs BreeAnna Porter, Christopher Porter All parties consent.. (Sanford, Joshua) (Entered: 06/07/2022) |
| 06/07/2022 | 9 | ORDER OF REFERENCE. Pursuant to the consent of the parties to the jurisdiction of the magistrate judge 8 , this case is referred to Magistrate Judge Scott T. Varholak for all purposes pursuant to 28 U.S.C. § 636(c), by Chief Judge Philip A. Brimmer on 6/07/2022. Text Only Entry (pabsec, ) (Entered: 06/07/2022) |
| 06/14/2022 | 10 | Proposed Scheduling Order −− *Joint Proposed Scheduling Order* by Plaintiffs BreeAnna Porter, Christopher Porter. (Sanford, Joshua) (Entered: 06/14/2022) |
| 06/22/2022 | 11 | MINUTE ENTRY for Telephonic Scheduling Conference held before Magistrate Judge Scott T. Varholak on 6/22/2022. ORDERED: The Scheduling Conference is reset for 7/6/2022 09:45 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. Any future failures to appear by counsel for Defendant could resultin consequences, including judgment against the Defendant. FTR: 402. (morti, ) (Entered: 06/22/2022) |
| 07/06/2022 | 12 | MINUTE ENTRY for Telephonic Scheduling Conference held before Magistrate Judge Scott T. Varholak on 7/6/2022. Discovery due by 2/20/2023. Final Pretrial Conference set for 6/7/2023 09:15 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. FTR: 402. (morti, ) (Entered: 07/06/2022) |
| 07/06/2022 | 13 | SCHEDULING ORDER: by Magistrate Judge Scott T. Varholak on 7/6/2022. (morti, ) (Entered: 07/06/2022) |
| 07/22/2022 | 14 | Unopposed MOTION for Leave to *File an Amended Statement of Claims and Defenses in Proposed Scheduling Order* 10 Proposed Scheduling Order by Plaintiffs BreeAnna Porter, Christopher Porter. (Attachments: # 1 Exhibit 1 − Amended Statement of Claims and Defenses)(Sanford, Joshua) (Entered: 07/22/2022) |
| 07/22/2022 | 15 | ORDER granting Plaintiffs' 14 Unopposed Motion for Leave to File an Amended Statement of Claims and Defenses. On or before 7/29/2022, Plaintiff shall file a clean (non−redlined) version of the Amended Statement of Claims and Defenses. SO ORDERED, by Magistrate Judge Scott T. Varholak on 7/22/22. Text Only Entry(stvlc3, Andrew) (Entered: 07/22/2022) |
| 07/28/2022 | 16 | Amended CLAIM by Plaintiffs BreeAnna Porter, Christopher Porter. (Sanford, Joshua) (Entered: 07/28/2022) |
| 11/28/2022 | 17 | Unopposed MOTION to Withdraw as Attorney by Plaintiffs BreeAnna Porter, Christopher Porter. (Rheaume, April) (Entered: 11/28/2022) |
| 11/28/2022 | 18 | ORDER granting 17 Motion to Withdraw as Counsel. Attorney April Rheaume is relieved of any further representation of Plaintiff. The Clerk of Court is instructed to terminate Attorney Rheaume as counsel of record, and to remove their name from the electronic certificate of mailing. Plaintiff shall continue to be represented by Attorney Josh Sanford and any other attorneys of the Sanford Law Firm, PLLC who have |

| | | |
|---|---|---|
| | | entered an appearance herein. SO ORDERED, by Magistrate Judge Scott T. Varholak on 11/28/22. Text Only Entry(stvlc3, Andrew) (Entered: 11/28/2022) |
| 04/06/2023 | 19 | MOTION for Summary Judgment by Defendants Farrel Crowder, T.J. Crowder and Sons, LLC. (Attachments: # 1 Exhibit Ex. A Crowder affidavit, # 2 Exhibit Ex. B Day Affidavit)(Davis, Michael) (Entered: 04/06/2023) |
| 04/06/2023 | 20 | MINUTE ORDER: This matter is before the Court on 19 Defendants' Motion for Summary Judgment. Pursuant to this Court's practice standards (available here), "For cases pending before this Court on consent, the statement of undisputed facts must be set out in a separate document, the Separate Statement of Facts, filed as an attachment to the motion for summary judgment." *See id.* at Section (V)(I)(2)(ii) for additional important information about the required form of the Separate Statement of Facts. Defendants shall file a Separate Statement of Facts not later than 4/13/2023. Plaintiffs' deadline to respond to 19 Defendants' Motion for Summary Judgment is EXTENDED to 21 days after Defendants file their Separate Statement of Facts. SO ORDERED, by Magistrate Judge Scott T. Varholak on 4/6/23. Text Only Entry (stvlc3, Andrew) (Entered: 04/06/2023) |
| 04/07/2023 | 21 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 19 MOTION for Summary Judgment filed by attorney Michael J. Davis. **DO NOT REFILE THE DOCUMENT. Action to take –** counsel must submit a change of contact request through the Manage my Account tab at the PACER website at https://www.pacer.gov/, pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (cmadr, ) (Entered: 04/07/2023) |
| 04/11/2023 | 22 | Amended MOTION for Summary Judgment by Defendant T.J. Crowder and Sons, LLC. (Attachments: # 1 Statement of Facts, # 2 Exhibit A, # 3 Exhibit B)(Davis, Michael) (Entered: 04/11/2023) |
| 04/12/2023 | 23 | ORDER finding as moot 19 Humalfa and Sons, LLC, and Farrel Crowder's Motion for Summary Judgment, upon the filing of 22 Humalfa and Sons, LLC, and Farrel Crowder's Amended Motion for Summary Judgment. SO ORDERED, by Magistrate Judge Scott T. Varholak on 4/12/23. Text Only Entry(stvlc3, Andrew) (Entered: 04/12/2023) |
| 04/27/2023 | 24 | RESPONSE to 22 Amended MOTION for Summary Judgment –– *Plaintiffs' Response to Amended Motion for Summary Judgment* filed by Plaintiffs BreeAnna Porter, Christopher Porter. (Attachments: # 1 Exhibit 1 – Declaration of Christopher Porter, # 2 Exhibit 2 – Declaration of BreeAnna Porter, # 3 Exhibit 3 – Plaintiffs' Response to Defendants' Statement of Facts)(Sanford, Joshua) (Entered: 04/27/2023) |
| 05/16/2023 | 25 | REPLY to Response to 22 Amended MOTION for Summary Judgment filed by Defendant T.J. Crowder and Sons, LLC. (Davis, Michael) (Entered: 05/16/2023) |
| 06/01/2023 | 26 | MINUTE ORDER: This matter is before the Court sua sponte. Pursuant to the 12 Scheduling Order, "FINAL PRETRIAL CONFERENCE is set for June 7, 2023 at 9:15 a.m. before Magistrate Judge Scott T. Varholak. Final Pretrial Order is due no later than seven (7) days before the Final Pretrial Conference." To date, the Court has not received the required filing. The parties' deadline to submit a proposed Final Pretrial Order is sua sponte EXTENDED to 6/2/2023 at 5:00 PM MDT. Failure to timely file may result in the final pretrial schedule being reset. SO ORDERED, by Magistrate Judge Scott T. Varholak on 6/1/23. Text Only Entry (stvlc3, Andrew) (Entered: 06/01/2023) |

| 06/01/2023 | 27 | Proposed Pretrial Order – – *Final Pretrial Order* by Plaintiffs BreeAnna Porter, Christopher Porter. (Sanford, Joshua) (Entered: 06/01/2023) |
| --- | --- | --- |
| 06/07/2023 | 28 | MINUTE ENTRY for Final Pretrial Conference held before Magistrate Judge Scott T. Varholak on 6/7/2023. ORDERED: Two day Jury Trial set for 2/26 – 27, 2024 08:30 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. Trial Preparation Conference set for 1/10/2024 at 10:30 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. FTR: A402. (morti, ) (Entered: 06/07/2023) |
| 06/07/2023 | 29 | FINAL PRETRIAL ORDER by Magistrate Judge Scott T. Varholak on 7 June 2023. (cmadr, ) (Entered: 06/07/2023) |
| 06/07/2023 | 30 | TRIAL PREPARATION CONFERENCE ORDER by Magistrate Judge Scott T. Varholak on 7 June 2023. (cmadr, ) (Entered: 06/07/2023) |
| 07/31/2023 | 31 | ORDER OF UNITED STATES MAGISTRATE JUDGE. Defendants' Amended Motion for Summary Judgment [# 22 ] is **DENIED**. By Magistrate Judge Scott T. Varholak on 7/31/2023.(trvo, ) (Entered: 08/01/2023) |
| 12/27/2023 | 32 | Joint Stipulation to Request Bench Trial by Plaintiffs BreeAnna Porter, Christopher Porter. (Sanford, Joshua) Modified on 12/28/2023 to correct event type. (jtorr, ) (Entered: 12/27/2023) |
| 12/28/2023 | 33 | ORDER granting 32 Motion for Trial. The jury trial set for 2/26/2024 and 2/27/2024 is converted to a 2–day bench trial, set to commence on 2/26/2024 at 08:30 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. So Ordered by Magistrate Judge Scott T. Varholak on 12/28/2023. Text Only Entry(stv, ) (Entered: 12/28/2023) |
| 01/02/2024 | 34 | Unopposed MOTION for Leave to Appear *Telephonically* by Plaintiffs BreeAnna Porter, Christopher Porter. (Sanford, Joshua) (Entered: 01/02/2024) |
| 01/02/2024 | 35 | ORDER granting Plaintiffs' 34 Unopposed Motion for Leave to Appear Telephonically. The parties may participate in the Trial Preparation Conference set for 1/10/24 at 10:30 AM telephonically by calling 571–353–2301 at the scheduled time and utilizing Meeting ID: 252821415#. The Court notes that the parties may hear the conclusion of a prior hearing at the time they call in and are instructed to simply wait until their case is called. SO ORDERED, by Magistrate Judge Scott T. Varholak on 1/2/2024. Text Only Entry(stvlc5, ) (Entered: 01/02/2024) |
| 01/04/2024 | 36 | MINUTE ORDER: This matter is before the Court sua sponte. Pursuant to the 30 Trial Preparation Conference Order, on or before January 3, 2024, the parties shall file proposed witness lists, exhibit lists and trial briefs (if any). To date, the Court has not received the required filings. The Trial Preparation Conference set for January 10, 2024 is VACATED and reset for January 31, 2024 at 3:00 PM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. The deadlines listed in the Trial Preparation Conference Order are EXTENDED to January 24, 2024. SO ORDERED, by Magistrate Judge Scott T. Varholak on 1/4/2024. Text Only Entry (stvlc5, ) (Entered: 01/04/2024) |
| 01/23/2024 | 37 | TRIAL BRIEF – – *Plaintiffs' Trial Brief* by Plaintiffs BreeAnna Porter, Christopher Porter. (Sanford, Joshua) (Entered: 01/23/2024) |
| 01/23/2024 | 38 | Exhibit List – – *Plaintiffs' Exhibit List* by Plaintiffs BreeAnna Porter, Christopher Porter. (Sanford, Joshua) (Entered: 01/23/2024) |

| 01/23/2024 | 39 | Witness List −− *Plaintiffs' Witness List* by Plaintiffs BreeAnna Porter, Christopher Porter. (Sanford, Joshua) (Entered: 01/23/2024) |
|---|---|---|
| 01/24/2024 | 40 | Witness List *and Exhibit List* by Defendant T.J. Crowder and Sons, LLC. (Attachments: # 1 Exhibit Exhibit List)(Davis, Michael) (Entered: 01/24/2024) |
| 01/31/2024 | 41 | MINUTE ENTRY for Telephonic Trial Preparation Conference held before Magistrate Judge Scott T. Varholak on 1/31/2024. FTR: A402. (morti, ) (Entered: 01/31/2024) |
| 02/08/2024 | 42 | NOTICE of Entry of Appearance −− *Notice of Appearance − Sean Short* by Sean Short on behalf of BreeAnna Porter, Christopher PorterAttorney Sean Short added to party BreeAnna Porter(pty:pla), Attorney Sean Short added to party Christopher Porter(pty:pla) (Short, Sean) (Entered: 02/08/2024) |
| 02/14/2024 | 43 | Proposed Findings of Fact *and Conclusions of Law* by Defendants Farrel Crowder, T.J. Crowder and Sons, LLC. (Davis, Michael) (Entered: 02/14/2024) |
| 02/26/2024 | 44 | MINUTE ENTRY for proceedings held before Magistrate Judge Scott T. Varholak: Bench Trial Day 1 held on 2/26/2024. Opening statements. Witness called and sworn. The parties jointly move to have the damages portion of the case bifurcated from the liability portion and are asking for a ruling on whether the agricultural exemption applies. Neither side wishes to make any oral closing statements today but would rather submit a written statement. ORDERED: In lieu of oral closing statements, Defendants shall file a closing argument brief or post−trial brief, on the issue of the agricultural exemption within twenty−one (21) days from todays date. Plaintiffs will then have ten (10) days to respond to Defendants closing argument brief. Court Reporter: Mary George. (morti,) (Entered: 02/26/2024) |
| 02/28/2024 | 61 | Conventionally Submitted Material : USB Flash Drive of Trial Exhibits by Plaintiffs Christopher Porter, BreeAnna Porter. Located in Clerk's Office A−2−6. Checked out to Chambers. Text Only Entry (schap, ) (Entered: 08/06/2025) |
| 03/18/2024 | 45 | BRIEF *Post Trial Brief* by Defendants Farrel Crowder, T.J. Crowder and Sons, LLC. (Attachments: # 1 Exhibit Testimony of F. Crowder)(Davis, Michael) (Entered: 03/18/2024) |
| 03/28/2024 | 46 | RESPONSE to 45 Brief by Plaintiffs BreeAnna Porter, Christopher Porter. (Sanford, Joshua) (Entered: 03/28/2024) |
| 05/10/2024 | 47 | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER. The Court concludes that the agricultural exemption does apply to Mr. Porter's work and thus finds in favor of Defendants as to liability on his FLSA overtime violation claim. A status conference is set for June 4, 2024, by Magistrate Judge Scott T. Varholak on 5/10/2024. (ccuen, ) (Entered: 05/10/2024) |
| 05/10/2024 | 48 | ORDER by Magistrate Judge Scott T. Varholak on 5/10/2024 pursuant to ECF 47 Findings of fact, conclusions of law, and order.

Status Conference set for 6/4/2024 02:00 PM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. Text Only Entry. (ccuen, ) (Entered: 05/10/2024) |
| 06/04/2024 | 49 | MINUTE ENTRY for Telephonic Status Conference held before Magistrate Judge Scott T. Varholak on 6/4/2024. ORDERED: A further Telephonic Status Conference set for 7/31/2024 09:00 AM in Courtroom A 402 before Magistrate Judge Scott T. Varholak. Parties shall call the court at (571−353−2301) Access Code: 252821415#, to participate. If between now and the time of the status conference, the parties reach a |

| | | |
|---|---|---|
| | | stipulation of dismissal of the remaining issues and request a final judgment, the parties shall file that with the court. FTR: A402. (morti, ) (Entered: 06/04/2024) |
| 07/31/2024 | 50 | MINUTE ENTRY for Telephonic Status Conference held before Magistrate Judge Scott T. Varholak on 7/31/2024. ORDERED: A two (2) day Bench Trial is set for November 4–5, 2024 at 8:30 a.m. before Magistrate Judge Varholak in courtroom A402. The court will not set another Trial Preparation Conference. If the parties settle the matter before the start of trial, the parties shall notify Magistrate Judge Varholaks chambers. If the parties need guidance from the court prior to the trial on any issues that may arise, the parties shall file a request for a status conference. FTR: A402. (morti,) (Entered: 07/31/2024) |
| 11/04/2024 | 51 | MINUTE ENTRY for Bench Trial held before Magistrate Judge Scott T. Varholak on 11/4/2024. ORDERED: The parties shall file a simultaneous brief on or before **December 9, 2024**. FTR: A402. (schap, ) (Entered: 11/04/2024) |
| 12/09/2024 | 52 | TRIAL BRIEF *Post Trial Brief and Proposed Findings of Fact* by Plaintiff BreeAnna Porter. (Short, Sean) (Entered: 12/09/2024) |
| 12/09/2024 | 53 | TRIAL BRIEF *Findings of Fact and Conclusions of Law* by Defendant T.J. Crowder and Sons, LLC. (Davis, Michael) (Entered: 12/09/2024) |
| 12/17/2024 | 54 | MINUTE ORDER This matter is before the Court upon 52 and 53 Proposed Findings of Fact and Conclusions of Law. The Court ORDERS each party to file a response to the opposing party's findings by **1/17/2025**. SO ORDERED, by Magistrate Judge Scott T. Varholak on 12/17/2024. Text Only Entry (stvlc6, ) (Entered: 12/17/2024) |
| 01/17/2025 | 55 | RESPONSE to 53 Trial Brief by Plaintiffs Christopher Porter, BreeAnna Porter. (Short, Sean) (Entered: 01/17/2025) |
| 01/17/2025 | 56 | RESPONSE *to Proposed Findings of Fact and Conclusions of Law* by Defendant T.J. Crowder and Sons, LLC. (Davis, Michael) (Entered: 01/17/2025) |
| 06/23/2025 | 57 | MINUTE ORDER: In reviewing the testimony and the briefing, the Court believes the parties would greatly benefit from a settlement conference. Judge Prose has volunteered to do so. The parties are directed to jointly contact Judge Prose's Chambers to schedule a settlement conference on or before 6/27/25. SO ORDERED, by Magistrate Judge Scott T. Varholak on 6/23/25. Text Only Entry (stvlc5, ) (Entered: 06/23/2025) |
| 06/25/2025 | 58 | MINUTE ORDER: In light of Michael J. Davis' representations to the Court, the Order at Dkt. No. 57, instructing the parties to contact Judge Prose's Chambers, is VACATED. If Defendant finds replacement counsel and wants to proceed with a settlement conference, Judge Prose remains willing to conduct a settlement conference in this case. SO ORDERED, by Magistrate Judge Scott T. Varholak on 6/25/25. Text Only Entry (stvlc5, ) (Entered: 06/25/2025) |
| 07/15/2025 | 59 | FINDINGS OF FACT AND CONCLUSIONS OF LAW by Magistrate Judge Scott T. Varholak on 7/15/2025. (schap, ) (Entered: 07/15/2025) |
| 07/15/2025 | 60 | JUDGMENT by Clerk re: 59 Order on 7/15/2025. (schap, ) (Entered: 07/15/2025) |
| 08/12/2025 | 62 | NOTICE OF APPEAL as to 47 Findings of Fact & Conclusions of Law, 59 Order Dismissing Case, 60 Clerk's Judgment by Plaintiffs Christopher Porter, BreeAnna Porter (Filing fee $ 605, Receipt Number ACODC–10491993) (Short, Sean) (Entered: 08/12/2025) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-00808-STV

CHRISTOPHER PORTER; and
BREANNA PORTER,

      Plaintiffs,

v.

T.J. CROWDER AND SONS, LLC; and
FARREL CROWDER,

      Defendants.
_____

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**
_____

Magistrate Judge Scott T. Varholak

      This matter came before the Court for trial on February 26, 2024. [#44] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##8, 9] At the conclusion of the trial, the Court took the matter under advisement. Having fully reviewed the evidence presented, applicable law and arguments of counsel, the Court now enters its Findings of Fact, Conclusions of Law and Order.

**I.    BACKGROUND**

      Plaintiffs initiated this action on April 4, 2022. [#1] Plaintiffs' Complaint alleges: (1) violations of the Fair Labor Standards Act ("FLSA") for failure to pay federal minimum wages for all hours worked and failure to pay overtime wages and (2) violations of the Colorado Wage Act ("CWA") and the Colorado Minimum Wage Order No. 37 ("CMWO")

for failure to pay overtime wages and failure to permit Plaintiffs to take compensated rest breaks. [*Id.*] A bench trial commenced on April 4, 2022. [#44] After hearing testimony from a witness regarding liability, by agreement of the parties, the Court bifurcated the matter and agreed to first issue a ruling on whether the agricultural exception to the FLSA applied, with the question of liability for hours worked but not paid to Ms. Porter and any damages to be determined at a future date. [*Id.*] Following the trial, each side submitted post-trial briefs. [##45, 46]

## II.   FINDINGS OF FACT

Defendant T.J. Crowder and Sons, LLC ("Humalfa") is a Colorado limited liability company doing business as Humalfa. [#45-1 at 2 (2:20-23)] Defendant Farrel Crowder is the owner and managing member of Humalfa. [*Id.* at 3 (3:5-7)] Humalfa is a composting company that converts raw cattle manure into organic fertilizer. [*Id.* at 7-8 (7:22-8:3)] During the relevant time period, Humalfa always employed at least two, and usually approximately eight, employees. [*Id.* at 4 (4:10-19)]

The relevant feedlot where Humalfa operated was owned by Five Rivers Cattle Feeding ("Five Rivers"). [*Id.* at 6-4 (6:22-7:8)] Neither Humalfa nor Mr. Crowder had any ownership interest in the feedlot or the feedlot's land. [*Id.* at 7 (7:14-18)] Mr. Crowder testified that Humalfa is a separate operation from Five Rivers' feedlot and Humalfa paid for the creation of the compost yard. [*Id.* at 13 (13:22-24), 36 (36:6-12)]

Five Rivers' employees were responsible for cleaning the cattle pens and piling the manure in the pens. [*Id.* at 33-34 (33:18-34:3)] Humalfa employees would then load the manure piles onto a dump truck and haul the manure to the compost yards where it would be unloaded. [*Id.* at 34-35 (34:14-35:7)] The work hauling manure from the pens

2

was time sensitive because, if the manure was not timely removed from the pens, the cattle's movements would be restricted. [*Id.* at 11 (11:3-9)] The compost yards were located within Five Rivers' feedlot. [*Id.* at 7-8 (7:22-8:3), 34 (34:16-18)] Once the manure was unloaded, a machine would turn and compost the manure. [*Id.* at 14-15 (14:17-15:7)]. Mr. Crowder explained the process as follows: "By turning [the manure] and composting it, it allows that resource to be shipped a lot further. Raw manure, you can just afford to haul it 10, 15 mile[s] from the source here. But once you have composted it, that ton of compost will replace about 6 ton[s] of manure." [*Id.* at 15 (15:3-7)] The turning process takes approximately eight weeks. [*Id.* at 15-16 (15:21-16:5)] That fertilizer is then spread out on Five Rivers' feedlot and on other pastures 30-40 miles from Five Rivers. Mr. Crowder testified that the removal of the manure is essential to farm operations, and that the farm operations "like to have the fertilizer [cultivated by Humalfa] on the pastures." [*Id.* at 14 (14:9-11); 37 (37:16-19); 38 (38:7-11); 46-47 (46:20-47:4)] Five Rivers also employes manure haulers who simply remove the raw manure from the feedlot, and haul it to other farms to be spread. [*Id.* at 38 (38:12-21)]

Mr. Porter worked for Humalfa from 2007 through 2021, with a brief break in employment in early 2019 due to legal issues. His job was to load the piles of manure from the pens, haul manure from the cattle pens to the compost yard, and dump the manure in windrows for turning. [*Id.* at 10 (10:17-20), 34-35 (34:14-35:8)] Mr. Porter primarily held the title of "manure handler." [*Id.* at 10 (10:5-6)] He worked almost exclusively within the Five Rivers' feedlot. [*Id.* at 7 (7:3-8)] As a result of the time-sensitive and essential nature of the work, Mr. Porter's hours varied from week to week. [*Id.* at 11 (11:6-17), 19-20 (19:13-20:4)] On average, Mr. Porter worked 40-50 hours per

3

week, though some weeks he may have worked up to 70 hours.  [*Id.* at 19-20 (19:13-20:8)]

      Humalfa paid Mr. Porter's wages.  [*Id.* at 32 (32:18-25)]  Mr. Crowder was responsible for setting those wages.  [*Id.* at 4 (4:3-5)]  Mr. Porter was paid straight time for all hours worked and did not receive time and one-half for overtime wages.  [*Id.* at 24 (24:4-8)]  This was because Mr. Crowder believed that the FLSA's agricultural exemption applied.  [*Id.*]  During the relevant time period, Humalfa deducted thirty minutes per day for lunch but paid employees for 10-minute breaks every four hours.  [*Id.* at 25 (25:14-24)]  Ms. Porter would text or call Mr. Porter's hours worked to a Humalfa employee.  [*Id.* at 16-17 (16:20-17:19)]

## III.    CONCLUSIONS OF LAW

      Under the FLSA, an employer must pay an employee overtime compensation at a rate not less than one and one-half times the regular rate at which the employee is employed for all hours that the employee works in a given week above 40 hours.  29 U.S.C. § 207(a)(1).  Defendants argue that Mr. Porter was exempt from the FLSA's overtime provision pursuant to the agricultural employee exemption.  [*See generally* #45]  Defendants bear the burden of demonstrating that the agricultural exemption applies.  *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008).  And "[i]t is well settled that exemptions from the Fair Labor Standards Act are to be narrowly construed."  *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295 (1959); *see also Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1184 (2004) (specifying that exemptions are to be narrowly construed against the employers seeking to assert them).  "[T]he employer must show that the employee fits plainly and unmistakably within the exemption's terms. . . .

4

An employer must prove that the employee is exempt by 'clear and affirmative' evidence." *Archuleta*, 543 F.3d at 1233 (quotation omitted). "The inquiry into exempt status . . . remains intensely fact bound and case specific." *Id.* (quotation omitted).

Under the FLSA, "any employee employed in agriculture" is exempt from the overtime pay requirement. 29 U.S.C. § 213(b)(12). The FLSA defines "agriculture" as including:

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . ., the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f). "The agricultural exemption was meant to apply broadly and to 'embrace the whole field of agriculture,' but 'it was meant to apply only to agriculture;' thus the critical issue is what is and what is not included within that term." *Rodriguez*, 360 F.3d at 1185 (quoting *Maneja v. Waialua Agric. Co.*, 349 U.S. 254, 260 (1955)).

The Tenth Circuit has interpreted the definition of agriculture in Section 203(f) to include "farming in both a primary and a secondary sense." *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1203–04 (10th Cir. 2004) (quoting *Bayside Enterprises, Inc. v. NLRB*, 429 U.S. 298, 300 (1977)). Defendants argue that Humalfa's activity falls within the definition of secondary agriculture. [#45 at 5] To fall within the secondary sense of agriculture, Defendants must prove that Plaintiffs' work was: "(1) performed by a farmer or on a farm, and (2) incident to or in conjunction with such farming operations." *Pacheco*, 365 F.3d at 1205.

5

To begin, Humalfa's work as performed by Mr. Porter took place "on a farm." 29 U.S.C. § 203(f). Mr. Porter loaded piles of manure from the feedlot pens into a truck, drove the truck to another area of the feedlot, and dumped the manure into rows. Plaintiffs do not appear to seriously contest this point. [#46 at 6 (arguing that "[t]he fact that the work is performed 'on a farm' is irrelevant")] The primary dispute is whether Humalfa's work was incident to or in conjunction with farming operations.

The Code of Federal Regulations provides guidance as to when work is incident to or in conjunction with farming operations. According to the regulations:

> Generally, a practice performed in connection with farming operations is within the statutory language only if it constitutes an established part of agriculture, is subordinate to the farming operations involved, and does not amount to an independent business. Industrial operations and processes that are more akin to manufacturing than to agriculture are not included. This is also true when on-the-farm practices are performed for a farmer.

29 C.F.R. § 780.144. The Court must consider "the general relationship, if any, of the practice to farming as evidenced by common understanding, competitive factors, and the prevalence of its performance by farmers." 29 C.F.R. § 780.145. Other factors the court may consider include:

> the size of the operations and respective sums invested in land, buildings and equipment for the regular farming operations and in plant and equipment for performance of the practice, the amount of the payroll for each type of work, the number of employees and the amount of time they spend in each of the activities, the extent to which the practice is performed by ordinary farm employees and the amount of interchange of employees between the operations, the amount of revenue derived from each activity, the degree of industrialization involved, and the degree of separation established between the activities.

*Id.*

In explaining the difference between qualifying incidental activities that are "carried on as part of the agricultural function" and non-qualifying activities that are "separately

6

organized as an independent productive activity," the United States Supreme Court has stated that "[w]hether a particular type of activity is agricultural depends, in large measure, upon the way in which that activity is organized." *Farmers Reservoir & Irrigation Co. v. McComb* ("*Farmers Reservoir*"), 337 U.S. 755, 760-61 (1949). The Court explained that "[t]he fashioning of tools, the provision of fertilizer, the processing of the product, to mention only a few examples, are functions which [may be] performed on the farm by farmers as part of their normal agricultural routine," but may be completed through industrial processes under other systems. *Id.* at 761. To illustrate this divide, the Court contrasted "the compost heap" with "factory produced fertilizer," and power "derived from electricity and gasoline" with power "supplied by the farmer's mules." *Id.* As one final illustrative comparison, the Court concluded that "[t]he farmhand who cares for the farmer's mules or prepares his fertilizer is engaged in agriculture," while "the maintenance man in a power plant and the packer in a fertilizer factory are not." *Id.* (footnotes omitted).

With these principles in mind, the Court concludes that Humalfa's work as performed by Mr. Porter qualifies as agricultural. Indeed, Humalfa's operation at the Five Rivers feedlot appears to fit squarely within the quintessentially agricultural system of preparing fertilizer envisioned by the Supreme Court in *Farmers Reservoir*. Far from acting as a "packer in a fertilizer factory," Mr. Porter was engaged in manually loading manure directly from livestock pens and transporting it to a "compost heap" located in a pasture on the same farm. Once there, the manure was simply turned in the field for eight weeks, with no additives or further industrial processing. *Cf. Mitchell v. Budd* 350 U.S. 473, 475-82 (1956) (holding that the tobacco drying process—which altered the tobacco leaves through minimal processing that occurred on the farm—qualified as part of the

7

"agricultural operation," while the "bulking process"—which required the "carefully controlled regulation of temperature and humidity" through the use of "a large amount of equipment" and took place at a separate processing facility off of the farm—did not); *see also* 29 C.F.R. § 780.145 (listing "the degree of industrialization involved" as a relevant factor in considering whether an activity is agricultural).

Moreover, while compost is not the primary product being prepared through Five Rivers' agricultural operation, the manure handling process is certainly incidental to (or performed in conjunction with) the primary livestock operation. The removal of the manure is an undisputably integral step in the feedlot operation. [#45-1 at 42 (42:5-6) ("[I]f you want to feed cattle, you have to do the manure management."), 46 (46:20-22) (agreeing that "these cattle operation must have the manure removed")]; *see Donavon v. Marrero*, 695 F.2d 791, 794-96 (3rd Cir. 1982) (holding that the removal of spent compost from mushroom beds and the disposal of that compost constituted "secondary agriculture" under the FLSA because the work took place on a farm and was an "integral step in the mushroom growing process"). The fact that, instead of simply disposing of the manure, Humalfa undertakes minimal processing of the manure on the farm does not alter this conclusion. To the contrary, Humalfa's on-the-farm management of the manure only provides further benefit to the farming operation, supporting the notion that Humalfa's services are provided in conjunction with the primary feeding operation. [#45-1 at 14 (14:9-12) (agreeing that Humalfa's services "help solve two problems for [the farm:] They need the manure out and they like to have the fertilizer on the pastures")]

Nor does the fact that Humalfa operates independently from Five Rivers disqualify their on-the-farm manure management operation as secondary agriculture. As the Supreme Court has explained:

> As originally introduced, the ["incident to or in conjunction with"] exemption covered such practices only if performed by a farmer. On the floor of the Senate it was objected that this would exclude the threshing of wheat or other functions necessary to the farmer if those functions were not performed by the farmer and his hands, but by separate companies organized for and devoted solely to that particular job. To take care of that situation [the] words "or on a farm" were added to the definition. Thus, the wheat threshing companies, even though they were separate enterprises, were included in the exemption because their work was incidental to farming and was done on the farm.

*Farmers Reservoir*, 337 U.S. at 767 (footnote omitted). Thus, the removal and disposal of mushroom compost could constitute "secondary agriculture," even though it was performed by an independent contractor who specialized in this "take-out" service. *Donovan*, 695 F.2d at 793, 795-96. Accordingly, even to the extent that Humalfa was operating as an "independent business" as contemplated by 29 C.F.R. § 781.144, the Court nevertheless finds that this factor is not dispositive. *See Bills v. Cactus Fam. Farms, LLC*, 5 F.4th 844, 848-49 (8th Cir. 2021) (rejecting a "mechanical application" of 29 C.F.R. § 780.144's three factor test, because "the total situation will control" (quoting 29 C.F.R. § 780.145)).

Finally, the Court notes that the parties did not elicit evidence about many of the factors set forth in the regulations—such as the amount of revenue derived from each activity, the sums invested in each operation, and the amount of payroll for each activity—and the Court is mindful that Defendants bear the burden of demonstrating that the agricultural exemption applies. *Archuleta*, 543 F.3d at 1233. In addition, there does not appear to be a significant interchange of employees between Humalfa's operation and

9

the livestock feeding operation, and there is a clear degree of separation between the operations.  These factors weigh against the application of the exemption.  29 C.F.R. § 780.145; *see also Holly Farms Corp. v. N.L.R.B.*, 517 U.S. 392, 403 (1996) (finding that the N.L.R.B.'s conclusion that "live-haul crews"—teams of chicken catchers, forklift operators, and truckdrivers who collect chickens for slaughter—were not agricultural laborers was reasonable, in part, because there was "minimal overlap between the work of the live-haul crew and the independent growers" who raised the chickens).  However, the Court is also cognizant of the instruction to look to the "common understanding" of the "total situation."  29 C.F.R. § 780.145.  Here, Mr. Porter (pursuant to his title of "manure handler") loaded piles of cow manure from feedlot pens onto a truck, drove the manure to a compost yard on the feedlot, and unloaded the manure into windrows.  Ultimately, as far as "common understanding" goes, the Court agrees with the sentiment expressed by Mr. Crowder at trial:  "You don't get more ag than dealing with cattle manure; that's about as ag as it gets."  [#45-1 at 8 (8:24-25)]

For the foregoing reasons, the Court concludes that Humalfa's on-the-farm manure handling operation constitutes "secondary agriculture" and that the agricultural exemption does apply to Humalfa's operations as performed by Mr. Porter.

IV.     **CONCLUSION**

For the foregoing reasons, the Court concludes that the agricultural exemption does apply to Mr. Porter's work and thus finds in favor of Defendants as to liability on his FLSA overtime violation claim.  A status conference is set for June 4, 2024.

DATED:  May 10, 2024                          BY THE COURT:

                                              s/Scott T. Varholak
                                              United States Magistrate Judge

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00808-STV

CHRISTOPHER PORTER; and
BREANNA PORTER,

      Plaintiffs,

v.

T.J. CROWDER AND SONS, LLC; and
FARREL CROWDER,

      Defendants.

_____

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
_____

Chief United States Magistrate Judge Scott T. Varholak

      This matter came before the Court for trial on November 4, 2024. [#51] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##8, 9] At the conclusion of the trial, the Court took the matter under advisement. Having fully reviewed the evidence presented, applicable law and arguments of counsel, the Court now enters its Findings of Fact and Conclusions of Law.

## I.      BACKGROUND

      Plaintiffs initiated this action on April 4, 2022. [#1] Plaintiffs' Complaint alleges: (1) violations of the Fair Labor Standards Act ("FLSA") for failure to pay federal minimum wages for all hours worked and failure to pay overtime wages and (2) violations of the Colorado Wage Act ("CWA") and the Colorado Minimum Wage Order No. 37 ("CMWO")

for failure to pay overtime wages and failure to permit Plaintiffs to take compensated rest breaks. [*Id.*] A bench trial commenced on April 4, 2022. [#44] After hearing testimony from a witness regarding liability, by agreement of the parties, the Court bifurcated the matter and agreed to first issue a ruling on whether the agricultural exemption to the FLSA applied, with the question of liability for hours worked but not paid to Ms. Porter and any damages to be determined at a future date. [*Id.*] On May 10, 2024, this Court issued its Findings of Fact, Conclusions of Law, and Order concluding that the agricultural exemption applied to Mr. Porter's claims.

On November 4, 2024, this Court conducted another bench trial related to the remaining claims. The Court took the matter under advisement and ordered the parties to submit trial briefs. [#51] On December 9, 2024, each side submitted their trial briefs. [##52, 53] Upon reviewing the trial briefs, this Court ordered supplemental briefing [#54] which the parties submitted [##55, 56].

## II.    FINDINGS OF FACT

Defendant T.J. Crowder and Sons, LLC ("Humalfa") is a Colorado limited liability company doing business as Humalfa. Defendant Farrel Crowder is the owner and managing member of Humalfa. Humalfa is a composting company that converts raw cattle manure into organic fertilizer. During the relevant time period, Humalfa always employed at least two, and usually approximately eight, employees.

The relevant feedlot where Humalfa operated was owned by Five Rivers Cattle Feeding ("Five Rivers"). Neither Humalfa nor Mr. Crowder had any ownership interest in the feedlot or the feedlot's land. Mr. Crowder testified that Humalfa is a separate operation from Five Rivers' feedlot and Humalfa paid for the creation of the compost yard.

2

Five Rivers' employees were responsible for cleaning the cattle pens and piling the manure in the pens. Humalfa employees would then load the manure piles onto a dump truck and haul the manure to the compost yards where it would be unloaded. The compost yards were located within Five Rivers' feedlot. Once the manure was unloaded, a machine would turn and compost the manure.

Mr. Porter worked for Humalfa from 2007 through 2021, with a brief break in employment in early 2019 due to legal issues. His job was to load the piles of manure from the pens, haul manure from the cattle pens to the compost yard, and dump the manure in windrows for turning. Mr. Porter primarily held the title of "manure handler." Typically Mr. Porter was the only Humalfa employee at Five Rivers, though for a period of time another employee, Alan Sampson, also worked there.

Humalfa paid Mr. Porter's wages. Heather Day, Humalfa's office manager, was responsible for tracking the payment records. Ms. Porter would text or call Mr. Porter's hours worked to Ms. Day or Casey Scott, another Humalfa employee. Mr. Crowder did not see those text messages and he did not know why Ms. Porter texted Mr. Porter's time records. Mr. Porter testified that he believed the hours texted were accurate.

Ms. Porter was hired by Humalfa in 2018. At that time she completed employment paperwork. She only worked for Humalfa briefly in 2018 and then was let go because Humalfa no longer needed her services. Ms. Porter testified that she "returned" around December 2019 (the "Second Term"), though her testimony on this point was inconsistent. She testified on direct examination that she returned in 2019, then clarified that it was actually March 2020, and then on cross-examination she stated that she returned in 2021 and that she worked for "nobody" in 2020.

3

Ms. Porter testified that, during this Second Term, she would begin the day by opening the pen gate so that Mr. Porter could enter the pens. She testified that she would do whatever Mr. Scott or Mr. Porter asked her to do. Ms. Porter testified that she would take the weight tickets from the drivers and turn them into the Humalfa office on Fridays.[1] And on more than one occasion Ms. Porter texted photos of these weight tickets to Ms. Day. Nonetheless, Ms. Day credibly testified that she did not know why Ms. Porter was texting photographs of the tickets or why Ms. Porter occasionally texted the hours that other Humalfa employees (besides Mr. Porter) worked. Mr. Porter, Mr. Scott, Mr. Sampson and Mr. Crowder would also text Ms. Porter the equipment parts they needed and Ms. Porter would drive to Yuma, Wray, Haxtun, Greeley and Eaton to obtain those parts. Ms. Porter testified that she also picked up rocks, replaced water pipes and cleaned the cabs of the semi-trucks. Mr. Porter testified that Ms. Porter would open the pen gates, pick up rocks, occasionally clean the cabs, when she had a little extra time, and sometimes drive to town to get parts, but that the frequency of driving to town varied.

Ms. Porter's testimony about the amount of time she spent performing these tasks was also inconsistent. At one point she testified that most days she went home after opening the pen for Mr. Porter. She also testified that there were plenty of days that she did not work. But then at another point she testified that she picked up rocks almost every day, picked up parts every day, and did maintenance work every other day. She testified

---

[1] Ms. Day credibly testified that she does not work Fridays and that the Humalfa employees would simply place the tickets on a desk at the Humalfa office on Fridays. Thus, the Court concludes that Ms. Day was not aware that Ms. Porter was making this trip to drop off the tickets.

that on normal days she worked three to four hours, for five or six days per week, yet somehow estimated that she worked on average 26 to 36 hours.

Near the end of Mr. Porter's employment, he told Mr. Crowder that Ms. Porter was able to drive a truck. Based upon this representation, Mr. Crowder hired Ms. Porter. On November 8, 2021, Ms. Porter was hired by Humalfa as a part time helper and, on November 10, 2021, she texted Ms. Day and asked to be added to the Humalfa payroll. Ms. Porter only worked as a driver for a few weeks and was terminated.

Mr. Crowder's office was located in Iliff, approximately 75 miles away from Five Rivers. Mr. Crowder would go to Five Rivers "every couple of weeks," usually because he had some business at Five Rivers. Mr. Crowder was not monitoring who was at the feedlot and he testified that he did not ask Ms. Porter to do any work during the Second Term. Nonetheless, Mr. Crowder knew that Ms. Porter spent some time at the feedlot. Mr. Crowder knew that Ms. Porter took Mr. Porter to work. Mr. Crowder would also occasionally see Ms. Porter at the feedlot, though Mr. Crowder did not ask her why she was there. On three or four occasions, Ms. Porter told Mr. Crowder that she had been helping clean the loaders. On those occasions, Mr. Crowder would give Ms. Porter $100. Mr. Crowder also saw Ms. Porter with Mr. Porter at the Humalfa office on occasion, though he again did not ask Ms. Porter why she was there. In the end, Mr. Crowder credibly testified that he knew Ms. Porter was "pitching in" at the feedlot and that she wanted to become an employee, but that he just could not justify hiring her and that she was assisting in tasks that Mr. Porter was supposed to be doing. Ms. Day also testified that she was aware that Ms. Porter may have assisted with the parts and knew that Ms. Porter

5

was using Mr. Porter's name to purchase parts at the hardware store, though she did not know that Ms. Porter was performing any of the other tasks at the feedlot.

Ultimately, the Court concludes that Ms. Porter would occasionally: (1) help Mr. Porter with the tasks that Mr. Porter was assigned to perform at Five Rivers; (2) purchase parts for Humalfa, and (3) deliver the weight tickets to the Humalfa offices (collectively, the "Unpaid Tasks"). The Court further concludes that Mr. Crowder knew that Ms. Porter would occasionally help Mr. Porter at Five Rivers and that Ms. Day, and likely Mr. Crowder, also knew that Ms. Porter would occasionally purchase parts for Humalfa. But the evidence on when the Unpaid Tasks began is contradictory and convoluted, and the Court cannot conclude that such activities occurred with any frequency until sometime in late 2020 or early 2021. Indeed, the text messages between Ms. Porter and Ms. Day do not begin until August 2020 and, until December 2020, those texts almost exclusively involved Ms. Porter relaying Mr. Porter's hours to Ms. Day. Moreover, the Court cannot reliably estimate the amount of time Ms. Porter spent on the Unpaid Tasks. Once again, Ms. Porter's testimony was inconsistent about the amount of time she spent on the Unpaid Tasks and her estimate of 26 to 36 hours per week is both inconsistent with her own testimony and inconsistent with Mr. Porter's testimony. The Court thus finds that estimate incredible.

Finally, Ms. Porter testified about text messages that she had with Ms. Day concerning the last two weeks of work. In the text messages, Ms. Porter stated that she was owed eleven hours of unpaid time and Mr. Porter was owed 31 hours of unpaid time. Ms. Day also testified about these hours. Ms. Day said that Mr. Crowder told Ms. Day not to pay those hours because three people had confirmed that Mr. and Mrs. Porter had

not worked those hours, and that the Porters were paid for time that they actually worked. Plaintiffs did not offer any rebuttal evidence to Ms. Day's testimony—either by testifying themselves or presenting other witnesses to contradict Ms. Day's assertions—and the Court finds Ms. Day's testimony credible. Thus, the Court concludes Defendants paid Plaintiffs for all hours worked in the last two weeks of their employment.[2]

## III.   CONCLUSIONS OF LAW

The parties raise numerous issues surrounding the question of whether Ms. Porter should or should not have been paid under the FLSA[3] for the time that she spent on the Unpaid Tasks. [##52, 53, 55, 56] Ultimately, the Court need not resolve many of these issues. Even assuming that Defendants employed Ms. Porter for FLSA purposes and

---

[2] The Complaint also alleges that Defendants violated the FLSA and/or the CWA by: (1) requiring Plaintiffs to perform work off the clock [#1 at ¶¶ 30, 34, 39], (2) paying Plaintiffs for fewer hours than Plaintiffs submitted [*id.* at ¶¶ 32, 34], (3) deducting time for lunch breaks even if Plaintiffs did not take a lunch break [*id.* at ¶ 35], and (4) not providing compensated rest periods [*id.* at ¶ 43]. Plaintiffs did not present any evidence that: (1) Mr. Porter performed work off the clock or that Ms. Porter was required to perform work off the clock, (2) Plaintiffs were not paid for hours that they submitted, or (3) Plaintiffs were improperly compensated with respect to lunch or rest breaks. Indeed, with respect to the texted hours, the only evidence was Mr. Porter's testimony that Ms. Porter faithfully recorded the hours and that Humalfa never questioned the hours submitted. Thus, the Court concludes that Plaintiff has failed to prove these additional allegations.

[3] Plaintiffs' second claim alleges violations of the CWA and CMWO and is premised upon: (1) Plaintiffs working more than forty hours per week without being paid overtime pay, and (2) Defendants failing to compensate for rest breaks. [#1 at ¶¶ 55-61] As explained above, Plaintiffs failed to present any evidence regarding uncompensated rest periods. *See supra* p.7 n.2. In the Court's previous Findings of Fact, Conclusions of Law, and Order, the Court held that the FLSA agricultural exemption applied to Plaintiffs' claims. [#47] The CWA likewise contains an agricultural exemption. Colo. Code. Reg. § 1103-1:2.2.3. Plaintiffs have not argued that the CWA agricultural exemption differs in any meaningful way from the FLSA agricultural exemption, nor did they present any argument on why Plaintiffs are entitled to overtime wages under the CWA. Thus, the Court finds that Plaintiffs have failed to prove their CWA and CMWO claim.

were therefore obligated under the FLSA to compensate Ms. Porter for the Unpaid Tasks, Ms. Porter has failed to prove her damages.

Under the FLSA, the burden originally is on the employees to demonstrate with sufficient evidence that the employees have, in fact, performed work for which they were improperly compensated. *Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1273, 1284 (D. Kan. 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014). But "when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the 'remedial nature of [the FLSA] and the great public policy which it embodies . . . militate against making' the burden of proving uncompensated work 'an impossible hurdle for the employee.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). "Instead of punishing 'the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work,' the [Supreme Court has] held 'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Id.* (quoting *Anderson*, 328 U.S. at 687). "Under these circumstances, '[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Id.* (quoting *Anderson*, 328 U.S. at 687–688).

The employee's burden "is not high" and courts have held that it is possible for a plaintiff to satisfy this burden through estimates based on their own recollection. *Kuebel*

8

v. *Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).  But "[w]hile the evidence may

be minimal, it must nonetheless be credible.  *Morales v. Gourmet Heaven, Inc.*, No. 3:14-

cv-01333 (VLB), 2016 WL 6996976, at *10 (D. Conn. Nov. 29, 2016) (citing *Daniels v.*

*1710 Realty LLC*, 476 F. App'x 137, 139 (2d Cir. 2012)).  And a "district court may not

'just accept plaintiff's statement of the damages.'"  *Id.* at *10 (quoting *Hosking v. New*

*World Mortg., Inc.*, 570 F. Appx. 28, 32 (2d Cir. 2014)).  Moreover, "[o]verly vague or

speculative evidence is insufficient to satisfy the Plaintiffs' minimal burden."  *Id.*; *see also*

*Daniels*, 497 F. App'x at 139 (testimony that is "too vague to be credible" will not suffice).

Here, the evidence presented about unpaid time owed to Ms. Porter was simply

too vague and incredible to satisfy the minimal standard to permit the Court to draw a just

and reasonable inference about her unpaid wages.  Initially, Ms. Porter's testimony about

when she began the Second Term—and thus began earning unpaid wages—was both

internally inconsistent and contradicted by the record evidence from the case.  Ms. Porter

testified on direct that the Second Term began around December 2019 or March 2020,

and then on cross-examination she stated that she returned in 2021 and that she worked

for "nobody" in 2020.  And the text messages between Ms. Porter and Ms. Day do not

begin until August 2020 and, until December 2020, those texts almost exclusively

involved Ms. Porter relaying Mr. Porter's hours to Ms. Day.

Similarly, Ms. Porter's testimony about the amount of time she spent performing

the Unpaid Tasks is vague and internally inconsistent.  At one point she testified that most

days she went home after opening the pen for Mr. Porter.  She also testified that there

were plenty of days that she did not work.  But then at another point she testified that she

picked up rocks almost every day, picked up parts every day, and did maintenance work

9

every other day. She testified that on normal days she worked three to four hours, for five or six days per week, yet somehow estimated that she worked on average 26 to 36 hours per week. And Ms. Porter's estimates are inconsistent with Mr. Porter's testimony that Ms. Porter would only occasionally clean cabs when she had a little extra time, and would sometimes drive to town to get parts, but that the frequency of driving to town varied.

Based upon the evidence presented, the Court has no idea when Ms. Porter began performing the Unpaid Tasks or the amount of time she spent on the Unpaid Tasks. The evidence presented on these topics was vague and not credible. As a result, Ms. Porter has failed to meet her minimal requirement of producing sufficient evidence to show the amount and extent of her unpaid work as a matter of just and reasonable inference. Accordingly, Defendants are entitled to judgment on Ms. Porter's FLSA claim. *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059-60 (8th Cir. 2014) (finding evidence insufficient where the plaintiff provided "vague testimony" and set forth contradictory assertions of the time worked with no "meaningful explanation of how he arrived at his final estimate" of time worked); *Daniels*, 497 F. App'x 137, 139 (upholding district court's finding that the FLSA plaintiff's testimony was too vague to be credible and the plaintiff had therefore failed to present evidence permitting a just and reasonable inference of improperly paid work); *Liu v. Little Saigon Cuisine Inc.*, No. 18-CV-2181 (RPK) (VMS), 2021 WL 4487839, at *9 (E.D.N.Y. Sept. 30, 2021) (finding evidence insufficient where the plaintiff's testimony was not credible); *Sutphin v. Zontrom, LLC*, No. 6:09-cv-1614-Orl-28DAB, 2009 WL 10712868, at *3 (M.D. Fla. Dec. 18, 2009) (same). Accordingly, Ms. Porter has failed to prove her FLSA claim.

## IV.    CONCLUSION

For the foregoing reasons, coupled with this Court's earlier Findings of Fact, Conclusions of Law, and Order [#47], the Court concludes that Plaintiffs have failed to prove either of their claims.  Accordingly, Judgment shall enter in favor of Defendants.

DATED:  July 15, 2025                                    BY THE COURT:


                                                                      s/Scott T. Varholak
                                                                      Chief United States Magistrate Judge

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00808-STV

CHRISTOPHER PORTER; and
BREANNA PORTER,

      Plaintiffs,

v.

T.J. CROWDER AND SONS, LLC; and
FARREL CROWDER,

      Defendants.

---

## FINAL JUDGMENT

---

      In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

      Pursuant to the Order (Doc. 59) by Chief Magistrate Judge Scott T. Varholak entered on July 15, 2025, it is

      ORDERED that judgment is entered in favor of the Defendants. It is

      FURTHER ORDERED that this case is closed.


      Dated this 15th day of July, 2025.

                            FOR THE COURT:
                            JEFFREY P. COLWELL


                            By:   s/ S. Chaplin, Deputy Clerk