**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 12, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHRISTOPHER PORTER;
BREANNA PORTER,

Plaintiffs - Appellants,

v.

T.J. CROWDER AND SONS, LLC;
FARREL CROWDER,

Defendants - Appellees.

No. 25-1310
(D.C. No. 1:22-CV-00808-STV)
(D. Colo.)

---

**ORDER AND JUDGMENT***

---

Before **TYMKOVICH**, **MATHESON**, and **PHILLIPS**, Circuit Judges.

---

Christopher and Breanna Porter brought this action under the Fair Labor Standards Act (FLSA) against T.J. Crowder and Sons, LLC (d/b/a Humalfa) and its owner, Farrel Crowder (together, Humalfa). They claimed that Mr. Porter was owed unpaid overtime and that Ms. Porter was entitled to hourly wages for work she had done for Humalfa without being paid.

---

* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

After conducting a bench trial, the district court ruled that Mr. Porter's work was agricultural and therefore exempt from FLSA's overtime requirement. After a second bench trial it concluded that although Ms. Porter had performed certain unpaid tasks for Humalfa, she failed to prove any amount she was entitled to recover. The Porters appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I.**

Humalfa is a composting company that converts raw cattle manure into fertilizer.[1] One of its composting operations is located on a feedlot in Yuma, Colorado, owned and operated by Five Rivers Cattle Feeding (Five Rivers). At the Yuma feedlot, Five Rivers' employees clean the cattle pens and pile manure in the pens. Humalfa employees then load the piled raw manure onto a truck and haul it to a compost yard located on the same feedlot. Removing manure from the pens is "time sensitive because, if the manure was not timely removed . . . the cattle's movements would be restricted." App., vol. 1, at 150.

After being unloaded at the compost yard, raw manure is turned and composted for approximately eight weeks. This is desirable because, according to Mr. Crowder, one ton of composted manure can "replace about 6 tons of [raw] manure," and while it is only cost-effective to transport raw manure ten or fifteen

[1] Unless otherwise attributed, we state the facts as found by the district court because its fact-finding is not clearly erroneous. *See Dep't of Lab. v. City of Sapulpa*, 30 F.3d 1285, 1287 (10th Cir. 1994).

miles, the composted manure is hauled and spread on pastures thirty to forty miles away. *Id.* (internal quotation marks and brackets omitted).

Mr. Porter worked for Humalfa from 2007 through 2021, with an interruption in 2019. He was employed and paid by Humalfa but worked almost exclusively within Five Rivers' feedlot. He held the title of "manure handler," and "[h]is job was to load the piles of manure from the pens, haul the manure from the cattle pens to the compost yard, and dump the manure in windrows for turning." App., vol. 1, at 150. "As a result of the time-sensitive and essential nature of the work, Mr. Porter's hours varied . . . ." *Id.* On average, he worked forty to fifty hours per week, and at times up to seventy. Humalfa paid Mr. Porter only "straight time," with no overtime. *Id.* at 151. The way Humalfa tracked his hours was that his wife, Breanna Porter, sent text messages to Humalfa reporting his hours, or sometimes called Humalfa's office.

Ms. Porter was also hired by Humalfa, after she completed employment paperwork in 2018, but she was then only employed briefly before being let go. She testified that she returned to employment with Humalfa at some later point, but the district court found her testimony inconsistent as to whether that second period began in 2019, 2020, or 2021. During this contested second period, the district court found "that Ms. Porter would occasionally: (1) help Mr. Porter with the tasks that Mr. Porter was assigned to perform at Five Rivers; (2) purchase parts for Humalfa, and (3) deliver . . . weight tickets to the Humalfa offices." *Id.* at 212. Mr. Crowder knew "that Ms. Porter would occasionally help Mr. Porter at Five Rivers," and "likely . . . also knew that Ms. Porter would occasionally purchase parts for

Humalfa." *Id.* But the district court found the evidence was "contradictory and convoluted" as to when Ms. Porter began to do these tasks and that her estimate of how much time she spent on them was "incredible." *Id.* Humalfa formally re-hired Ms. Porter for a third time period, which began on November 8, 2021, but lasted only "a few weeks" before she was terminated. *Id.* at 211.

**II.**

For Mr. Porter, the key disputed issue is whether his work was agricultural and therefore exempt from the FLSA's overtime requirement.

A.

The FLSA generally requires employers to pay overtime wages when a covered employee works more than forty hours in a week. *See* 29 U.S.C. § 207(a)(1). "But the Act also exempts many categories of employees from the minimum-wage and overtime-compensation requirements." *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 47 (2025). One of the overtime exemptions applies to "any employee employed in agriculture." 29 U.S.C. § 213(b)(12). "The agricultural exemption was meant to apply broadly and to 'embrace the whole field of agriculture . . . .'" *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1185(10th Cir. 2004) (quoting *Maneja v. Waialua Agric. Co.*, 349 U.S. 254, 260 (1955)), *abrogated on other grounds by Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88–89 (2018).[2] "[B]ut 'it was

---

[2] In *Rodriguez* and other past cases we applied a rule that "exemptions under the FLSA 'are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" *Rodriguez*, 360 F.3d at 1184 (quoting *Arnold v. Ben

meant to apply only to agriculture,' thus the critical issue is what is and what is not included within that term." *Rodriguez,* 360 F.3d at 1185 (quoting *Maneja*, 349 U.S. at 260).

The FLSA's definition of "agriculture" includes both (1) "farming in all its branches," and (2) "any practices . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations." 29 U.S.C. § 203(f). We have described these two parts of the definition as "primary" and "secondary" farming, respectively. *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1203 (10th Cir. 2004).[3] Humalfa argues that Mr. Porter's work was secondary farming. To be secondary farming a practice "must be (1) performed by a farmer *or* on a farm, and (2) incident to *or* in conjunction with such farming operations." *Id.* at 1204.

There is no real dispute that Mr. Porter's work was performed on a farm, as both the pens where he loaded the raw manure and the compost yard where he

---

*Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)); *see also, e.g.*, *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170, 1174 (10th Cir. 2023); *Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1156–58 (10th Cir. 2012) (collecting additional cases). The district court also cited that principle in this case. *See* App., vol. 1 at 151.

But in *Encino Motorcars* the Supreme Court rejected that principle, instead holding "there is no reason to give [FLSA exemptions] anything other than a fair (rather than a 'narrow') interpretation." 584 U.S. at 88 (brackets and internal quotation marks omitted); *see also Jordan v. Maxim Healthcare Servs., Inc.*, 950 F.3d 724, 733 (10th Cir. 2020) (stating *Encino Motorcars* rejected the "hitherto-employed principle . . . that FLSA exemptions must be narrowly interpreted").

[3] Other authorities refer to these as primary and secondary *agriculture*, rather than farming. We see no difference between the terms that matters for our decision here but use the term "secondary farming" consistent with *Pacheco*.

unloaded it were located within Five Rivers' feedlot property.[4] But the Porters argue his work was not performed "as an incident to or in conjunction with" the feedlot's farming operations. § 203(f). The district court disagreed. It found that "[t]he removal of the manure is an undisputably integral step in the feedlot operation," and concluded that "while compost is not the primary product being prepared through Five Rivers' agricultural operation, the manure handling process is certainly incidental to (or performed in conjunction with) the primary livestock operation." App., vol. 1 at 155.

B.

We review the district court's factual findings for clear error and review its "ultimate conclusion" that Mr. Porter was FLSA-exempt de novo. *Dep't of Lab. v. City of Sapulpa*, 30 F.3d 1285, 1287 (10th Cir. 1994). "The inquiry into exempt status remains intensely fact bound and case specific." *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008) (internal quotation marks and

---

[4] The Porters at one point suggest Mr. Porter's work was "technically performed on a farm without being performed 'on a farm' as contemplated by the [FLSA]." Opening Br. at 18. But elsewhere they state that Humalfa was "an outside employer operating a business 'on a farm,'" but for its own benefit, *id.* at 19, and that its operation as "an independent service *operating on farm property*," *id.* at 20. We thus see no actual dispute that Mr. Porter worked "on a farm." *See Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1360 (11th Cir. 2021) ("Activities that are performed on a farm are activities performed within the geographical area that constitutes a farm." (internal quotation marks and ellipsis omitted)); *see also* Reply Br. at 2 (agreeing that "Mr. Porter undisputedly worked on the Five Rivers Feed Lot . . . which is undisputedly a farm under the statute"). Rather, the disputed issue is whether his work was performed as an incident to or in conjunction with the feedlot's farming operations.

ellipses omitted) (applying 29 U.S.C. § 213(a)(1) professional exemption). As the employer, Humalfa had the burden to prove the exemption applied by a preponderance of the evidence. *See E.M.D. Sales,* 604 U.S. at 52.

Addressing whether a particular activity is agriculture, the Supreme Court has stated that "[t]he question is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity." *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 761 (1949). Department of Labor regulations similarly state that "[g]enerally, a practice performed in connection with farming operations is within the statutory language only if it constitutes an established part of agriculture, is subordinate to the farming operations involved, and does not amount to an independent business." 29 C.F.R. § 780.144.

But "[t]he line between practices that are and those that are not performed 'as an incident to or in conjunction with' such farming operations is not susceptible of precise definition." *Id.*

> The character of a practice as a part of the agricultural activity or as a distinct business activity must be determined by examination and evaluation of all the relevant facts and circumstances in the light of the pertinent language and intent of the [FLSA]. The result will not depend on any mechanical application of isolated factors or tests. Rather, the total situation will control.

29 C.F.R. § 780.145; *accord Maneja*, 349 U.S. at 264 ("[W]e must look to all the facts surrounding a given process or operation to determine whether it is incident to or in conjunction with farming."). The regulations therefore provide that "[d]ue weight should be given to any available criteria" and in particular "[t]he general

relationship . . . of the practice to farming as evidenced by common understanding." § 780.145.

C.

Applying these standards, considering the case-specific facts, and in light of the broad application of the agricultural exemption, *see Rodriguez*, 360 F.3d at 1185, we agree with the district court that Mr. Porter's work as a manure handler was performed "as an incident to or in conjunction with" the feedlot operations. 29 U.S.C. § 203(f). This conclusion follows from the fact that the removal of manure was an "undisputably integral step" in those operations, App., vol. 1 at 155, and from a "common understanding," 29 C.F.R. § 780.145, of the close and necessary relationship between the primary agricultural activity of raising cattle and Mr. Porter's work of "manually loading manure directly from livestock pens and transporting it" elsewhere on the same farm, App., vol.1, at 154. *See Pacheco*, 365 F.3d at 1204 (stating that work that is "a subordinate and necessary task incident to [the employer's] agricultural operations" falls under the agricultural exemption).

Arguing against this conclusion, Mr. Porter primarily emphasizes that Humalfa and Five Rivers are separate entities and that Humalfa's composting business was operated for its own benefit. We are not persuaded to reverse on this basis. Initially, although Mr. Porter cites 29 C.F.R. § 780.137, that provision addresses "[p]ractices performed *by a farmer* in connection with his nonfarming operations" (emphasis added). But here we understand Five Rivers as "the farmer" and the disputed

question is whether the work Mr. Porter did on Five Rivers' farm was performed "as an incident to or in conjunction with" the farming operations. § 203(f).

Mr. Porter's reliance on 29 C.F.R. § 780.143 is more applicable. This regulatory section addressees "[p]ractices on a farm not performed for the farmer." It states, in part:

> The fact that a practice performed on a farm is not performed by or for the farmer is a strong indication that it is not performed in connection with the farming operations there conducted. Thus, where such an employer other than the farmer performs certain work on a farm solely for himself in furtherance of his own enterprise, the practice cannot ordinarily be regarded as performed in connection with farming operations conducted on the farm.

*Id.* The regulation illustrates the point by describing that a business providing non-agricultural services cannot make otherwise non-agricultural workers FLSA-exempt only by relocating onto a farm:

> When a packer of vegetables or dehydrator of alfalfa buys the standing crop from the farmer, harvests it with his own crew of employees, and transports the harvested crop to his off-the-farm packing or dehydrating plant, the transporting and plant employees, who are not engaged in 'primary' agriculture as are the harvesting employees, are clearly not agricultural employees. Such an employer cannot automatically become an agricultural employer by merely transferring the plant operations to the farm so as to meet the "on a farm" requirement. His employees will continue outside the scope of agriculture if the packing or dehydrating is not in reality done for the farmer.

*Id.* (citation omitted). Thus, the regulation states that the question of whether a farmer has "relinquished title and divested himself of further responsibility with respect to the product, is highly significant" to the factual issue of "for whom the practices are performed." *Id.*

Although this regulation offers support for Mr. Porter's argument, it does not warrant reversal, for two reasons. First, even if Humalfa's composting business was conducted for its own benefit, our focus is on the work done by Mr. Porter, which was to load and transport raw manure within the feedlot property. While this was a part of Humalfa's business, it was also an "integral step" in Five Rivers' agricultural operation. App., vol. 1, at 155. Mr. Porter does not claim his role extended to processing the raw manure or transporting the finished product.[5] So, by reference to the illustration in § 29 C.F.R. 780.143, his job was more like that of a worker who harvests a farmer's crop (or here, collects its byproduct), and whose work is agriculture, and less like the "transporting and plant" employees who process an agricultural product or transport it off-farm. *See id*.

Second, we conclude the regulatory provisions that Mr. Porter relies on are not controlling here. Initially, we note that where 29 C.F.R. § 780.143 refers to whether a practice was performed "*for* the farmer," and both § 780.143 and § 780.144 address whether a practice was performed "*in connection with*" farming operations, neither of those phrases is found in the statutory text of 29 U.S.C. § 203(f). Moreover, the regulatory sections that Mr. Porter emphasizes do not state categorical rules; instead, they describe facts that give a "strong indication" whether a practice should be viewed as agriculture, 29 C.F.R. § 780.143, and circumstances where the agricultural

[5] We do not decide whether any other employees within Humalfa's operation would be exempt under § 203(f). That question is not before us and necessarily depends on case-specific facts not developed here. *See Archuleta*, 543 F.3d at 1233.

exemption "ordinarily," *id.*, or "[g]enerally," § 780.144, will not apply. But these provisions must be applied together with the regulations' overarching guidance to focus on "the general relationship . . . of the practice to farming as evidenced by *common understanding*;" not to rely on a "*mechanical application* of isolated factors or tests;" and that "*the total situation* will control." 29 C.F.R. § 780.145 (emphasis added).

Like the district court, we conclude that a common understanding of the relationship between Mr. Porter's work handling manure and the feedlot's farming operations, and a fair assessment of the total situation, show that his work fell within 29 U.S.C. § 203(f)'s definition of agriculture. To accept Mr. Porter's contrary argument would be an overly mechanical application of limited factors or tests. Moreover, the controlling issue remains statutory: whether a fair reading of 29 U.S.C. § 203(f)'s definition of agriculture encompasses Mr. Porter's work. We conclude that it does.

D.

Mr. Porter's other arguments for reversal are unavailing. Many re-emphasize the separation between Humalfa's and Five Rivers' businesses or relate to the nature of Humalfa's composting. He notes that he was paid only by Humalfa and that Humalfa's business was composting while Five Rivers devoted its resources to raising cattle. He argues that while Humalfa had the burden of proof, it did not present evidence on all potentially relevant factors listed in the regulations, or to show that manure composting was a common agricultural practice. And he

emphasizes that Humalfa's composted manure was a processed and value-added product, in part relying on *Donovan v. Frezzo Brothers*, 678 F.2d 1166 (3d Cir. 1982), for the proposition that workers conducting mushroom composting were engaged in a process "'more akin to manufacturing than to agriculture.'" Aplt. Opening Br. at 29 (quoting *Frezzo Bros.*, 678 F.2d at 1171).

Whether or not these considerations might lead to a different conclusion for workers in other parts of Humalfa's business, they do not change our assessment that the work Mr. Porter did remained agriculture under § 203(f). Nor does the fact that Five Rivers' own employees also could, and sometimes did, remove raw manure from the pens change our conclusion about the nature of Mr. Porter's work.

Mr. Porter also argues the district court misapplied *Donovan v. Marrero*, 695 F.2d 791 (3d Cir. 1982), which arose from facts related to those in *Frezzo Brothers*. But the relevant holding in *Marrero* was that under 29 U.S.C. § 203(f) "[t]he removal of spent [mushroom] compost is 'incident to or in conjunction with' mushroom farming because the removal . . . is an integral step in the mushroom growing process." *Id.* at 795. *Marrero* is thus consistent with and supports our conclusion that Mr. Porter's work fell within § 203(f)'s definition of agriculture, given that his removal of raw manure was an integral step in the feedlot's operations.

Mr. Porter also cites *Marrero* for the proposition that the agricultural exemption should not apply to employees who work regular hours or "a 40 hour work week." Opening Br. at 23 (internal quotation marks omitted). But the district court found Mr. Porter's weekly hours varied, "[a]s a result of the time-sensitive and

essential nature of the work." App., vol. 1, at 150. Those findings are not clearly erroneous. Moreover, our decision follows from the statutory text of § 203(f), not from statements about Congress's reasons for adopting that text.

### III.

Ms. Porter sued Humalfa to recover wages under the FLSA for work she claimed to have performed for Humalfa after she was let go in 2018 but before she was formally re-hired in November 2021.[6] She claimed she was also a Humalfa employee during the intervening period, but her hours were unrecorded and she was never paid.

The district court entered judgment in Humalfa's favor. It ruled that even assuming Ms. Porter was Humalfa's employee, she failed to prove her damages under the burden-shifting framework of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 254(a). *See* App., vo1. 1 at 213–14.

We affirm the district court's judgment, but on the alternative ground that Ms. Porter has not carried her burden to show she was Humalfa's employee during the disputed time period.[7] *See* 29 U.S.C. §§ 206, 207 (FLSA statutory provisions that

---

[6] To the extent Ms. Porter sought to recover pay in district court for any other period of time, she has waived such claims on appeal by not developing any argument that supports them in her opening brief. *See In re Syngenta AG MIR 162 Corn Litig. (Hossley-Embry Grp. II)*, 111 F.4th 1095, 1112 (10th Cir. 2024).

[7] We affirm on this alternative ground because the issue was argued, briefed, and factually developed in the district court, Humalfa maintains the argument on appeal, and our ruling does not require resolution of any additional factual issues. *See Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004).

apply to "employees"); *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016) ("[The] FLSA conditions liability on the existence of an employer-employee relationship, and the employee bears the burden of alleging and proving the existence of that relationship."); *Archuleta*, 543 F.3d at 1233 ("[I]t is the employee's burden to prove that the employer is violating the FLSA.").

We use the "'economic realities' test of employee status" to determine whether an FLSA plaintiff was "a statutory employee for purposes of the FLSA." *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 506 (10th Cir. 2012). Relying on this test, Humalfa argues—as it did in district court—that Ms. Porter did not carry her burden to prove she was an employee. Among other evidence, it cites Mr. Crowder's testimony that he never asked Ms. Porter to perform the tasks for which she seeks to recover pay and that Mr. Porter or other Humalfa employees should have been doing them. It points to the absence of any employment documents for the disputed time period, in contrast to the paperwork completed when Humalfa formally hired her. And it relies on Ms. Porter's own testimony describing that she "[e]ventually" expected "[t]o have a job" with Humalfa, while agreeing on cross-examination that the reason she performed the unpaid tasks was to "create[e] an incentive for [Humalfa] . . . to hire [her]." App., vol. 2 at 411–12.

Ms. Porter does not meaningfully respond to Humalfa's argument under the economic realities test. She cites 29 C.F.R. § 785.11, which addresses "an *employee*['s]" entitlement to pay for hours that "*[t]he employer*" knows she is working (emphasis added). This provision, and the others cited by Ms. Porter, are

found in a subpart of the regulations addressing the hours for which an employer is obliged to pay wages to "*Employees* 'Suffered or Permitted' to Work." *Id.* (emphasis added). These provisions do not address whether the person performing the work was, in fact, an employee. Ms. Porter's argument citing these regulations thus presumes she was in an employer-employee relationship with Humalfa, without carrying her threshold burden to show such a relationship existed. Given that Ms. Porter had the burden on this element of her claims and has not developed any argument rebutting Humalfa's contention that she was not its employee under the economic realities test, she has waived the issue on appeal. *See In re Syngenta AG MIR 162 Corn Litig. (Hossley-Embry Grp. II)*, 111 F.4th 1095, 1110–11 n.15 (10th Cir. 2024). We therefore affirm the district court's judgment.

**IV.**

We affirm.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge